UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JAN BURGESS and all 2, 959 individuals identified in the FTCA Administrative Complaint,<br>　　　　　　　　　Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA,<br>　　　　　　　　　Defendant.<br>_____/ | Case No.: 17-11218<br><br>Linda V. Parker<br>United States District Judge<br><br>Curtis Ivy, Jr.<br>United States Magistrate Judge |

## ORDER GRANTING DEFENDANT'S MOTION FOR PROTECTIVE ORDER (ECF No. 185)

A.　Background

Plaintiffs allege the United States was negligent in failing to timely issue an emergency order pursuant to § 1431 of the Safe Drinking Water Act ("SDWA"), 42 U.S.C. §§300f-300j-26, to begin remedying the water contamination in Flint, Michigan.  An order pursuant to § 1431 can require state and local officials to take action including providing alternative water supplies to consumers.  The Environmental Protection Agency ("EPA") did not issue the emergency order until January 21, 2016, despite allegedly knowing of the water contamination as early as October 2014.  (ECF No. 75, PageID.2592-93).

On June 14, 2022, Plaintiffs served a notice of deposition *duces tecum* on Defendant for the deposition of former EPA Administrator Gina McCarthy.

McCarthy was the administrator from July 2013 to 2017.  Defendant seeks to quash the notice, arguing that McCarthy is a high-ranking official, and Plaintiffs have not established extraordinary circumstances justifying the deposition.  (ECF No. 185).  The government's motion was referred to the undersigned.  (ECF No. 197).  The Court heard oral argument on the motion on November, 9, 2022.

Some legislative and factual background on the EPA's involvement in the Flint Water Crisis is helpful in resolving this motion.  The SDWA allows states to obtain primary enforcement authority over their public water systems if they meet certain criteria.  The EPA retains oversight authority over those states.  Section 1431 grants the EPA emergency powers, such as requiring state and local officials to act, for example to provide alternative water supply to consumers.  At some point prior to the water crisis, the EPA granted Michigan primary enforcement authority over its public water systems.  "Region 5" of the EPA serves Michigan and five other States.  The EPA Administrator delegated their § 1431 authority to the Regional Administrators and Assistant Administrator for Enforcement and Compliance Assurance.  (ECF No. 76, PageID.2621).

B.   Parties' Arguments

The United States argues that the Supreme Court's decision in *United States v. Morgan*, 313 U.S. 409 (1941), bars Plaintiffs from deposing McCarthy.  It asserts that *Morgan* precludes the deposition of high-ranking executive branch

officials, like McCarthy, absent extraordinary circumstances.  (ECF No. 185, PageID.3564-65).  The United States points to three rationales for the *Morgan* doctrine that it contends apply here: (1) separation of powers principles that are implicated when parties seek to ascertain the thoughts and mental processes by which high-ranking officials exercise their discretion, (2) subjecting high-ranking officials to depositions involving their agency would impede the exercise of official duties by distracting them from their duties and exerting a chilling effect on decision-making while in office, and (3) a contrary rule might discourage a person from taking that office if they could be subject to these kinds of depositions.  (*Id.* at PageID.3565-66).  To depose McCarthy, the government contends that Plaintiffs must demonstrate extraordinary circumstances to justify their request, specifically, that McCarthy possesses information essential to their case that is not obtainable from another source.  (*Id.* at PageID.3566-67) (citing *In re United States*, 197 F.3d 310, 314 (8th Cir. 1999)).

That McCarthy was no longer the Administrator of the EPA at the time of Defendant's motion makes no difference, according to the Defendant.[1]  The United States argues that this makes no difference; the *Morgan* doctrine still bars

---

[1] At the time of the filing of this motion, McCarthy was serving as the White House's National Climate Advisor.  As of the date of the hearing on the motion, McCarthy was no longer serving in that role.  At any rate, the United States insists McCarthy's current position makes no difference in the *Morgan* analysis.

testimony on her capacity as the former EPA Administrator. (ECF No. 185, PageID.3567-68) (citing *In re United States Dep't of Educ.*, 25 F.4th 692, 705 (9th Cir. 2022)).

