UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAN BURGESS and all 2,959
individuals identified in the FTCA
Administrative Complaint,

                Plaintiffs,

v.

UNITED STATES OF AMERICA,

                Defendant.

_____/

Case No.: 17-11218

Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**ORDER GRANTING IN PART MOTION FOR ORDER FOR RULE 35
EXAMINATIONS IN ACCORDANCE WITH UNITED STATES'
PROPOSED EXAMINATION PROTOCOL (ECF No. 206)**

Before the Court is the United States' motion for Federal Rule of Civil

Procedure 35 examinations to be conducted in accordance with its proposed

medical examination protocol. (ECF No. 206). This motion was referred to the

undersigned. (ECF No. 208).

Pursuant to Case Management Order 4, the parties selected 14 bellwether

plaintiffs as part of the "Discovery Group." (ECF No. 172, PageID.3510-11). The

adult and minor plaintiffs in this group who allege personal injuries are to undergo

defense medical examinations ("DMEs") to be conducted by licensed medical

professionals retained by the government. The protocol for performing these Rule

35 DMEs must be approved by the Court before conducting the DMEs. (*Id.* at

PageID.3514).  The government retained psychologist Dr. Jennifer Huffman to

conduct the neuropsychological examinations.  The parties cannot agree to all the

terms and conditions of the government's proposed Rule 35 DME protocol, and

thus Court intervention is necessary.  They disagree about: (1) advance disclosure

of the tests to be performed, (2) third-party observers and recording examinations,

(3) the disclosure of raw test data and copyrighted material, (4) the schedule for

production of the reports, and (5) when the examinations will be conducted and

when breaks will be taken.

The Court heard argument on the motion on March 2, 2023.  For the reasons

below, the motion is granted in part.

Under Rule 35, the Court may order a party whose mental or physical

condition is in controversy to submit to a physical or mental examination.  The

Order permitting the examination must specify the time, place, manner, conditions,

and scope of the examination.  Fed. R. Civ. P. 35(a).

A.    Advance Notice of Tests

Plaintiffs argue that they have a right to advance notice of the tests Dr.

Huffman will administer so they can consider whether to object to the tests they

see as irrelevant, harmful, or outside the scope of the neuropsychological

profession, before the examination is conducted.  (ECF No. 209, PageID.4232).

The United States argues that Dr. Huffman is not required by Rule 35 to list  the

tests she will administer and doing so is impractical because it is impossible to know, in advance, which tests she will administer to each plaintiff. The government asserts that the adult interviews and testing will be consistent with the APA patient guide and that the pediatric examinations will consists of observation, interviews, and testing consistent with the same. (ECF No. 206, PageID.4041-42; ECF No. 206-2, PageID.4059-60). The patient guide is attached to the proposed DME protocol. (ECF No. 206-2, PageID.4079-80). This document explains to patients what to expect during a neuropsychological examination. It does not list the kinds of tests used during the examination. In a declaration, Dr. Huffman states that the examinations will include "an examinee interview and an appropriate battery of current and generally accepted standardized psychological testing." (ECF No. 206-3, PageID.407, at ¶ 8).

Cases in this district demonstrate that courts are reluctant to require the medical examiner to provide a list of the exact tests to be conducted on examinees. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 2020 WL 6470176, at *3 (E.D. Tenn. Nov. 3, 2020); *S.R. v. Kenton Cnty. Sheriff's Off.*, 2016 WL 7911872, at *2 (E.D. Ky. July 26, 2016) (declining to require exact types of tests to be performed absent a showing of inherent harm that could stem from routine tests described in the motion). Rule 35 requires that the parties be informed of the time, place, manner, conditions, and scope of the examination.

3

In a second declaration, Dr. Huffman explains that it is impossible to itemize the exact tests she will use because of the "fluid nature of a neuropsychological examination." (ECF No. 210-1, PageID.4260, at ¶ 23). She states that she *could* itemize "all of the tests available in my practice from which the test battery will be developed and adjusted as needed." (*Id.* at ¶ 24). A list of possible tests could satisfy Rule 35's notice requirement. *See, e.g.*, *Botkin v. Tokio Marine & Nichido Fire Ins. Co., Ltd.*, 2013 WL 12384663, at *1 (E.D. Ky. Apr. 9, 2013) ("The Court recognizes that because of the fluid nature of psychological testing, Dr. Cooley most likely does not know the specific tests he will ultimately administer during the examination. The Court will not require Dr. Cooley to identify exactly what tests will be employed and finds that the listing of possible tests satisfies the notice requirement of Rule 35."). Plaintiffs seek a list of the possible tests that could be administered on them, not all the tests available in Dr. Huffman's practice. The government asserts that because only general allegations of harm and damages have been raised for now, it will be difficult for Dr. Huffman to itemize possible tests before the exams.

