UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases,

_____/

These Objections Relate to:

ALL CASES

Civil No. 4:17-cv-11218

Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

_____

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S MARCH 6, 2023 ORDER GRANTING IN PART MOTION FOR ORDER FOR RULE 35 EXAMINATIONS IN ACCORDANCE WITH UNITED STATES' PROPOSED EXAMINATION PROTOCOL [ECF No.212]**

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S MARCH 6, 2023 ORDER GRANTING IN PART MOTION FOR ORDER FOR RULE 35 EXAMINATIONS IN ACCORDANCE WITH UNITED STATES' PROPOSED EXAMINATION PROTOCOL [ECF No.212]**

NOW COME Plaintiffs, JAN BURGESS et al, by and through their attorneys, and pursuant to Federal Rules of Civil Procedure 72(a) and E.D. Mich. LR 72.1(d) hereby object to the Magistrate Judge's Order Granting in Part Defendant's Motion for Order for Rule 35 Examinations in Accordance with United States' Proposed Examination Protocol, **[ECF No.212]**, with respect to the potion of the Magistrate's Order denying Plaintiffs' request to have a parent in the room during the Defendant's interview and examination of their minor children, ages 9, 10 and 14.[1]  Plaintiffs assert that this portion of the Magistrate's Order is clearly erroneous and contrary to law. In support of their Objections, Plaintiffs state:

1)     This case arises out of the Flint Water Crisis and Defendant's failure to protect the community of Flint, including the minor Plaintiffs herein, from known harm of lead in the public water system.

2)     As a result of these acts and inaction, Plaintiffs filed this claim under the Federal Tort Claims Act (FTCA), 28 USC §2674, for, among other allegations, Defendant's failure to issue an Emergency Order or take other actions  pursuant to

---

[1] One glaring error in the Magistrates' ruling, **[ECF No. 212, at PageID.4277]**, is that a fourth plaintiff, who had been a minor at the time of tainted water exposure and is now 20 years old, was not among those minor Plaintiffs for whom they sought the parental accompaniment.

its authority and duty, to warn and or prevent ongoing harm to Plaintiffs from the ingestion and absorption of lead in their drinking water.

3)   As part of the discovery in this matter, Defendant has sought, and Plaintiffs do not oppose, subjecting the minor Plaintiffs to a Defense Medical Examination (DME) and specifically interviews and testing by Defendant's neuropsychology expert. The Defendants propose that the examinations take place in their expert's offices over a period of 7- 9 hours with one lunch break during which the children will be alone with Defendant's expert with the exception of the expert's assistant during portions of the exam. The length of this exam far exceeds a typical school day for these children who are in the third, fourth and seventh grade.

4)   As required by the Court's Case Management Order, Defendant propounded a "Protocol for Rule 35 Defendant Medical Examinations." ("DME Protocol") [**ECF No.206-2**].

5)   Plaintiffs do not object to the examination or even the length of the examination. They, however, do object to these children being subjected to the questioning and testing without a parent in the room with their child. Plaintiffs agreed to all usual constraints in these situations, including that the Plaintiff child's parent be seated in the room in a non-participant role. The presence of their parent in the room would avoid a child being alone for hours with a stranger and provide necessary comfort to the child during the examinations. While Plaintiffs understand

2

that filing litigation requires compliance with discovery, there is no reason that it need be punitive, overly aggressive and anxiety producing. Allowing a parent to be in the room is consistent with the law and protocol for children this young and will in no way impact the integrity of the examination or Defendant's right to an expert exam.[2]

6) On February 3, 2023, Defendant filed a *Motion for Rule 35 Examinations in Accordance with United States' Proposed Defendant Medical Examinations Protocol*. **[ECF 206]** On February 17, 2023, Plaintiffs filed their Response to the United States' Motion which raised multiple concerns including a request that a parent be present during their child's examination. **[ECF No. 209]**.

