UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases,

_____/

This Response Relates to:
ALL CASES

Civil No. 4:17-cv-11218 Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

_____

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Legal Standard ........................................................................................................ 1

The Framework & Purpose of the Holmes Youthful Trainee Act ........................... 1

Protections Guaranteed by HYTA Preclude Matters in this Litigation .................... 5

Defendants will Suffer No Prejudice from a Protective Order ................................ 8

Conclusion ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Miller v. Alabama*, 567 U.S. 460 (2012) ................................................................6
*People v. Bandy*, 35 Mich. App. 53, 57; 19 N.W.2d 115 (1971) ...........................2,5
*People v. Bobek*, 217 Mich. App. 524, 528-29; 553 N.W.2d 18 (1996) ...................4
*People v. Dash*, 216 Mich. App. 412, 414; 549 N.W.2d 76 (1996) ..........................5
*People v. Dipiazza*, 286 Mich. App. 137, 141; 778 N.W.2d 264 (2017) ..................4
*People v. Giovanni*, 271 Mich. App. 409, 412; 722 N.W.2d 237 (2006)..................2
*People v. Giovannini*, 271 Mich. App. 409, 412; 722 N.W.2d 237 (2006)...............4
*People v. Mahler*, 156 Mich App 799; 402 NW2d 93 (1987).................................3
*People v. Parks*, 510 Mich 225, 252; 987 N.W.2d 161 (2022) ................................6
*People v. Perkins*, 107 Mich App 440, 440; 309 N.W.2d 634 (1981) ...................2,5

**Other Authorities**

MCL § 762.14(3) .....................................................................................................4

**PLAINTIFFS' MOTION FOR PROTECTIVE ORDER**

NOW COME Plaintiffs, by and through their counsel, and pursuant to this Court's June 7, 2023 Order (ECF No. 222), submit this Motion and Brief regarding relevant HYTA requirements, and seek an Order of Protection pursuant to Rule 26(c)(1).  In support, Plaintiffs state as follows:

**Legal Standard**

The issuance of protective orders is clearly within the power of district courts under the Federal Rules of Civil Procedure.  Rule 26(c)(1) provides that, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

In this case, there is good cause for issuing a protective order to preclude Defendants from questioning Plaintiff about, referencing or using any documents or facts related to a bellwether Plaintiff's HYTA involvement including the alleged facts leading to charges, resulting in a resolution under the Holmes Youthful Trainee Act (HYTA), based on the purpose and promised protections proved to youth under the statute.  MCL 762.14, as well as Federal Rule of Evidence Rule 609(d) and Rule 503.

**The Framework & Purpose of the Holmes Youthful Trainee Act**

Michigan has one of the oldest and most robust laws in the country shielding young people who were not eligible for the protections of the juvenile justice system from prison sentences and the stain of a criminal record.  In 1966, Michigan passed

the Holmes Youthful Trainee Act ("HYTA"), allowing 17- to 20-year-olds who pled guilty to a crime, other than a serious felony, to have the conviction held in abeyance and upon successful completion of probation, a dismissal of the charges. 1966 PA 301.[1] The Court of Appeals explained the justification for HYTA:

> The age classification indicates a legislative belief that individuals in the 17 to 20 age bracket would be more amenable to the training and rehabilitation provided under the act. The statute also evidences a legislative desire that persons in this age group not be stigmatized with criminal records for unreflective and immature acts.

*People v. Perkins*, 107 Mich App 440, 440; 309 N.W.2d 634 (1981).[2]

The HYTA is a remedial statute, enacted to provide youth with the opportunity to have their adolescent and youthful mistakes resolved by a restorative process that does not result in a conviction or future consequences. HYTA was intended to be an innovative use of rehabilitative procedures without imposing liabilities resulting from a conviction. *People v. Bandy*, 35 Mich. App. 53, 57; 19 N.W.2d 115 (1971), ("[HYTA] is a remedial statute and should be construed liberally for the advancement of the remedy"); *People v. Giovanni*, 271 Mich. App. 409, 412; 722 N.W.2d 237 (2006) (recognizing "this remedial legislation was designed to alleviate problems with

---

[1] HYTA initially set the maximum age for the program at 20, but the Act was amended in 2015 to raise the age of eligibility to 23. 2015 HB 4159; 2015 HB 4069.

[2] In 2019, in another step reflective of and responding to the evolving development research on emerging adults, the legislature, after raising the age for inclusion in the juvenile justice system, from age 17 to age 18, again amended HYTA to include youth between the ages of 18 and 26 within the protections and provisions of the second chance HYTA provisions for youthful trainee status. MCL 726.11.

2

young offenders by permitting the use of rehabilitative procedures prior to conviction").

In passing HYTA, the Michigan legislature established special categories of youth whose contacts with the criminal justice system involved lesser offenses and whom the legislature determined were deserving of a chance to have a clean slate after a period of probationary supervision. The statute, therefore, provides a mechanism for diverting youth from the traditional system of conviction and sentence, by assigning them the status of "youthful trainee." This allows for supervised probation *without* any conviction, and full erasure and seal of the original charges upon successful completion of the youthful trainee assignment.

