UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases,

_____/

Case No. 17-cv-11218
(Consolidated)

This Order Relates to:

*S.J. v. EPA*                                                    Honorable Linda V. Parker

_____/

**OPINION AND ORDER GRANTING MOTION TO SEAL (ECF NO. 224) AND MOTION FOR PROTECTIVE ORDER (ECF NO. 223)**

This matter is before the Court on Plaintiffs' Motion for Protective Order (ECF No. 223), and a motion to file two documents under seal (ECF No. 224), which the United States offers to aid in the disposition of Plaintiffs' motion. Because the Court finds the documents offered by the United States useful in resolving Plaintiffs' motion, it is granting the motion to file those documents under seal. Because the Court finds good cause to issue a protective order, it is granting Plaintiffs' request for one.

## Background

### SJ's Deposition

Earlier this year, on May 23, the United States deposed bellwether plaintiff SJ, who is now 21-years old. Almost six months earlier, on November 3, the United States provided Plaintiffs' counsel with copies of SJ's educational records,

which the United States had subpoenaed from a third party.  Those records include a "Discipline Alert" listing several infractions by and disciplinary actions against SJ from October 1, 2018 through November 12, 2020, while he was a student at Swartz Creek High School.  Prior to SJ's deposition, Plaintiffs' counsel did not object to the use of any evidence at the deposition.

During the deposition, however, counsel for the United States began asking SJ about any behavioral problems he had in high school.  (ECF No. 226 at PageID 4517.)  Plaintiffs' counsel objected, claiming privilege, and instructed SJ not to answer.  (*Id*.)  An off-the-record discussion ensued, followed by the parties contacting the Court to discuss Plaintiffs' counsel's objection.  (*Id*.)  Plaintiffs' counsel informed the United States, and then the Court, that conduct leading to one of SJ's disciplinary actions—specifically a November 6, 2020 incident which led to a 10-day out-of-school suspension—resulted in criminal charges and a purported plea agreement under Michigan's Holmes Youthful Trainee Act ("HYTA").  Plaintiffs' counsel argued that HYTA precludes the conduct, charges, and plea agreement from being explored.

The Court instructed that the deposition proceed, without questions related to the November 2020 incident, and that the incident be redacted from the school record when used during the deposition.  The Court requested post-deposition briefing to address whether the incident may be explored at a renewed deposition.

The deposition then continued on May 23, with counsel for the United States shortly thereafter asking SJ about other disciplinary incidents on the redacted report. (*Id.* at PageID 4518, 4522-23.) Counsel asked SJ *inter alia* whether he was contending that the disciplinary actions listed on the now-redacted report are attributable to his exposure to the contaminated Flint River water that is the subject of this lawsuit. (*Id*. at PageID 4523.) SJ answered, "Yes." (*Id*.) When asked why, SJ explained that he would not do anything like what was listed on the report prior to his exposure to the contaminated water. (*See id*.) Counsel for the United States then asked the same general questions with respect to several of the specific acts of misconduct. (*See id.* at PageID 4527-35.)

**Plaintiffs' Motion for Protective Order & Related Briefing**

Following the deposition, Plaintiffs filed the pending motion for protective order. (ECF No. 223.) Plaintiffs focus in their supporting brief on HYTA's framework and purpose, arguing that allowing the United States to question SJ about the November 2020 incident and related charges would violate HYTA expressly or at least in spirit. Plaintiffs also cite to evidentiary rules which would arguably preclude the admission into evidence of any HYTA charges and/or related HYTA agreement.

In response, the United States argues that nothing in HYTA or any case interpreting the statute bars civil discovery into facts underlying or related to a

3

separate HYTA-pled criminal case. (ECF No. 227.) In other words, the United States maintains the HYTA does not create a privilege protecting related information from discovery. The United States points out that different rules and standards govern whether information is discoverable as opposed to admissible at trial. As the United States additionally points out, the scope of discovery under the Federal Rules of Civil Procedure is broad and includes matters bearing on or that reasonably could lead to matters bearing on any issue in the case. The United States asserts that the November 2020 disciplinary incident is relevant because SJ alleges that his misconduct was directly related to his consumption of and exposure to the contaminated water from the Flint River.

In its response brief, the United States asks the Court to sanction Plaintiffs for impeding or frustrating the examination of SJ, pursuant to Federal Rule of Civil Procedure 30(d)(2). The United States seeks the reasonable expenses, including court reporter and videographer fees, of reconvening the deposition.

Plaintiffs argue in reply that SJ did not contend at his deposition that the November 2020 discipline was attributed to the Flint water, as that disciplinary action had been redacted from the report presented to him at the deposition. (ECF No. 234.) Plaintiffs further argue that the United States provides no other basis to conclude that this conduct and/or discipline are relevant. Instead, Plaintiffs maintain, the United States' "assertion that the high school suspension 'may bear

upon [its] defenses or lead to information that bears upon those defenses' is simply an unsupported, conclusory statement that is insufficient to support discovery so far afield from any claim or defense in this case." (*Id*. at PageID 4649 (quoting ECF No. 227 at PageID 4619).)  Plaintiffs represent that they do not intend to address or introduce the allegations that form the basis of the HYTA charges and disposition.  (ECF No. 223 at PageID 4460.)

