UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases

This Motion Relates to:
ALL CASES

Civil No. 4:17-cv-11218
 (Consolidated)

Linda V. Parker
 United States District Judge

Curtis Ivy, Jr.
 United States Magistrate Judge

_____

## PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION A UNREDACTED DOCUMENTS IMPROPERLY IDENTIFIED BY DEFENDANT AS PROTECTED BY ATTORNEY CLIENT PRIVILEGE

Plaintiffs, by their undersigned counsel, hereby file Plaintiffs' Motion to Compel the Production of Unredacted Documents Improperly Identified by Defendant as Protected by Attorney- Client Privilege pursuant to Fed. R. Civ. P. 37(a), and in support thereof states as follows:

1.     This is a large collective action against the USA-Environmental Protection Agency (EPA) brought on behalf of thousands of individuals who were harmed as a result of the Flint Water Crisis. The case has been filed under the Federal Tort Claims Act. 28 U.S.C. section 1346(b).

2.     During the course of discovery, Plaintiffs have requested the production of documents relevant to their claims.

3.     Defendant has produced over 200,000 documents, many of which have been heavily redacted based on the assertion that the redacted portions of the documents are protected by the Attorney-Client Privilege.

4.     For example, Defendant produced a memorandum drafted by the EPA's Office of Inspector General (OIG) of a March 9, 2016 interview with Avi Garbow, General Counsel in the EPA Office of General Counsel (OGC) regarding his role in the EPA's response and exercise of oversight authority in response to the contamination of the City of Flint's community water system.  (Garbow Interview, attached as Exhibit 1 hereto) This document is heavily redacted, asserting the Attorney-Client Privilege (Defendant's Privilege Log line 140-141).  Based on the breadth and context of the redactions, Plaintiffs believe that all or portions of the documents have been improperly redacted and are not protected by the privilege asserted by Defendant, thus necessitating this motion to compel.

5.     In Michigan, the Attorney-Client Privilege applies when all of the following conditions are satisfied: (1) a client requests legal advice; (2) from their legal adviser acting in a legal capacity and (3) the request is made by the client in confidence. *Taylor v. Temple & Cutler*, 192 FRD 552, 555-556 (E.D. Mich. 1999). A document is not privileged unless it gives specific legal advice on a specific legal point.

6.     The party invoking the privilege has the burden of proving that it

applies. *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir.1999).  Since the privilege excludes relevant evidence and stands "in derogation of the search for the truth," *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), "[i]t is appropriate to use it 'only to the very limited extent that ⋯ excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980), quoted in *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir.1997) (internal quotation marks omitted), cert. denied sub nom. *Office of President v. Office of Indep. Counsel*, 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997).

7.    Defendant cannot meet its burden as to its redactions to the Garbow interview and other OIG interviews discussed in the brief attached.

8.    Moreover, Defendant has asserted an "Advice of Counsel" defense in this case in relation to why it did not act earlier in issuing administrative orders under sections 1414 and 1431 of the Safe Water Drinking Act of 1974, 42 U.S.C § 300f et seq.  Specifically, Region 5 Administrator, Susan Hedman, testified that she relied on the advice given to her by EPA's Office of Compliance Enforcement and Assurance (OCEA) and its Office of General Counsel (OGC) when she decided to delay issuing an Emergency Order under section 1431 of the SDWA until January

2016, although she knew as  as June of 2015, or earlier, that Flint had failed to implement corrosion control and that lead was leaching into Flint's water pipes, into the community water system, and into Flint water users' bodies. (Hedman  Dep. 7/16/20, pp 24, 257-259; 7/17/20, pp 349-350).

9.      The Sixth Circuit has made clear that a defendant "certainly c[an] not assert that he relied on privileged communications and then hide behind the privilege." *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005).  "The attorney-client privilege cannot at once be used as a shield and a sword." *Id.* at 604 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). "This image is meant to convey that 'the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.'" *Ross*, 423 F.3d at 604–05 (quoting *Bilzerian*, 926 F.2d at 1292); *see also In re United Shore Fin. Servs.*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) ("Litigants cannot hide behind the privilege if they are relying on privileged communications to make their case or, more simply, cannot use the privilege as 'a shield and a sword.'").