The government argues that Plaintiffs cannot show extraordinary circumstances that would justify deposing McCarthy. It argues that McCarthy does not possess unique personal knowledge that is essential to Plaintiffs' claims. According to the government, her relevant personal knowledge has been made available to Plaintiffs through the EPA's Fed. R. Civ. P. 30(b)(6) depositions; McCarthy's Congressional testimony on the Flint Water Crisis; the EPA's Office of Inspector General's ("OIG") 2016 and 2018 reports of EPA's involvement in the Flint Water Crisis; hundreds of pages of documents produced by the United States, including the EPA OIG's working file relating to the crisis; and deposition transcripts of twelve EPA witnesses, including persons who are central to Plaintiffs' complaint allegations and witnesses who would have communicated with McCarthy regarding the Crisis.[2] (ECF No. 185, PageID.3568-69).

The United States lastly asserts that Plaintiffs have not exhausted less burdensome means of obtaining any other information they would seek from

---

[2] The United States argued that Plaintiffs may attempt a showing that there was improper conduct in order to obtain McCarthy's deposition. (ECF No. 185, PageID.3570-71). Plaintiffs did not make this argument in their response brief or at the hearing. They stated only that they alleged improper behavior, but did not point to specific complaint allegations against McCarthy. (*See* ECF No. 192, PageID.3914-15).

McCarthy. It notes that Plaintiffs have not independently issued a deposition notice in this case since 2017, they have not served interrogatories or requests for admission, and that on June 14, 2022, Plaintiffs served their first set of written discovery, to which the United States was still responding. (ECF No. 185, PageID.3571-72, n. 7). The government contends that Plaintiffs bear the burden of explaining why these other discovery tools are inadequate to fill any alleged gaps in Plaintiff's case that would be filled by McCarthy's testimony.

Finally, although it asserts that the *Morgan* doctrine supplants the Rule 26(c) analysis for a protective order, the government argues in the alternative that good cause exists for a protective order. It argues McCarthy's deposition would be unreasonably cumulative and duplicative considering the EPA's and EPA OIG's 30(b)(6) testimony, other fact deposition testimony, document production, and McCarthy's Congressional testimony. (ECF No. 185, PageID.3574-75).

Plaintiffs argue that McCarthy's deposition is essential because she had statutory duties and responsibilities that bear directly on the issues here. As administrator, McCarthy was responsible for ensuring that water supply systems met minimum national standards to protect public health, she could take action when faced with a non-compliant public water system, she was empowered to grant a State primary enforcement responsibility for a water system and tasked with oversight of those States' handling of their responsibility, and she was

empowered to revoke primacy authority from a State. (ECF No. 192, PageID.3902-03). In sum, Plaintiffs assert that McCarthy had the authority and responsibility to intervene when Michigan failed in its responsibilities to manage the Flint water system, and thus she was involved in the facts giving rise to this case. They allege that, despite learning of the water contamination no later than October 2014, the EPA did not issue an emergency order or commence a civil action under § 1431. The authority and duty to issue the emergency order rested with McCarthy. (*Id.* at PageID.3903).

Plaintiffs argue that deposing McCarthy to determine why she failed to act timely is crucial to their case. They contend that courts in this District have allowed depositions of heads of government where the officials had firsthand knowledge of the claims. (*Id.* at PageID.3909) (citing *Powell v. Benson*, 2020 WL 6580714 (E.D. Mich. Aug 30, 2020) and *Boudreau v. Bouchard*, 2008 WL 4386836 (E.D. Mich. Sept 25, 2008)).

According to Plaintiffs, the *Morgan* doctrine does not apply to former high-ranking officials. They cite cases from this Circuit and other Circuits where courts have allowed the deposition of a high-ranking official after they leave their position. (*Id.* at PageID.3909-11).