Plaintiffs have not established a basis for suspecting that Dr. Huffman will perform an inappropriate or irrelevant test on the examinees. Dr. Huffman stated that the tests will comply with standard psychological practices and ethical obligations. And Dr. Huffman will likely be subject to a deposition, at which time

the testing can be explored. *See Gohl v. Livonia Pub. Sch.*, 2015 WL 1469749, at

*2 (E.D. Mich. Mar. 30, 2015). Even so, because of the fluid nature of these kinds

of examinations, and since Dr. Huffman stated she could itemize possible tests she

will administer, Dr. Huffman is directed to itemize tests she might administer no

later than 21 days before the first examination. This list shall not be considered

exhaustive.

B.    Third-Party Present or Recording During Exams

1.    Child Exams

The proposed DME protocol requires that both adult and child examinees be

examined alone and does not permit recording or viewing of interviews or

examinations. Plaintiffs want a parent or guardian present at their child's interview

and examination under the condition that the parent/guardian does not interfere or

obstruct. Plaintiffs do not seek to record child examinations.

"Unless the opposing party demonstrates a special need or good cause, most

federal courts have not permitted either a recording or an observer of an

examination." *Gohl*, 2015 WL 1469749, at *2 (citing *Lahar v. Oakland Cnty.*,

2006 WL 2269340, at *8 (E.D. Mich. Aug.8, 2006) (recognizing that "the majority

of federal courts decline to allow either recording or an observer, absent a showing

of a special need or good reason")); *see also Mager v. Wisconsin Cent. Ltd.*, 924

F.3d 831, 833 (6th Cir. 2019). Plaintiffs bear the burden of demonstrating a

special need or good cause for an observer to be present during examinations or for recording of examinations. *Williams v. Serra Chevrolet Auto., LLC*, 2013 WL 3467314, at *1 (E.D. Mich. July 10, 2013).

The justification for Plaintiffs' request is that the minor children present cognitive deficiencies as a result of exposure to lead in the water supply, they suffer emotional and psychological trauma as a result of the exposure, and to lessen the anxiety they would feel during the exam. (ECF No. 209, PageID.4223, 4229). During the hearing, Plaintiffs asserted that the child plaintiffs' incompetence exists because they are legally incompetent as minors. These reasons are not good reasons and do not establish special need.

In *Gohl*, a case the significance of which the parties dispute, the court found the plaintiffs demonstrated good cause for the parents to observe the minor children's examinations. The court cited the plaintiffs' young ages—from six to nine years old—and the fact that they had been diagnosed with serious cognitive deficiencies such as Down syndrome. 2015 WL 1469749, at *3. The court understood that parents would be reluctant to leave their minor child alone with a person hired by an adversary, and that, "unlike a competent subject, an incompetent examinee would not be available to rebut the examiner's testimony regarding what had transpired during the examination." *Id.*

The age range of the minor children here is not as young as those in *Gohl*.

Here they are nine, ten, fourteen, and twenty years old.  The concerns attendant

with leaving a very young child alone with the examiner are not as stark here

where the minors are either entering adolescence, are a teenager, or are the age of

majority.  Plaintiffs mention that the minor children present cognitive deficiencies,

but do not explain these deficiencies or support their contention.  They stated that

the children suffer emotional and psychological trauma as a result of the lead

contaminated water, which is precisely the allegations for which these

examinations are needed.  That said, they did not support the implication that their

trauma provides good cause to have an observer present.  The bare assertion that

the children will experience anxiety during the examinations similarly is

unsupported and does not provide special need or good cause to have an observer

present.  Finally, no authority supports that a minor has a right to have a third-party

observer during independent medical examinations just because they are a minor.

Such a rule, as the government suggests, would obliterate the presumption against

third party observers during these exams.  In short, Plaintiffs have not established

special need or good cause to have an observers present during the examinations.[1]

---

[1] The Court notes that the parent/guardian of the examinees will be in the building and
that the examinees will be offered 10-15 minutes breaks as needed and a one-hour lunch break
during which they can be with their parent/guardian.