7) On March 2, 2023, a hearing was held before Magistrate Judge Ivy. **[ECF No. 213, Transcript Hrg 3/2/23]**

8) On March 6, 2023, Magistrate Judge Ivy issued an opinion which addressed all issues including granting the United States' request to have the minors' DMEs "go forward without observers or recording." **[ECF No. 212, PageID. 4279]** An Order was entered on March 16, 2022. **[ECF 214]**

---

[2] Michigan's Child Protection Laws define a child, entitled to protection against unreasonable risk to the child's health or welfare, as "a person under 18 years of age" MCL 722.622 (d). Similarly, a child under the age of 18 is recognized by virtue of their status to constitute a disability for purposes of a civil action. MCL 600.5851 (1), (5)

3

9) While Plaintiffs disagree with much of the opinion, for purposes of their objections that meet the clearly erroneous standard, Plaintiffs object to that portion of the Magistrate's decision that excludes a parent from being present during their child's medical examination as erroneous and contrary to law. Federal Rule of Civil Procedure 72(a);LR 72(a).

10) The Magistrate Judge's decision to require that the minor children, ages 9, 10 and 14, be subjected to extensive testing and interviews by Dr. Huffman over an entire day without anyone they know, or feel safe with, in the room with them, is clearly erroneous in the following respects:

    a. Subjecting each child, ages 9, 10 and 14, to an examination over a minimum period of seven-to-nine hours, without anyone present who they know or trust[3] disregards their vulnerable child status and creates a

---

[3] The Magistrate points out that the parents will be in the building and that the children will be allowed to request a break, and that there will be a one-hour lunch break, during which time they will be able to be with their parent. However, this does not alleviate problems created by the fact of these already-traumatized children being compelled to sit in these examinations – both for written testing and interviews – all alone without the safety or security of knowing their parent is present to observe and be a witness to what occurs in the room. Nor does it address the potential concern that a child in these circumstances may not feel comfortable to even ask for a break or raise any issues while alone in a room with a stranger and authority figure. It does not address the anxiety and difficulty of managing an entire day in such a situation never before experienced. A child in school is surrounded by other children where there are structured breaks and known adult teachers for a lesser period of time. A child going to their regular doctor has a parent in the room. Here they are demanding that a child be alone and examined in a room with a doctor who is a complete stranger and who is barring their parents from being present.

heightened anxiety producing situation without any basis in law or fact. Each exam would include a battery of neuropsych tests (undisclosed in number or type), and a lengthy interview of each child regarding matters that are emotionally charged for the minor. Plaintiffs will be questioned regarding their experiences and actions during the Flint water crisis, the impact on both their cognitive abilities and their emotional and psychological health as well as their day-to-day action and school performances.   **[ECF 206-2, Def's Proposed DME, ¶¶ 7, 8 and 12, PageID.4060-62]**. The Magistrate Judge has ordered these examinations to take place with the child being totally alone with people who are complete strangers and extensive testing which is challenging at best. The Magistrate erred in finding that the children's respective ages, their cognitive difficulties, the emotional and psychological trauma from being exposed to lead-tainted water, and the length and extent of the examination were not sufficient bases to establish "special need or good cause to have an observer present." **[ECF 212, PageID.4277]**.   Yet, as the Magistrate Judge pointed out on the record, in response to Defendant's assertion that there is no proof that children get stressed during medical appointments: "But in those normal medical appointments, wouldn't a parent or guardian be in the room with the kids?" **[ECF 213, Transcript 3/2/23 Hrg.,**

5

**PageID.4304]**. The Magistrate was correct that parents would not permit such examinations, even with known physicians, to take place outside of their presence.  This fact, along with the inherently biased and stressful nature of these adversarial defense examinations, provides the good cause to allow a parent to sit quietly and unobtrusively in the room with their child during their respective DME.

    **b.**  There is no countervailing concern to justify forcing the minor Plaintiffs into this situation, as there was no demonstration or evidence that the presence of a parent would in any way interfere with a discovery examination. Defendant's expert, Dr. Huffman, in her Declaration, did not express any concern with having a parent in the room with their child during their examination.  While defense counsel tried to equate "attorney" with "parent," and asserted at the hearing that Dr. Huffman "…can state with confidence that having a parent there during the interview portion or any other portion of the examination is a problem," **[ECF 213, PageID. 4310]**, Dr. Huffman's two extensive Declarations **[ECF 206-3** and **ECF 210-1]**, focused on anticipated problems associated with "…the mere presence of attorneys during interviews…" **[*Id.*, PageID.4257]**. [4]  There

---

[4] Presumably this reference to the presence of attorneys was to address Michigan's rules that specifically provide that in all such examinations the order "may provide that the attorney for the person to be examined may be present at the examination"

6

was no support for counsel for Defendant's concern that the interviews or testing would somehow be invalidated if a parent were present during the examination.