The purpose of HYTA is to give youthful offenders a second chance, free from any encumbrances of a mistake made in their youth. The act allows for *no* criminal conviction and *no* public disclosure of the arrest to prevent any stigma associated with a criminal conviction. *People v. Mahler*, 156 Mich. App. 799, 802; 402 N.W.2d 93 (1987) (youthful trainees have not been convicted of a crime and therefore are not subject to sentencing); MCL § 762.14(2) ("assignment of an individual to youthful trainee status is not a conviction."). HYTA also explicitly provides that the youth shall not suffer any civil disability or loss of a right or privilege because of their status as a HYTA youthful trainee:

> An assignment of an individual to the status of youthful trainee as provided in this chapter *is not a conviction for a crime* and, except

3

> as provided in subsection (3), the individual assigned to the status of youthful trainee *shall not suffer a civil disability or loss of right or privilege* following his or her release from that status because of his or her assignment as a youthful trainee.

MCL § 762.14(2) (emphasis added).

The process for HYTA protection is, upon being charged, if a youth enters a plea, the court holds the plea in abeyance and upon completion of a supervised probation period, the charges are dismissed and there is to be no public record of the matter: "[A]ll proceedings regarding the deposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection, but shall be open to the courts of this state, the department of corrections, the department of social services, and law enforcement personnel for use only in the performance of their duties." MCL § 762.14(3).

In order to honor the promise given by the state, in return for a youth's plea, the confidentiality provisions of HYTA are to be strictly enforced. Indeed, Michigan adopted HYTA so that youth could avoid the permanent consequences of a criminal record. *People v. Dipiazza*, 286 Mich. App. 137, 141; 778 N.W.2d 264 (2017) ("HYTA is essentially a juvenile diversion program for criminal defendants"); *People v. Giovannini*, 271 Mich. App. 409, 412; 722 N.W.2d 237 (2006) (HYTA "permit[s] the use of rehabilitation procedures prior to conviction"); *People v. Bobek*, 217 Mich. App. 524, 528-29; 553 N.W.2d 18 (1996) (HYTA "offers a mechanism by which youths…may be excused from having a criminal record"). The statute reflects a

4

"legislative belief that individuals in the 17 to 20 age bracket" are amenable to rehabilitation. *People v. Perkins*, 107 Mich. App. 440; 309 N.W.2d 634 (1981). The Act in effect "establish[es] an administrative procedure…prior to conviction" with the goal of using "rehabilitative procedures" to address youthful offending. *People v. Bandy*, 35 Mich. App. 53, 59; 192 N.W.2d 115 (1971). HYTA "is a remedial statute and should be construed liberally for the advancement of the remedy." *Bobek*, 217 Mich. App. At 529.

**Protections Guaranteed by HYTA Preclude Matters in this Litigation**

HYTA bars collateral consequences once HYTA charges are dismissed. MCL 762.14(2) (trainee "shall not suffer a civil disability or loss of right or privilege"). To ensure that dismissed charges do not come back to haunt youth, HYTA records are sealed. MCL 762.14(4) (all HYTA proceedings "closed to public inspection"); see also *People v. Dash*, 216 Mich. App. 412, 414; 549 N.W.2d 76 (1996) (HYTA records not public).

Under HYTA, the state promises that in return for the youth giving up their constitutional protections, including a right to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond all reasonable doubt, the charges will be dismissed in exchange for entering a plea and completion of the court ordered supervision. MCL 762.11(1), 762.11(4), 762.13, 762.14(1). Fundamental fairness means that this agreement be honored,

5

including that Plaintiff "not suffer a civil disability or loss of right or privilege."

Defendants apparently seek to question a bellwether Plaintiff regarding accusations, that resulted in a 10-day school suspension pending investigation of the accusations and the subsequent filing of charges stemming from these accusations that resulted in a HYTA resolution. This youthful Plaintiff gave up an opportunity to dispute those allegations and charges in exchange for a promise that a plea would result in dismissal of all charges, that all matters related to the charges would be confidential, and he would suffer no loss of civil rights or privileges, if he successfully completed supervision. Although Plaintiff has not yet completed the supervisory probation, the Plaintiff would lose all benefits of the HYTA agreement if Defendants are permitted to question him or obtain documents relating to the incident for which he entered a plea under HYTA.

The bellwether Plaintiff was 18 at the time of these allegations and as the Michigan Supreme Court recently held, in extending the protections provided to children by the U.S. Supreme Court in *Miller v. Alabama*, 567 U.S. 460 (2012), to 18 year olds, "[l]ate-adolescent brains are far more similar to juvenile brains, as described in *Miller*, than to the brains of fully matured adults" thus, "there is no meaningful distinction between those who are 17 years old and those who are 18 years old." *People v. Parks*, 510 Mich 225, 252; 987 N.W.2d 161 (2022) (internal citations omitted).

The Michigan Supreme Court noted that:

6

> Michigan has long recognized the differences in late-adolescent brain development, as evidenced by the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.* and both federal and state laws suggest that our society has judged 18-year-olds as not sufficiently mature to engage in certain risky and potentially dangerous activities; these laws recognize that 18-year-olds make decisions differently.