Clarifying the arguments raised in their opening brief, Plaintiffs assert that they seek a protective order because the information sought is not relevant, HYTA's "framework, purpose[,] and protections" would be undermined if the United States is able to force SJ to disclose the conduct underlying the charges, and they are seeking to protect SJ from annoyance, embarrassment, and oppression.  (ECF No. 234 at PageID 4650.)  Plaintiffs also argue that sanctions are unavailable and unwarranted.

## Applicable Law & Analysis

### Scope & Limitations on Discovery

Rule 26 of the Federal Rules of Civil Procedure defines the scope of discovery:

> Unless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

5

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The scope "is traditionally quite broad." *Lewis v. ACB Bus. Servs, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998) (citing *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). "The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Id*. (quotation marks and citation omitted).

"[D]iscovery of matter 'not reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Id*. (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-52 (1978)). "[D]iscovery has limits and these limits grow more formidable as the showing of need decreases." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting 8A Charles Alan Wright & Arthur R. Miller, et al, Fed. Practice & Proc. § 2036 (3d ed. 2012)) (ellipsis omitted).

"[F]or good cause," the court may issue a protective order and preclude discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from [a harm(s) listed in Rule 26(c)(1)] 'with a particular and specific

6

demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano*, 699 F.3d at 901).

## Analysis

The United States maintains that SJ's suspension in 2020 is relevant because SJ contends that his middle- and high-school disciplinary issues are attributable to the contaminated Flint water. Plaintiffs indicate, however, that this is not SJ's contention. In fact, Plaintiffs offer that SJ is not seeking damages or injuries related to the behavior that led to this suspension. In other words, he is not claiming that his consumption of the contaminated water caused this particular behavior. As such, the relevance of this incident to the pending litigation is unclear. The United States asserts that "it is reasonable to conclude that information about the 2020 10-day high school suspension may bear upon Defendant's defenses or lead to information that bears upon those defenses," (ECF No. 227 at PageID 4619). Yet, without more specificity, this Court struggles to find how the conduct and suspension could have any bearing on the issues to be tried.

Moreover, any possible relevance is outweighed by the embarrassment and oppression that SJ would most likely suffer if the United States is allowed to explore these matters. The nature and seriousness of the behavior is particularly

relevant to the Court's assessment. And while HYTA does not create a privilege, the statute reflects the Michigan legislature's desire to shield young individuals from the stigmatism of their "unreflective and immature acts." *People v. Perkins*, 309 N.W.2d 440, 444 (Mich. Ct. App. 1981).

The Court acknowledges that HYTA focuses on the confidentiality of "the *proceedings regarding the disposition of the criminal charge* and the individual's *assignment* as youthful trainee[,]" Mich. Comp. Laws § 762.14(4) (emphasis added), and that the United States does not seek to ask SJ about any criminal charges or his HYTA status.[1] The Court further acknowledges that the statute prohibits a youthful trainee's loss of "a civil disability or loss of right or privilege[,]" *id.* § 762.14(2), and that asking SJ questions at his deposition about his conduct in November 2020 and resulting *school* discipline does not jeopardize any civil liberty or privilege. Nevertheless, the statute reflects an acknowledgment that youthful indiscretions and/or criminal actions, period, generally should be

---

[1] The United States cites two cases to argue that "the Michigan Court of Appeals has limited this phrase to the sealing of records and closure of hearings in the specific criminal matter after youthful-trainee status has been granted." (ECF No. 227 at PageID 4623 (citing *People v. GR*, 951 N.W.2d 76 (Mich. Ct. App. 2020); *People v. Bobek*, 553 N.W.2d 18 (Mich. Ct. App. 1996)).) This argument overstates the Michigan court's holdings as neither case raised the issue—or opined on the issue—of whether confidentiality extends to proceedings outside the specific criminal matter. *GR* presented the issue of whether probation-review hearings for youthful trainees may remain closed. 951 N.W.2d at 78-79. *Bobek* presented the same issue with respect to a probation termination hearing. 553 N.W.2d at 21.

shielded from public view. *See People v. Bobek*, 553 N.W.2d 18, 21 (Mich. Ct. App. 1996) (finding, in response to the press discovering information regarding the youthful trainee's misbehavior, that this was "the very harm the YTA seeks to prevent"); *see also id.* at 20 (quoting the trial court's statement that "the purpose of the statute was to protect young people so that the public would not be aware of their behavior").

For these reasons, but even putting aside HYTA, the Court concludes that a protective order should issue to shield SJ from the embarrassment and oppression of discussing his November 2020 discipline and the conduct leading to that discipline. The Court appreciates the United States' argument that Plaintiffs should have sought this protective order well in advance of SJ's deposition so as not to "impede[], delay[], or frustrate[] the fair examination of [SJ]." Fed. R. Civ. P. 30(d)(2). Nevertheless, because the Court is granting Plaintiffs' request for a protective order, it cannot conclude that their position was unjustified. *See* Fed. R. Civ. P. 37(d)(3). Moreover, as the Court expects that SJ's deposition will not be reconvened in light of the protective order, the expenses the United States asks Plaintiffs to pay as a sanction will not be incurred.

Accordingly,

**IT IS ORDERED** that the motion to file documents under seal filed by the United States (ECF No. 224) is **GRANTED**;

9

**IT IS FURTHER ORDERED** that the motion for protective order filed by Plaintiffs (ECF No. 223) is **GRANTED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: October 19, 2023