10.     With respect to all communications related to legal advice given by the EPA's OCEA and  OGC to delay in issuing an Emergency Order, Defendant has waived the Attorney- Client Privilege.

11.     Prior to a Status Conference held with this Court on November 8, 2023,

the parties held a meet and confer in accordance with LR 7.1, during which Plaintiffs explained the nature of the motion and legal basis and requested concurrence but did not obtain concurrence in the relief sought.

12. At the Status Conference, Plaintiffs brought this issue up with the Court and it directed Defendant to produce an unredacted version of the Garbow interview memorandum to the Court by Monday November 13th, for an in-camera review.

13. On November 9, 2023, Defendant filed a Notice of filing an unredacted version of the Garbow interview. (ECF 250). The Court further directed Plaintiffs to file a motion to compel on the issue no later than November 13, 2023. (See November 7, 2023, minute entry)

For the reasons set forth herein and in the brief attached hereto, Plaintiffs respectfully request that this Court grant their Motion to Compel and require Defendant to produce forthwith unredacted versions of documents that are not protected by the Attorney- Client Privilege.

Respectfully submitted,

By: _s/ Cary S. McGehee_
    Cary S. McGehee (P42318)
    Beth M. Rivers (P33614)
    PITT McGEHEE PALMER & RIVERS, PC
    117 W. Fourth Street, Suite 200
    Royal Oak, MI 48067
    (248) 398-9800
    cmcgehee@pittlawpc.com
    brivers@pittlawpc.com

Julie H. Hurwitz (P34720)
GOODMAN HURWITZ & JAMES, PC
1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com

*Co-Lead Counsel for the FTCA Plaintiffs*

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A.
LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com

*Attorneys for Plaintiffs*

Dated: November 13, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases                Civil No. 4:17-cv-11218
                                               (Consolidated)

This Motion Relates to:                       Linda V. Parker
ALL CASES                                      United States District Judge

                                              Curtis Ivy, Jr.
                                              United States Magistrate Judge

_____

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL THE PRODUCTION A UNREDACTED DOCUMENTS IMPROPERLY IDENTIFIED BY DEFENDANT AS PROTECTED BY ATTORNEY CLIENT PRIVILEGE**

# TABLE OF CONTENTS

Table of Authorities ................................................................................ii

Introduction/Statement of Facts ..............................................................1

ARGUMENT ..........................................................................................2

    A. Attorney Client Privilege.........................................................2

       1.  Defendant's Redactions are Overbroad ............................................2

       2.  The Attorney-Client Privilege Does Not Protect Communications by an Attorney that are Related to Business and Regulatory Guidance Issues .................................................................................7

       3.  By Asserting the Advice of Counsel Defense, Defendant has Waived the Attorney-Client Privilege ...........................................................9

Conclusion and Relief Requested ...........................................................17

# INDEX OF AUTHORITIES

## Cases

*Barfoot v Boeing Co*., 184 FRD 642 (ND Ala 1999) ...................................9

*Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir. 1992)...........................12

*Co-Jo, Inc. v. Strand*, 226 Mich. App. 108, 112; 572 N.W.2d 251 (1997) ..............4

*Continental Casualty Co. v. Marsh*, 2004 WL 42364 (N.D. Illinois, 2004) ............6

*Diversified Industries*, 572 F.2d 596 (8th Cir. 1978) ................................6

*Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349–50 (Fed. Cir. 2005).......10

*Freiermuth v. PPG Industries*, 218 F.R.D. 694, 700 (N.D. Al. 2003) .....................8

*Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 451;
     528 N.W.2d 778 (1995) .........................................................3

*Glenmede Trust Company v. Thompson*, 56 F.3d 476 (3rd Cir. 1995) ...................12

*Harding v Dana Transp*., 914 F Supp 1084 (D NJ 1996) ........................................9

*Hubka v. Pennfield Twp.*, 197 Mich. App. 117, 121; 494 N.W.2d 800 (1992)........4

*In re EchoStar Commc'ns Corp*., 448 F.3d 1294, 1299 (Fed. Cir. 2006)...............10

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918
     (8th Cir.1997).....................................................................3, 5

*JJK Min. Co., LLC v. Swiger*, 292 F.R.D. 323, 329 (N.D.W.V., 2013) .................11