Plaintiffs distinguish this case from *Morgan*. They contend that, unlike in *Morgan*, there is no exhaustively complete administrative record that undergirded

6

McCarthy's decisions and she did not arrive at her decision through a quasi-judicial process—she held no hearings and collected no briefs. (*Id.* at PageID.3912-13). Plaintiffs rely on *Citizens to Pres. Overton Park, Inc v. Volpe*, 401 U.S. 402 (1971). There, contrary to statutory dictates, the Secretary of Transportation did not create a record of factual findings about feasible alternatives to a highway route through a park. The Secretary submitted affidavits explaining his decision, which the Court characterized as post hoc rationalization. The Court ruled that, since the Secretary did not create a full record, the case must be remanded and the Secretary likely needed to be deposed because that may have been the only way for effective judicial review of the administrative decision. *Id.* at 419-421. Plaintiffs argue that since there is no complete administrative record here, nor any affidavits submitted by McCarthy, the ideal solution is to depose McCarthy.

Finally, Plaintiffs assert that there is no reasonable alternative to McCarthy's deposition. Her deposition is essential because what the EPA knew and when is central to the case. And they note inconsistencies in the evidence gathered thus far. For example, Defendant asserts that McCarthy delegated the authority to issue the § 1431 order, despite statutory language that authorizes only the administrator to do so. McCarthy testified before Congress that she made the decision to issue the order. (ECF No. 192, PageID.3920). She also testified that she knew

Michigan was not using corrosion control as early as April 2015, but also that the EPA knew was there was a systemic problem in July 2015. (*Id.* at PageID.3921). They note other inconsistencies in the evidence about what the EPA knew and when. (*Id.* at PageID.3922).

C.  Governing Standards

The United States asserts that *United States v. Morgan*, 313 U.S. 409 (1941), supplants the Rule 26(c) good-cause standard for a protective order and thus provides the analytical framework by which the Court should evaluate Plaintiffs' attempt to depose McCarthy. Plaintiffs do not challenge that *Morgan* supplants Rule 26(c) when applicable, but argue that the case does not apply here.

1.  The *Morgan* Doctrine

*Morgan* involved the review of the Secretary of Agriculture's rate-fixing decision. The district court allowed the deposition of the Secretary so that the defendants could inquire into his decision-making, including the materials he reviewed and his consultation with subordinates. *Id.* at 422. The Court characterized the Secretary's review of the evidence and decision-making process as having "a quality resembling that of a judicial proceeding." *Id.* (citation omitted). It held that the Secretary should not have undergone a deposition and examination at trial. The Court gave the reasons below:

> Such an examination of a judge would be destructive of judicial responsibility. We have explicitly held in this

>very litigation that 'it was not the function of the court to probe the mental processes of the Secretary'. Just as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected. It will bear repeating that although the administrative process has had a different development and pursues somewhat different ways from those of courts, they are to be deemed collaborative instrumentalities of justice and the appropriate independence of each should be respected by the other.

*Id.* (internal citations omitted).

The *Morgan* "doctrine" continued to develop.

Cases in the Sixth Circuit have not added clarity to the protection. The Sixth Circuit recognized the protection given to nonjudicial high-ranking government officials in *Warren Bank v. Camp*, 396 F.2d 52, 56-57 (6th Cir. 1968), but it did not elaborate on the protection and it appears has not since addressed it. So, the Court turns to other circuits for clarity.

In exercising their discretion to regulate discovery, courts in other circuits have fashioned an "extraordinary circumstances" test following *Morgan*. They hold that high-ranking officials may be deposed when extraordinary circumstances are shown. The party seeking the deposition must show that the proposed deponent (1) has information "essential" to the case (2) that "is not obtainable from another source." *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999) (citation omitted); *see also In re United States Dep't of Educ. (DeVos)*, 25 F.4th 692, 703 (9th Cir. 2022); *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015).

9

While these decisions did not come from the Sixth Circuit, they are published Circuit Court decisions in agreement on the rule, and as such, are persuasive authority.

The rationales behind the *Morgan* doctrine lend additional persuasiveness to the extraordinary circumstances test. First, as discussed in *Morgan*, there are separation of powers concerns when a party attempts to gather information on the mental processes by which a high-ranking federal agency official exercised their official duties or discretion. *See, e.g.*, *In re United States Dep't of Educ.*, 25 F.4th at 700. Second is the concern that subjecting high-ranking officials to questioning about their agencies or their actions would distract them from their official duties. *Id.* at 701 (observing that "the executive branch's execution of the laws can be crippled if courts can unnecessarily burden secretaries with compelled depositions."). Third, allowing these kinds of depositions in the normal course has the potential to discourage persons from taking high-ranking positions or leaving the position when there is controversy. *Id.* at 705. The Court does not want to skirt these policy and practical concerns and thus will follow the two-part test.