The remaining arguments relate to the government's justifications for disallowing observers during interviews and examinations, including that such would violate ethical standards for the practice of psychology, it would render testing unreliable, and would compromise testing protocols and security.  (ECF No. 206, PageID.4044-45).  Because Plaintiffs have not demonstrated special need or good reason to have observers present, the Court need not address these arguments.  It is Plaintiffs' burden to establish entitlement to have observers present, not the government's burden to establish that observers should not be allowed.  Since Plaintiffs did not meet their burden, the government's arguments need not be addressed.

2.      Recording Adult Examinations

Plaintiffs request that the interview portion of the adult examinations be recorded so that there is a neutral record of what took place during the interviews. They suggest that questions could be raised that are easily answered by reviewing the recording.  The analysis above applies here.  Plaintiffs cite only the "adversarial nature" of examinations in litigation as reason to record the adult interviews, to provide a "neutral record of what are essentially adversarial proceedings."  (ECF No. 209, PageID.4230-31).  They cite no authority to support allowing the adult examinations to be recorded because the examinations are

taking place in the context of litigation, and the Court is unaware of any.  And they do not assert that the adults are incompetent.

Both the child and adult examinations are ordered to go forward without observers or recording.

C.      Disclosure of Raw Test Data and Copyrighted Materials

The proposed DME protocol provides that raw test data and copyrighted materials will be provided only to a licensed psychologist of Plaintiffs' counsels' choosing, not directly to Plaintiffs or their attorneys.  The United States opposes disclosing raw test data and copyrighted materials to Plaintiffs and their attorneys because doing so (1) threatens to compromise test security, (2) could destroy the validity of the testing, and (3) violates ethical standards.  (ECF No. 206, PageID.4048).  The government and Dr. Huffman assert that only a qualified psychologist can interpret the raw data.  The government also asserts that Rule 35 requires disclosure of the examiner's report, not the raw data underlying it.  (*Id.* at PageID.4048-49).

Rule 35 requires the government to provide, upon request, a copy of the examiner's report.  Fed. R. Civ. P. 35(b)(1).  The Rule does not provide for the production of notes and/or test data developed in connection with the Rule 35 examination unlike an expert report under Rule 26(a)(2)(A), which does.  *See Botkin*, 2013 WL 12384663, at *3.

Plaintiffs' citations to *Spencer v. Huron Cnty.*, 2016 WL 4578102, at *4

(E.D. Mich. Sept. 2, 2016), *Castillo v. W. Beef, Inc.*, 2005 WL 3113422, at *3

(E.D.N.Y. Nov. 21, 2005), and *Hirscheimer v. Associated Metals & Mins. Corp.*,

1995 WL 736901, at *5 (S.D.N.Y. Dec. 12, 1995), are not helpful.  *Spencer* relied

on the other two cases in requiring the defendants to produce copies of the

examiner's notes, dictation tapes, and any other documents used or referenced in

the examiner's report.  But *Castillo* and *Hirscheimer* required production of the

examiner's raw data in absence of a Rule 35 report (*Castillo*) or because raw data

needed to be disclosed as part of an expert report (*Hirscheimer*).  And in *Spencer*,

the defendants did not object to providing raw data.  Similarly, Plaintiffs cite

*Starkey v. McHugh*, 2015 WL 6438762 (N.D. Cal. Oct. 23, 2015), but there the

raw data was ordered to be produced because it was required as part of an expert

report.  The government is not contending it need not produce an examiner's report

and the Court is not addressing whether Dr. Huffman will be called as expert

witness, and if so, what information must be produced as part of an expert report.[2]

The last case cited by Plaintiffs, *Gibbs v. Georgia-Pac.*, 2009 WL

10695341, at *5 (S.D. Ala. Feb. 5, 2009), discussed the Ethical Principles of

---

[2] Based on the plain language of Rule 35 and Rule 26 regarding disclosure of reports and data, "Rule 35 examinations, and the issuance of reports following those examinations, proceed independently of Rule 26(a)(2)." *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 418 (citation omitted).  That production of Dr. Huffman's raw data may be required if called to testify as an expert does not affect whether the raw data must be produced with Rule 35 reports.

Psychologists and concluded that a court order to disclose raw data does not violate a psychologist's ethical rules.  While the Court may order the United States to produce raw data and copyrighted material under some circumstances, Rule 35 does not require production of these materials.  And without a strong showing of prejudice that would befall Plaintiffs if only their retained psychologist views the raw data, the Court will not require production of raw data or copyrighted materials to Plaintiffs or their attorneys.