 **c.** Moreover, in the Official Statement of the National Academy of Neuropsychology, regarding "Presence of Third Party Observers During Neuropsychological Testing," (attached to Dr. Huffman's first Declaration **[ECF 206-3, Exh. A, PageID.4116-17]**), it is noted that a circumstance that *supports* the presence of a third person, ",… include[s] a parent's calming presence during an evaluation of a child." **[*Id.,* PageID.4117]**.

 **d.** The Magistrate's ruling is contrary to the only relevant law in this District that addressed third party observers in the context of a neuropsych examination of a minor child or other legally incompetent plaintiff. *See Gohl v Livonia Pub Schools,* 2015 WL 146759 (ED Mich, March 30, 2015) and *Ardt v Allstate Insurance Co.*, 2011 WL 768294 (ED Mich, Feb 28, 2011). These two cases, which involved a legally incompetent plaintiff (and notably both involving Dr. Huffman), found good cause for the

---

MCR 2.311(A). Although this routinely occurs in Michigan without concern for invalid results, Plaintiffs were not asking for an attorney to be present but were addressing concerns for their minor Plaintiffs' anxiety in submitting to this procedure alone.

presence of a third person and no harm to the Defendants from proceeding in this manner.

    e.  In *Gohl*, the court considered the precise question presented in this case, in which the defendants' expert, Dr. Huffman, opposed a third-party observer during her testing of minor plaintiffs for all the same reasons asserted as in this case. Indeed, the defendants in *Gohl* relied on a near identical affidavit of Dr. Huffman, referencing the same APA Principles as well as Michigan's Ethical Standards relied upon by Defendant here. Judge Goldsmith found that while each of Dr Huffman's concerns could easily be addressed by a protective order or cautions in the Order setting the terms and conditions for the exam, the concerns for the minor child could only be addressed by allowing a parent to be present. The Magistrate Judge attempted to distinguish *Gohl* by asserting that the children were somewhat younger in the *Gohl* case (ages 6-9) as compared to (9, 10 and 14) the children in this case. The decisions in *Gohl* and *Ardt* (involving an adult) however were not dependent on a specific age range but rather the status of the plaintiffs as vulnerable individuals which applies equally to these minors. Plaintiffs are legally incompetent as a matter of law and the concerns expressed by Judge Goldsmith that "…parents would be reluctant to leave their minor child alone with a person hired by an

8

adversary, and that 'unlike a competent subject, an incompetent examinee would not be available to rebut the examiner's testimony regarding what had transpired during the examination.' [*Gohl* citation omitted]." Id, apply with equal force here. This is true of any legally incompetent child, whether ages 6 to 9 or 9 to 14.

The Magistrate Judge, in holding that Plaintiff children's legal incompetence, as minors, "…are not good reasons and do not establish special need," [ECF 212, PageID.4276], committed reversible error by summarily rejecting this legal and factual truth.

To the extent the Magistrate was influenced by Defendant's expert's threat to quit if a third party were allowed in the exam, this would be highly improper. Here the Defendant replaced their original expert with Dr Huffman, after the parties presented this dispute to this Court. They were well aware of Plaintiffs' position that a parent should be present in the minor's examination and were well aware – when they chose Dr Huffman – after a three-month search for a replacement – that she was taking this position. In the defendant's motion for reconsideration in *Gohl*, as in this case, Dr. Huffman indicated that if ordered to allow parents to be present during the examination of their children, it would be unethical, and she would "decline[] 'to proceed…'" *Gohl*, 2015 WL 13039423, at *2. In this

9

case Dr. Huffman restates the identical position to this Court. [ECF 206-3, Huffman Declaration, ¶19, PageID.4103]. The court in *Gohl*, relying on Judge Battani's ruling in *Ardt v. Allstate Insurance Co.*, (unpub'd), 2011 WL 768294, at *2, (E.D. Mich. Feb. 28, 2011), held that, "…to the extent that Defendant's expert claims 'she is unable to proceed with the examinations under the conditions ordered by the court,' … Defendant should expand her [sic] search for neuropsychologists." *Gohl*, 2015 WL 13039423, at *2. (Emphasis added). Likewise, Dr. Huffman's threat to decline to proceed, should be rejected here.