*Parks* at 253

The recognition of the need to protect these youth from the consequences of exposure or use of their criminal charges to their detriment is also embedded in the Federal Rules of Evidence, including Rule 609(d), which governs the admissibility of criminal conviction evidence for impeachment purposes. Recognizing the distinction between youth and adults and to protect youth, the rule provides that evidence of a juvenile adjudication is not admissible in civil actions. Rule 609(d)(1).

The policies underlying Rule 609(d)'s exclusion of evidence of juvenile adjudications are similar to those that exclude adult convictions after rehabilitation has been established per Rule 609(c). Excluding evidence of these convictions is also fully consistent with excluding any evidence of a HYTA adjudication (which does not involve any conviction) which is intended to protect youth such as this 18-year-old Plaintiff from using the HYTA adjudication as evidence in a civil proceeding.

In addition to Rule 609(d) and (d)(1), the evidence of Plaintiff's HYTA is also inadmissible under Rule 503 as it is unduly prejudicial. Even without a jury trial, abandoning HYTA protections exposes this young man to public disclosure of his charges in court and in a judicial record, despite the promise of confidentiality and

7

commitment. Plaintiff was assured that in giving up his right to contest these allegations, he would not suffer any prejudice or any loss of rights or privileges in the civil context. HYTA requires confidentiality, precludes any civil disability as a result of HYTA, and further that any evidence of the HYTA, and all underlying charges, would be protected as inadmissible and subject to a protective order in this matter.

For this reason, Plaintiff's school records that reference this matter, any judicial proceedings, and any documents and references, related to this HYTA proceeding should be excluded from use in this civil proceeding. Further Plaintiff should not be required to testify regarding the incident that led to the HYTA plea or any related matter.

**Defendants will Suffer No Prejudice from a Protective Order**

While Plaintiffs fully intend to argue that this youthful Plaintiff's exposure to lead negatively impacted and exacerbated his neurological and physical development, during these years of ongoing neurodevelopment characterized by neuroplasticity and its attendant characteristics, Plaintiffs do not intend to address or introduce the allegations that form the basis of the HYTA charges and disposition, in order to protect Plaintiff's promised privacy and confidentiality rights.

As the Court in *Parks* acknowledged, there are characteristics that are attendant to late adolescence:

> Lastly, these hallmarks of the developing brain render late adolescents less fixed in their characteristics and more

8

> susceptible to change as they age. Late adolescents, as they age, continue to formulate their identities, become more assertive and decisive, show increases in self-control and the ability to resist outside influence, become more reflective and deliberate, and demonstrate a decrease in aggressiveness and alienation. See, e.g., *Adolescence as a Critical Period for Developmental Plasticity*, 1654 Brain Res. at 85; Tanner & Arnett, *The Emergence of "Emerging Adulthood": The New Life Stage Between Adolescence and Young Adulthood*, in *Handbook of Youth and Young Adulthood: New Perspectives and Agendas* (New York: Routledge, 2009), pp. 39-42.

*Parks*, 510 Mich. at 251-52.

Unfortunately, the impact of lead on cognitive functioning undermines the age-appropriate development of behavioral control, precisely because brain development is in a highly critical period during adolescence and late adolescence, during which core circuits are being established. This is why lead exposure is so devastating to youth. The neurodevelopmental effects of early life lead exposure are widespread and substantial, impacting intellectual functioning, mental health, and problem behavior and there is ample evidence that intellectual functioning is negatively affected with attendant risks for learning, academic achievement, and eventual academic attainment. It has also been found that lead increases Attention Deficit Hyperactivity Disorder (ADHD), and there is also ample evidence that early life lead exposure leads to increased difficulties in impulse control and self-regulation as another long-lasting effect, with a consequently increased probability of delinquent behavior and involvement with the juvenile justice or criminal justice system.

The behavioral issues related to other school suspensions will be at issue and Defendants are free to address these issues. However, there is no basis for Defendants' introduction of the HYTA charges, as Plaintiffs will not be extending their proofs to this matter, as they are protected by statute and Federal Rules of Evidence, and Defendants are not unduly prejudiced by this protection.

## CONCLUSION

Therefore, Defendants should be precluded from questioning Plaintiff about the incident underlying the HYTA plea or any other matter related to the HYTA plea. Further Defendants should be precluded from obtaining discovery about or introducing any evidence or documents related to the incident underlying the HYTA plea or the fact that Plaintiff entered into a HYTA agreement.

Respectfully submitted,

By: s/ Cary S. McGehee
Cary S. McGehee (P42318)
Beth M. Rivers (P33614)
PITT McGEHEE PALMER & RIVERS, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

Julie H. Hurwitz (P34720)
GOODMAN HURWITZ & JAMES, PC
1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com

10

*Co-Lead Counsel for the FTCA Plaintiffs*

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

*Co-Lead Counsel for the FTCA Plaintiffs*

Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A. LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com

*Attorneys for Plaintiffs*

Dated: June 16, 2023

# CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on June 16, 2023.

Signature: /s/ Carrie Bechill
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cbechill@pittlawpc.com

11