*Kubiak v. Hunt*, 143 Mich. App. 465, 473; 372 N.W.2d 341 (1985) ........................3

*Leibel v. Gen Motors Corp.*, 250 Mich. App. 229, 238; 646 N.W.2d
     179 (2002)...........................................................................3

*Marten v Yellow Freight System Inc*, 1998 WL 13244 (D Kan 1998) ......................9

*McCartney v. Attorney General*, 231 Mich. App. 722, 731; 587
     N.W.2d 824 (1998) ...............................................................3

*Michigan First Credit Union v. Cumis Ins. Society, Inc.*, Case No. 05-74423,
     unpublished (E.D. Mich. Dec. 7, 2007)....................................................4

*Neuder v Battelle Pacific Northwest National Laboratory*, 194 FRD 289,
     292 (D DC 2000) .................................................................8

*Office of President v. Office of Indep. Counsel*, 521 U.S. 1105,
     117 S.Ct. 2482, 138 L.Ed.2d 991 (1997)..........................................3, 5

*People v. Van Alstine*, 57 Mich. 69, 77-78; 23 N.W.2d 594(1885)...........................3

*Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998)..........................................4

*Taylor v. Temple & Cutler*, 192 FRD 552, 555-556 (E.D. Mich. 1999)..............2, 3

*Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186
     (1980)...............................................................................3, 5

*United States v. Dakota*, 188 F.3d 663, 667 (6th Cir.1999) ................................3, 4

*United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039
  (1974) ................................................................................................................3, 5
*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)..........................................2
*Upjohn v. United States*, 449 U.S. 383, 395-96 (1981) ...........................................5
*Zen Design Grp. Ltd. v. Scholastic, Inc.,* 327 F.R.D. 155, 160
  (E.D. Mich. 2018) ...............................................................................................10

**Other Authorities**

42 U.S.C. § 300i(a)...................................................................................................15
42 U.S.C. §§ 300g-3, 300i ........................................................................................13
Fed. R. Evid. 501 .......................................................................................................4

## INTRODUCTION/STATEMENT OF FACTS

This case arises from the poisoning of a community's water system – the Flint Water Crisis- caused by the negligence of the Defendant, USA EPA. Plaintiffs are thousands of Flint water users who have sued the EPA under the Federal Tort Claims Act (FTCA) for the physical and psychological harm and property and business losses caused by Defendant's failure to remediate the poisoning of their water system despite notice of the harm and the means to prevent it. This Court is intimately aware of the underlying facts of this case as set forth in its Opinion and Order Denying Defendant's Motion to Dismiss. ECF 76.

This is a discovery motion. During the course of discovery, Plaintiffs have requested the production of documents relevant to their claims. Defendant has produced over 200,000 documents, many of which have been heavily redacted based on the assertion that the redacted portions are protected by the Attorney-Client Privilege. In particular, Defendant produced a memorandum drafted by the EPA's Office of Inspector General (OIG) of an interview that it conducted on March 9, 2016, with Avi Garbow, EPA's OGC's General Counsel. (Garbow Interview, attached as Exhibit 1 hereto) This document is heavily redacted based on Attorney-Client Privilege (Defendant's Privilege Log line 140-141). Based on the breadth and context of the redactions, Plaintiffs believe that all or portions of the documents have been improperly redacted and are not protected by the privilege asserted by

Defendant necessitating this motion to compel. Additional OIG interviews were similarly redacted by Defendant and are also the subject matter of this motion and will be discussed infra.

In addition, Defendant has asserted an "Advice of Counsel" defense in this case to explain why it did not act earlier to issue a Non-Compliance Order and an Emergency Order pursuant to sections 1414 and 1431, respectively, of the Safe Drinking Water Act (SDWA) of 1974 (codified generally in 42 U.S.C. 300 g-3, 300i-f). As to all communications related to legal advice to delay issuing §§ 1414 and 1431 orders, Defendant has waived the Attorney- Client Privilege.

For the reasons set forth below, this Court should grant Plaintiffs' Motion to Compel and order Defendant to produce unredacted documents forthwith.