Plaintiffs' insistence that the extraordinary circumstances test does not apply because McCarthy did not engage in quasi-judicial proceedings and no exhaustive administrative record is unavailing. Neither *Morgan* nor *Overton Park* dictate that high-ranking officials be deposed, without limitation, in the absence of a quasi-

10

judicial proceeding before the official and an incomplete administrative record. Unlike in those cases, this case was filed under the Federal Tort Claims Act, not the Administrative Procedures Act (which did not exist when *Morgan* was decided). The Court is not scrutinizing agency action. The courts that have disallowed these kinds of depositions, discussed here and in cases not cited, did not rely on whether there was a quasi-judicial proceeding or the state of the administrative record, if there was one.

2. *Morgan* Applies to Former Officials

Plaintiffs do not dispute that the Administrator of the EPA is a high-ranking official. They argue, though, that McCarthy does not qualify for the protections afforded high-ranking officials because she is no longer the administrator. This argument is not well taken.

Federal courts largely appear in agreement that the *Morgan* protections apply equally to current and former high-ranking officials. For instance, the Ninth Circuit concluded that the Secretary of Education should not have been deposed because the plaintiffs did not exhaust all their alternatives to obtain the information they sought. The court said that its reasoning "applies even though [the Secretary] is no longer servicing as secretary."[3] *Id.*; *see also United States v. Wal-Mart*

---

[3] Plaintiffs cite *Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis Co., L.P.A.*, 2017 WL 6042221, at *1 (N.D. Ohio Dec. 7, 2017), for the proposition that former officials do not warrant protection from being deposed. (ECF No. 192, PageID.3909). The Court does not

11

*Stores, Inc.*, 2002 WL 56231, at *4 D. Md. Mar. 29, 2002) ("In the absence of controlling case law to the contrary, this Court is of the opinion that the *Morgan* doctrine is applicable to efforts by parties to depose former high-ranking officials."); *Presti v. City of New York*, 2022 WL 2442824, at *2 n. 2 (E.D.N.Y. July 5, 2022) (noting that the Second Circuit applies the test to former officials).

Some courts find that the rationales behind protecting agency executives from deposition apply "with less force" when the proposed deponent no longer holds that position. *See Givens v. Newsome*, 2021 WL 65878, at *6 (E.D. Cal. Jan. 7, 2021). In such cases, the concern that requiring the official to sit for a deposition would take them away from their duties in office is no longer present. But the other rationales still apply. Separation of powers concerns and the potential of discouraging persons from taking high-ranking positions still exist when the potential deponent no longer holds the high-ranking position. *See, e.g.*, *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) ("While defendant is correct that the concerns of burdening high-ranking officials and impeding their ability to perform their duties are eliminated when the official leaves government service, she ignores the other rationales behind the apex

---

find this case persuasive because it is an unpublished district court case that strays from decisions from circuit courts (which are more persuasive than unpublished district court decisions), and the decision lacks any analysis to support the conclusion that former officials are not entitled to any protections.

doctrine. The need to protect the integrity of the underlying decision-making process, and encourage public service by protecting officials from 'indiscriminate depositions,' continue to persist after the official leaves government service. Therefore, the apex doctrine still applies to former officials.") (internal citations omitted).

In light of the foregoing, the Court concludes that the extraordinary circumstances test applies here. Plaintiffs must establish that (1) McCarthy possesses information essential to the case, and (2) that they cannot obtain through other means.

D.  Discussion

Plaintiffs want to depose McCarthy because they contend she has first-hand knowledge relevant to their case. They want to question her about when she first learned of the water contamination issues in Flint, and what information she was aware of. They intend to use this information to show that the EPA negligently delayed in issuing the § 1431 emergency order in January 2016 when McCarthy was aware of the issues well before then.[4] As discussed above, Plaintiffs note

---

[4] Plaintiffs mention that Defendant intends to raise again its argument on the discretionary function exception to the FTCA, and that McCarthy's deposition is necessary to defend against the argument. (ECF No. 192, PageID.3911). Plaintiffs did not, however, link what they hope to obtain from McCarthy's deposition and the planned discretionary function argument.

some inconsistency in the record about when McCarthy first learned of the problem.