D.      Report Production Schedule

The proposed DME states that the examiner's reports will be produced thirty days after the deadline for completion of all Rule 35 DMEs, which is also the close of fact discovery.  Plaintiffs want the reports produced on a rolling basis as they are completed.  The United States opposes Plaintiffs' request because production on a rolling basis "would create unnecessary confusion and is contrary to Dr. Huffman's reasonable preferences," and a single production does not prejudice Plaintiffs.  (ECF No. 206, PageID.4050).  To elaborate, the government says a single report deadline will allow completion of several examinations in a  short period and would help ensure the reports are thorough and consistent.  (*Id.* at PageID.4051).  And it notes that Plaintiffs' expert disclosure deadline is two months after the proposed report production, providing ample time for review by Plaintiffs' expert.

Plaintiffs argue it is reasonable to have the reports due within 14-21 days after completion of each examination. Plaintiffs assert that completing reports closer in time to the examination will keep the examination fresh in Dr. Huffman's mind and that the only reason to delay production is to allow Dr. Huffman to change and calibrate reports based on comparative examinations of other plaintiffs. (ECF No. 209, PageID.4236-37).

Rule 35 does not provide a deadline by which reports are due after an examination; it states only that a copy of the report must be given to the examinee "on request."

The language in Dr. Huffman's declaration does not suggest some hardship in producing reports on a rolling basis. She states that it is her "preference" to produce all the reports on one deadline. This is her usual practice with litigation involving multiple examinees. She states that a single deadline will help ensure the reports are thorough and contain all her conclusions. (ECF No. 206-3, PageID.4113, at ¶ 40).

The Court acknowledges that Dr. Huffman maintains a regular practice and will examine these Plaintiffs aside from her usual work. That said, she will be conducting few examinations—five child examinations and less than nine adult examinations. This is not an onerous number of examinations. And Plaintiffs

made the point that their cases do not overlap so there is no need for the reports to

be consistent with each other.

The Court will require Dr. Huffman to produce reports within 30 days after

each examination.  In ordering this schedule the Court is not substituting its

judgment for Dr. Huffman's professional judgment.  Indeed, she used qualifying

language stating it is her "preference" to have a single deadline, not that a single

deadline is necessary to her work.  In addition, two months or less to review all the

reports and prepare to depose Dr. Huffman, if necessary, and complete expert

discovery, is rather an onerous task, especially given the gravity of the claims here.

Thus, to strike a balance, Dr. Huffman must produce reports within 30 days of each

examination.

E.     Examination Schedule

Dr. Huffman's usual practice, the practice called for in the proposed DME,

is to schedule examinations to take place from 8:15-11:30am, then a one-hour

break, then continue from 12:30-5pm, with 10-15 minutes breaks during the

sessions as needed.  Dr. Huffman states that following this schedule "dramatically

increases the likelihood of completing each neuropsychological examination in one

day."  (ECF No. 206-3, PageID.4113, at ¶ 42).

Plaintiffs argue that the schedule should be more flexible to account for

possible family challenges such as childcare, transportation from Flint, and job and

other family responsibilities.  (ECF No. 209, PageID.4237).  At the hearing,

counsel proposed beginning the examinations at 8:30am to lessen anxiety of

leaving early to drive from Flint to Dr. Huffman's office in East Lansing, about an

hour drive.  Plaintiffs also request language in the protocol explaining that if an

examinee is late to the appointment, they will not be turned away.  Counsel for the

government opposes a later starting time and language in the protocol allowing for

late arrivals.  That position aside, counsel clarified that a late arrival, reasonably

close to 8:15am, would not be turned away.

The Court will not require a different start time or language regarding late

arrivals.  Should issues arrive prior to or the morning of an examination that could

impact the start time, attorneys for both sides and Dr. Huffman should

communicate and come to an agreement.  If no agreement can be reached, the

parties are directed to contact the undersigned's chambers for a telephonic status

conference.

The United States is **ORDERED** to submit a proposed protocol for entry on

the docket that aligns with this Order **within 5 business days** of the filing of this

Order.

**IT IS SO ORDERED**.

The parties here may object to and seek review of this Order, but are

required to file any objections within 14 days of service as provided for in Federal

Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as

error any defect in this Order to which timely objection was not made.  Fed. R.

Civ. P. 72(a).  Any objections are required to specify the part of the Order to which

the party objects and state the basis of the objection.  When an objection is filed to

a magistrate judge's ruling on a non-dispositive motion, the ruling remains in

effect unless it is stayed by the magistrate judge or a district judge.  E.D. Mich.

Local Rule 72.2.


Date: March 6, 2023                              s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                                 United States Magistrate Judge