    **f.** Finally, the Magistrate Judge erred in relying on *Mager v. Wisconsin Central Ltd,* 924 F3d 831 (6th Cir. 2019), to support his decision. In *Mager*, the Sixth Circuit upheld the dismissal of the plaintiff's case on the grounds of "bad faith, willfulness or fault" of the plaintiff and his counsel that displayed "either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings," *Id.,* at p.837, (quoting *Carpenter v City of Flint,* 723 F.3d 700, 705 (6th Cir. 2013)). With respect to the Rule 35 IME in *Mager,* the court noted that there was no attempt by the plaintiff to seek an order allowing the plaintiff's counsel to attend or record the examination; yet the plaintiff's counsel sat in on the examination without authorization and surreptitiously

10

recorded it, during which the plaintiff refused to answer questions, (referring to his deposition testimony in lieu of answering the examiner's questions). *Id.,* at pp. 838-9. Although the Rule 35 order in *Mager* was silent regarding having an attorney present or a recording, the court held that the failure by plaintiff and his counsel to provide notice to defense counsel of their intent, and that the attorney's "…unexpected attendance at and surreptitious recording of the IME 'showe[ed] bad faith and lack of respect for the integrity of the legal profession." *Id.,* at p. 839.

It was within the context of the discussion of the plaintiff's bad faith conduct that the Sixth Circuit noted that the "…plaintiff's counsel should have known that 'federal courts generally do not allow a third-party to be present during an IME…unless the party has established a special need or good cause.' … [citations omitted]." *Id*. The Sixth Circuit further noted, however, that "…this court has not had occasion to address the parameters of the trial court's discretion to grant or deny such a request." *Id*. Indeed, the *Mager* court did not address parameters in its decision.

11) It is also important to note that every case cited by the Magistrate Judge in which a third party was not permitted to be present *pertained to competent adult plaintiffs*. See *Lahar v Oakland County,* 2005 WL 2006 WL 2269340 *8 (E.D. Mich. 2006); Williams v. Serra,* 2013 WL 3467314 (ED Mich 2013); and *Mager, supra,*

11

(in which the plaintiff had not even sought leave for a third party to be present). These cases, therefore, do not support the ruling excluding a parent from their children's examination in this case. These minor Plaintiffs are not seeking to record their examinations; they are simply seeking to allow a parent to sit quietly in the back of the room without interfering with the process.

12) Contrary to the Magistrate Judge's ruling, good cause exists for these children – all of whom were exposed to toxic water between April 2014 and the end of 2015 -- given their ages and consequent legal incapacity, along with the obvious trauma associated with having been exposed to lead-tainted water by their government, for a trusted guardian to be present during the interviews and testing of their children, under standard conditions that they do not interfere or obstruct.

WHEREFORE, Plaintiffs request that the Court enter an *Order Sustaining Plaintiffs' Objections to Magistrate Judge Ivy's Order Granting in Part Motion for Order for Rule 35 Examinations in Accordance with United States' Proposed Examination Protocol,* and order that with respect to the minor Plaintiffs that a parent should be present during their child's DME.

Respectfully submitted,

By: s/ Cary S. McGehee
Cary S. McGehee (P42318)
Beth M. Rivers (P33614)
PITT McGEHEE PALMER & RIVERS, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

Julie H. Hurwitz (P34720)
GOODMAN HURWITZ & JAMES, PC
1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com

*Co-Lead Counsel for the FTCA Plaintiffs*

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

*Co-Lead Counsel for the FTCA Plaintiffs*

Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A. LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com

*Attorneys for Plaintiffs*

Dated: March 20, 2023

13

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 20, 2023, she served a copy of **Plaintiffs' Objections to Magistrate's March 6, 2023 Order Granting in Part Motion for Oder For Rule 35 Examinations In Accordance With United States' Proposed Defendant Medical Examination Protocol [ECF No. 212]** upon all counsel of record utilizing the Court's electronic filing system.

                                        /s/ Carrie Bechill
                                        Legal Assistant
                                        Pitt McGehee Palmer Bonanni & Rivers PC