## ARGUMENT

### A. Attorney Client Privilege

#### 1. Defendant's Redactions are Overbroad

The Attorney-Client Privilege is a common law doctrine that allows a party to withhold otherwise relevant information if they reasonably believe it contains either a request for legal advice or the giving of legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege is to allow a client to freely ask for legal advice even if the request appears inculpatory, and a lawyer should be able to freely give legal advice even it is unfavorable to the client. *Id*.; see also

*Kubiak v. Hunt*, 143 Mich. App. 465, 473; 372 N.W.2d 341 (1985). In Michigan, the privilege applies when all of the following conditions are satisfied: (1) a client requests legal advice; (2) from their legal adviser acting in a legal capacity and (3) the request is made by the client in confidence. *Taylor v. Temple & Cutler*, 192 FRD 552, 555-556 (E.D. Mich. 1999); see also *Kubiak*, 143 Mich. App. at 472-473 (holding that the "privilege attaches to confidential communications made by a client to his attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation."). A document is not privileged unless it gives specific legal advice on a specific legal point. *McCartney v. Attorney General*, 231 Mich. App. 722, 731; 587 N.W.2d 824 (1998).

Furthermore, to be privileged, the legal advice must be given by a licensed attorney acting in their capacity as an attorney. See *Leibel v. Gen Motors Corp.*, 250 Mich. App. 229, 238; 646 N.W.2d 179 (2002)(holding that the privilege applied to protect a memorandum, drafted by an attorney in the defendant's legal department, which contained "legal opinions and legal recommendations"); *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 451; 528 N.W.2d 778 (1995)(addressing whether the defendant functioned only as a technical expert, or also as an attorney, during employment with the plaintiff); see also *People v. Van Alstine*, 57 Mich. 69, 77-78; 23 N.W.2d 594(1885)(suggesting privilege did not attach to communications with an attorney because the defendant had not approached the attorney in their

professional capacity.) **Only the privileged portion of document may be withheld, and a party may not rely upon a portion of the document that is privileged to withhold the entire document**. *See Michigan First Credit Union v. Cumis Ins. Society*, *Inc.*, Case No. 05-74423, unpublished (E.D. Mich. Dec. 7, 2007) (although the facts contained in certain documents were not privileged, any legal advice and opinions contained in the documents could be redacted); *Fruehauf Trailer*, 208 Mich. App. at 451 (holding that "the protection of **the privilege extends only to communications, and not to facts.")** Thus, only those portions of the document that give legal advice or directly relate to legal advice are protected by the privilege. See *Co-Jo, Inc. v. Strand*, 226 Mich. App. 108, 112; 572 N.W.2d 251 (1997); see also *Hubka v. Pennfield Twp.*, 197 Mich. App. 117, 121; 494 N.W.2d 800 (1992), rev'd in part on other grounds, 443 Mich. 864(1993)(holding that the attorney-client relationship "does not allow the withholding of documents simply because they are the product of an attorney-client relationship.'")(citation omitted).

Questions of privilege are to be determined by federal common law in federal question cases. *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998); Fed. R. Evid. 501. **The party invoking the privilege has the burden of proving that it applies**. *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir.1999). Since the privilege excludes relevant evidence and stands "in derogation of the search for the truth," *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039

(1974), "[i]t is appropriate to use it 'only to the very limited extent that ⋯ excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980), quoted in *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir.1997) (internal quotation marks omitted), cert. denied sub nom. *Office of President v. Office of Indep. Counsel*, 521 U.S. 1105, 117 S.Ct. 2482, 138 L.Ed.2d 991 (1997).

The EPA cannot meet this heavy burden. The attorney-client privilege only applies (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such (3) the communication relating to that purpose (4) made in confidence (5) by the client (6) are at his direction permanently protected (7) from disclosure by himself or the legal adviser (unless the protection is waived). *Reed, supra*, at 355-56.

The scope of the attorney-client privilege is governed by the purpose and content of the discussion. The privilege does not protect the disclosure of the underlying facts by those who communicated with the attorney. *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981). Courts have further noted that a party cannot conceal a fact by merely revealing it to a lawyer. *Id*. at 396. The attorney-client privilege does not prevent the disclosure of facts communicated to an attorney, and the work product doctrine does not prevent the disclosure of facts communicated by

an attorney to a client that the attorney obtained from independent sources. *Id*.