The Court accepts that McCarthy has personal knowledge relevant here. Whether the date that McCarthy first personally learned of the Flint water issues is *essential* to their case is less clear. The record reflects that EPA officials in "Region 5" were working with Flint and the State of Michigan. And McCarthy delegated the authority to issue the § 1431 order, which was not signed by her though she testified she reviewed it before it was signed. Since she delegated the authority to issue the order, and Region 5 was working with the State and Flint, what and when she first learned of the issues is not clearly essential to the claims. To the extent there are inconsistencies in other testimony about when McCarthy first found out about the problems in Flint, these issues alone do not justify deposing a high-ranking official. *See, e.g.*, *Murray v. United States Dep't of Treasury*, 2010 WL 1980850, at *4 (E.D. Mich. May 18, 2010). Ironically, McCarthy's deposition was precluded by the Fourth Circuit where the court was "unpersuaded that there is no alternative to deposing McCarthy because 'only [she] can speak to the dichotomy evidenced in her statements and EPA's litigation position.'" *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015).

Plaintiffs' contention that high-ranking officials can be deposed merely if they possess firsthand knowledge related to the claims is misguided. They cite

14

*Powell v. Benson*, 2020 WL 6580714 (E.D. Mich. Aug 30, 2020), and *Boudreau v. Bouchard*, 2008 WL 4386836 (E.D. Mich. Sept 25, 2008). Neither case supports their position. *Powell* did not state that Secretary of State Benson could be deposed because she had firsthand knowledge of facts related to the claims. Benson's deposition was ordered to go forward, with limitations, because she had firsthand knowledge *and* because the plaintiffs could not obtain the evidence from other witnesses or sources. 2020 WL 6580714, at *4. And in *Boudreau*, the district court, on reconsideration, granted a protective order to prevent the deposition of a County sheriff because the evidence showed that the official was not directly involved in the subject investigation and there was no showing that information he may have had about the investigation was unavailable from other sources or through less burdensome means. *Boudreau v. Bouchard*, 2009 WL 55912, at *3 (E.D. Mich. Jan. 8, 2009). In short, it is not enough that the official has firsthand knowledge.

The Court, however, need not make a determination whether McCarthy's testimony is essential to the case because Plaintiffs have not yet exhausted other ways to obtain the information. As of the date of the hearing on this motion, Plaintiffs had sent no discovery requests to Defendant, were in the process of receiving document production from the government, and still had some depositions yet to be taken. And it appears the information they seek may be

15

contained in documents produced around the time of the hearing. The United States stated that it was in the process of producing documents in response to the deposition notice, including requests for information of when EPA first learned of elevated blood lead levels, contamination in the water, and the increase in reported cases of Legionnaire's disease in Flint. (ECF No. 185-3, PageID.3602-03). Further, Plaintiff may use, for instance, interrogatories to obtain information about what McCarthy knew and when. They must exhaust other avenues before taking her deposition.[5] Thus, the motion for protective order is **GRANTED**, but without prejudice. Plaintiffs may later seek to obtain McCarthy's deposition, if necessary, after they have exhausted other means of obtaining the information they seek. Until Plaintiffs make a satisfactory showing under the *Morgan* doctrine, they are not permitted to take McCarthy's deposition.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d). A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a). Any objections are required to specify the part of the Order to which

---

[5] It is also noteworthy that Plaintiffs did not allege in their complaint that McCarthy individually acted improperly or with bad motive, so there is no reason, at this time, to allow the deposition to go forward. (*See* ECF No. 75).

the party objects and state the basis of the objection. When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in effect unless it is stayed by the magistrate judge or a district judge. E.D. Mich. Local Rule 72.2.

Date: December 15, 2022  	s/Curtis Ivy, Jr.
                                                                Curtis Ivy, Jr.
                                                                United States Magistrate Judge