As the Supreme Court held in *Upjohn*, "a party cannot conceal a fact merely by revealing it to his lawyer." *Id*. at 396 (quoting *Diversified Industries*, 572 F.2d 596 (8th Cir. 1978) (*en banc*)). Thus, a witness may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into communications to his attorney. *Upjohn*, *supra* at 396.  This is true even if the documents were prepared at a time when litigation was reasonably anticipated.  *Continental Casualty Co. v. Marsh*, 2004 WL 42364 (N.D. Illinois, 2004).

In the present case, a review of the Avi Garbow OIG interview memorandum demonstrates the overbreadth of Defendant's redactions. Many of the redactions appear to have deleted facts not legal advice. For example:

- On page 2 of the Garbow interview, (Exh. 1), US_Flint0151145, in the Conclusion section, there are numerous redactions that when read in context seem to be factual and not legal advice or opinions;

- Similarly, on pp. 4-7 of the Garbow interview, US_Flint0151147- 1150, there are large sections redacted that appear to be factual in nature and not legal advice or opinions.

- On page 5 of the Garbow interview, a question is asked about the Grevatt memo and the response completely redacted.

This is also true as to the OIG interviews of Mark Pollins (Exhibit 2), Gina McCarthy (Exhibit 3), and Susan Hedman (Exhibit 4). Plaintiffs request that this Court order Defendant to produce unredacted versions of these interviews for an in-

camera review to determine if they have also been improperly redacted.

**2. The Attorney-Client Privilege Does Not Protect Communications by an Attorney that are Related to Business and Regulatory Guidance Issues**

The EPA has a statutory duty to oversee its regulations, including the Lead and Copper Rule (LCR). As part of its mission to protect public health and the environment, the EPA issues guidance documents (and other interpretive memos) to educate local and state agencies about its policies and regulations in order to help them understand the regulatory requirements.

Here, the EPA issued guidance document to "clarify" the LCR which is part of EPA's regular business (see EPA's website page on guidance documents; users can find and access many of these guidance documents online by simply searching by topic).

At issue in this case is the reason why the EPA failed to act sooner in issuing an Emergency Order under Sec. 1431 of the SDWA. The fact that there were internal discussions within OECA regarding whether the LCR was ambiguous and needed to be clarified and/or strengthened is not an Attorney-Client or Work Product issue, but rather a regulatory guidance issue (which isn't privileged).

In addition, the OECA is an investigative body and was responsible for investigating the proper action to take during the Flint Water Crisis. None of the communications related to the OECA's investigation should be protected by the

Attorney-Client Privilege or the Work Product Doctrine although Defendant has repeatedly redacted this information from documents produced in this case.

In this case, all information relied upon, and communications generated by OECA and OGC in analyzing the Flint Water Crisis is relevant and discoverable because it constitutes evaluation criteria considered in the EPA's decision to delay issuing an Emergency Order under Sec. 1431.

Thus, any analysis completed by Defendant, as well as all underlying facts provided to counsel, were related to a business decision (i.e., whether or not to issue a 1414 and/or 1431). Any documents compiled in this process, and any facts communicated with regard to this business decision, are not protected.  *See, Freiermuth v. PPG Industries*, 218 F.R.D. 694, 700 (N.D. Al. 2003).

Furthermore, Defendant may not withhold information just because an attorney attended a meeting related to the investigation into the Flint Water Crisis or was included in an e-mail chain related to the investigation.  A critical component of the attorney-client privilege is its application only "to communications made to an attorney in his capacity as a legal advisor." *Neuder v Battelle Pacific Northwest National Laboratory*, 194 FRD 289, 292 (D DC 2000). When an attorney is acting as a business advisor or the legal advice is merely incidental to the business advice, the privilege does not apply. *Id*. Thus, merely because an attorney attends or participates in a meeting does not imbue all communications occurring at that

session with privilege and shield all communications from that meeting from disclosure. *Marten v Yellow Freight System Inc*, 1998 WL 13244 (D Kan 1998).

In *Harding v Dana Transp.*, 914 F Supp 1084 (D NJ 1996), the defendant fused the roles of internal investigator and legal advisor. As a result, the court concluded that the defendant could not shield its investigative process from discovery. Similarly, in *Barfoot v Boeing Co.*, 184 FRD 642 (ND Ala 1999), the plaintiff requested discovery regarding the investigation of his EEO complaint, including names of those interviewed, copies of documents used in the investigation and criteria for conducting the investigation. The court rejected the defendant's argument that all documentation regarding the investigation was privileged because it was conducted at the direction of corporate counsel. "Surely, the invasion of in-house counsel into a routine Human Resource Department investigation...cannot...serve to transform otherwise discoverable documents into privileged ones." *Id*. at 644-5.

Communications related to OECA investigation into the Flint Water Crisis and related to whether the LCR was ambiguous and needed to be clarified and/or strengthened is not an Attorney-Client or Work Product issue, but rather business related and regulatory guidance issues (which are not privileged).

### 3.  By Asserting the Advice of Counsel Defense, Defendant has Waived the Attorney-Client Privilege

In this case, Defendant has asserted the Advice of Counsel Defense. As a

result, Defendant has waived the Attorney-Client Privilege as to communications related to the legal advice the OCEA and OGC gave EPA Region 5 to delay issuing a Non-Compliance Order under Section 1414 and an Emergency Order under Section 1431 of the SWDA.

By voluntarily providing the opinion of counsel as part of its defense, the defendant waives its attorney-client privilege and the confidentiality of the related work product. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures." *Zen Design Grp. Ltd. v. Scholastic, Inc.,* 327 F.R.D. 155, 160 (E.D. Mich. 2018)(citing Seagate, 497 F.3d at 1372) (quoting *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349–50 (Fed. Cir. 2005)).

In the event that a party tries to escape culpability by asserting the advice of counsel defense, many circuits have ruled that they forfeit any attorney-client privilege relating to the advice. A person or entity can assert the advice of counsel defense, when they retain legal counsel to advise them on a legal matter, and they take steps as advised by their counsel. The benefit of asserting this defense is that it allows the defending party to show that they acted in good faith by retaining expert counsel and taking the actions advised by their attorney(s). Alternatively, in criminal

cases, the advice of counsel defense is usually seen as a way to negate intent. "Unlawful intent has not been proved if the defendant, before acting, made full disclosure of all material facts to an attorney, received the attorney's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's recommended course of conduct or advice in good faith." 9th Cir. Ct. Model Crim. Jury Instructions, 5.10.

Federal Courts within the 3rd, 4th, 5th, 9th and Federal Circuits have previously ruled that asserting the advice of counsel defense can weaken attorney-client privilege in certain areas. "[A] review of a sampling of cases from across the country reveals that, although there is no uniform bright line rule, the better position is that assertion of the advice of counsel defense waives the attorney client privilege with respect to communications between counsel and client with respect to the subject matter of the advice being sought[.]" *JJK Min. Co., LLC v. Swiger*, 292 F.R.D. 323, 329 (N.D.W.V., 2013). The stance that raising the advice of counsel defense waives one's attorney client privilege has its basis in the Federal Rules of Civil Procedure:

> In most instances where the advice of counsel is an issue, the party seeking discovery will be able to meet the standard imposed by Rule 26(b)(3). A substantial need exists for the work product so that the discovering party can adequately address the advice of counsel defense. Also, the discovering party cannot obtain substantially equivalent materials because the specific work product is directly at issue . . . Consequently, it is difficult to imagine the circumstances where the standard for discovering the vast majority of work product will not be met in an advice of counsel case.

*Id* at 332.

While attorney-client privilege is important to restrict unfair discovery, a party should never be able to use the assertion as "both a sword and a shield." *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156 (9th Cir. 1992). In other words, a party cannot assert claims that the opposing side has no way of disputing. To assert the advice of counsel defense, and then attempt to utilize the attorney-client privilege to prevent discovery about that advice, would mean leaving the opposing side and the tribunal in the dark about what exactly the advice was and on what legal premises it rests.

In *Glenmede Trust Company v. Thompson*, 56 F.3d 476 (3rd Cir. 1995), the defendant appealed a district court order compelling its law firm, Pepper Hamilton, to comply with a subpoena requesting all work it performed for Glenmede Trust involving a repurchase or "buy-back" transaction. Glenmede defended the lawsuit by alleging it relied on an Opinion Letter from Pepper Hamilton and objected to the plaintiff's request for disclosure of the firm's entire file concerning services provided for Glenmede in connection with the transaction. The Third Circuit affirmed the district court's ruling that "…Pepper Hamilton's involvement in structuring and closing the transaction required production of the backup documents to the Opinion Letter to permit the plaintiff to analyze the reasonableness of Glenmede's reliance on advice of counsel." *Id*. at 480.

In the present case, communications related to the basis for the legal advice given for delaying the issuance of an Emergency Order are even more important

because of the additional burden on the Plaintiffs to prove that Defendant's actions do not fall within the discretionary function exception providing them with immunity from liability.

In the present case, Susan Hedman was the EPA Region 5 Administrator at the time of the Flint Water Crisis and individual responsible for making decisions on whether or not to issue orders under the SWDA when primacy agencies, such as the Michigan Department of Environmental Quality (MDEQ), fail to comply with the SWDA:[1]

Section 1414 of the Safe Drinking Water Act (SDWA) of 1974 (codified generally in 42 U.S.C. 300 g-f) reads in relevant part:

(a) Notice to State and public water system; issuance of administrative order; civil action

 (1)(A) Whenever the Administrator finds during a period during which a State has primary enforcement responsibility of for public water systems (within the meaning of section 300g2(a) of this title) that any public water system—

 (i) for which a variance under section 300g-4 or an exemption under section 300g-5 of this title is not in effect, does not comply with any applicable requirement, or

 (ii) for which a variance under section 300g-4 or an exemption under section

---

[1] The EPA Administrator delegated authority under Sections 1414 and 1431 of the SDWA, 42 U.S.C. §§ 300g-3, 300i, to the Regional Administrators and the Assistant Administrator for Enforcement and Compliance Assurance. (Burgess, No. 17-cv-11218, ECF Nos. 41-7, 41-8, 41-9.) The Region 5 Administrator at the time was Dr. Susan Hedman and Cynthia Giles was the Assistant Administrator for Enforcement and Compliance Assurance. See (Burgess, No. 17-cv-11218, ECF No. 53-19, PageID.2034.)

300g-5 of this title is in effect,

does not comply with any schedule or other requirement imposed pursuant thereto, he shall so notify the State and such public water system and provide such advice and technical assistance to such State and public water system as may be appropriate to bring the system into compliance with the requirement by the earliest feasible time.

(B) If, beyond the thirtieth day after the Administrator's notification under subparagraph (A), the State has not commenced appropriate enforcement action, the Administrator shall issue an order under subsection (g) requiring the public water system to comply with such applicable requirement or the Administrator shall commence a civil action under subsection (b).[2]

Section 1431 of the Safe Drinking Water Act (SDWA) of 1974, reads in relevant part:

[T]he Administrator, upon receipt of information that a contaminant which is present in or is likely to enter a public water system or an underground source of drinking water, or that there is a threatened or potential terrorist attack (or other intentional act designed to disrupt the provision of safe drinking water or to impact adversely the safety of drinking water supplied to communities and individuals), which may present an imminent and substantial endangerment to the health of persons, and that appropriate State and local authorities have not acted to protect the health of such persons, may take such actions as he may deem necessary in order to protect the health of such persons may take such actions as he may deem necessary in order to protect the health of such persons. To the extent he determines it to be practicable in light of such imminent endangerment, he shall consult with the State and local authorities in order to confirm the correctness of the information on which action proposed to be taken under this subsection is based and to ascertain the action which such authorities are or will be taking.

The action which the Administrator may take may include (but shall not be limited to) (1) issuing such orders as may be necessary to protect the health of persons who are or may be users of such system (including travelers), including orders requiring the provision of alternative water supplies by persons who

---

[2] In *Meeks v. EPA*, 17-10164, Judge Levy found that the issuance of a 1414 order was mandatory, not discretionary, once a violation of the SDWA occurred. (Levy Opinion and Order Denying Defendant's Motion to Dismiss. (ECF 318)

caused or contributed to the endangerment, and (2) commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction. 42 U.S.C. § 300i(a).

Hedman testified that the regional administrators do not sign off on administrative orders without the advice of the OECA. (Hedman Dep., July 16, 2020, pgs 257-259). She further testified that while she knew as early as June of 2015 that the City of Flint had failed to implement corrosion control into the Flint water system after it had changed its water source in April of 2014, and that this failure would invariably result in lead leaching into the water pipes, she decided not to issue orders under the SWDA Sections 1414 or 1431 based on legal advice from the OCEA and OGC. Hedman testified:

> …**But when I first learned on June 30th that they were not -- that Flint was not implementing corrosion control and that MDEQ had not required it, my question is how can that be possible. Isn't it required by the lead and copper rule? And again, not being there as a lawyer, we sought, in my case, a decision from the office of general counsel. The water division and office of water also sought a decision from the office of general counsel**.

(Hedman Dep. July 16, 2020, page 24) (Emphasis added).

Hedman further emphasized:

> **… I as regional administrator was not a lawyer; I was not acting as a lawyer. I had to rely on the legal advice of OECA. And I completely doubt that OECA was providing me with legal memos that had not been vetted in headquarters**.

(Hedman Dep. July 17, 2020, pg. 350)(Emphasis added).

And:

> **I could document that showed that OECA had been involved since early August, and that the repeated advice I got from OECA was that I could**

15

**not issue a 1431 order . . .**

(Hedman Dep. July 17,2020, pg. 349) (Emphasis added).

Hedman defends her decision not to act earlier to issue an Emergency Order on the advice of counsel she received from OECA and OGC. Ultimately, rather than issue a 1414 or 1431Order in June of 2015, she decided to wait until the Office of Water issued a memorandum on the interpretation of the Lead and Copper Rule (LCR). (Hedman, July 16, 2020, page 24- 25). Based on this advice of counsel defense, Defendant has waived the Attorney-Client Privilege as it relates to all communications and interview statements made to the OIG about the rationale for this advice and the underlying deliberative thinking that resulted in the delay in issuing administrative orders under the SWDA.

In addition, communications associated with the decision to request an opinion on the interpretation of the LCR and the drafting and distribution of the Peter Grevatt November 3, 2015, memorandum (the "Grevatt Memo") is relevant to Plaintiffs' proofs.  Many of these communications have been redacted. As the Defendant has asserted the Advice of Counsel Defense, Defendant has waived the Attorney-Client Privilege as to these communications. Thus, Plaintiffs are requesting all communications related to the decision to request an opinion on the LCR and the drafting and distribution of the November 3, 2015 Memo, signed by Peter Grevatt, (the "Grevatt Memo"), regarding the "official" interpretation of the

LCR.

## **CONLUSION AND RELIEF REQUESTED**

For all the reasons set forth above and, in their Motion, attached hereto, Plaintiffs request that this Court issue a blanket order requiring the EPA to produce unredacted communications related to:

1. The OECA and OGC's investigation into the Flint Water Crisis;

2. All communications related to the rationale for the decision to delay in issuing administrative orders under the SWDA;

3. All communications related to the decision to request an opinion on the LCR and the drafting and distribution of the November 3, 2015 Memo, signed by Peter Grevatt, (the "Grevatt Memo"), regarding the "official" interpretation of the Lead and Copper Rule; and

4. All interview statements made to the OIG in its investigation into the Flint Water Crisis, including but not limited to interview statements from Avi Garbow, Mark Pollins, Gina McCarthy, Susan Hedman, and Jeff Kelly. (Attached hereto as Exhibits 1-5).

Respectfully submitted,

By:  *s/ Cary S. McGehee*
    Cary S. McGehee (P42318)
    Beth M. Rivers (P33614)
    PITT McGEHEE PALMER & RIVERS, PC
    117 W. Fourth Street, Suite 200
    Royal Oak, MI 48067
    (248) 398-9800
    cmcgehee@pittlawpc.com
    brivers@pittlawpc.com

    Julie H. Hurwitz (P34720)
    GOODMAN HURWITZ & JAMES, PC
    1394 E. Jefferson Avenue
    Detroit, MI 48207
    (313) 567-6170
    jhurwitz@goodmanhurwitz.com

    *Co-Lead Counsel for the FTCA Plaintiffs*

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A. LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com

*Attorneys for Plaintiffs*

Dated: November 13, 2023

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on November 13, 2023.

Signature: ___s/ Carrie Bechill_____
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cbechill@pittlawpc.com