UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re FTCA Flint Water Cases

_____/

Civil No. 4:17-cv-11218
(Consolidated)

Linda V. Parker
United States District Judge

# DEFENDANT UNITED STATES OF AMERICA'S MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF ERIK OLSON AND LARRY RUSSELL

Pursuant to Federal Rule of Evidence 702 and the Court's scheduling orders, Defendant United States of America moves to exclude the expert reports and testimony of plaintiff experts Erik Olson and Larry Russell.

As set forth in the following Memorandum, the Court should exclude Olson's and Russell's principal reports, dated February 23, 2024, because they consist of impermissible legal conclusions about the duties and obligations of the Environmental Protection Agency (EPA), based on Olson's and Russell's purported application of federal environmental laws and regulations to the facts of the Flint Water Crisis. The Court also should exclude Russell's report for the additional reason that he is an engineer, not a lawyer or regulatory expert, who is unqualified to offer legal and regulatory opinions.

i

Pursuant to Local Rule 7.1, the parties met and conferred prior to the filing of this motion. FTCA Plaintiffs indicated that they oppose the United States' motion to exclude Olson and Russell.

Dated: October 16, 2024

Respectfully submitted,

*/s/ Daniel C. Eagles*
Daniel C. Eagles (DC Bar #1035048)
Jason T. Cohen (CA Bar #214438)
Eric Rey (DC Bar #988615)
Heidy L. Gonzalez (FL Bar #1025003)
Timothy B. Walthall (MA Bar #515460)
Marianne F. Kies (DC Bar #1023554)
Jewel M. Lightfoot IV (TX Bar #24138965)
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
175 N Street NE
Washington, DC 20002
E-mail: daniel.c.eagles@usdoj.gov
Phone: 202-305-0253
Fax: 202-616-4473

*Counsel for the United States of America*

## ISSUES PRESENTED

1. Whether Olson's and Russell's reports consist of inadmissible legal conclusions.

2. Whether Russell, an engineer, would be qualified to offer the legal conclusions in his report even if they were not otherwise excludable.

## TABLE OF CONTENTS

ISSUES PRESENTED ........................................................................................... iii

TABLE OF AUTHORITIES ................................................................................... v

BACKGROUND ..................................................................................................... 2

  A. Report of Erik Olson ................................................................................ 2

  B. Report of Larry Russell ............................................................................ 3

LEGAL STANDARD .............................................................................................. 5

ARGUMENT ........................................................................................................... 6

  A. Olson and Russell Are Improperly Offering Legal Conclusions .......... 6

  B. Russell Is Not Qualified To Offer Legal Opinions ............................. 10

CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

Cases                                                                                                   Page(s)

*Alvarado v. Oakland County*,
   809 F.Supp.2d 680 (E.D. Mich. 2011).................................................................7

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ................................................................. 1, 7, 11

*Burkhart v. WMATA*,
   112 F.3d 1207 (D.C. Cir. 1997).............................................................................8

*Chavez v. Carranza*,
   559 F.3d 486 (6th Cir. 2009) ...............................................................................6

*F.A.A. v. Landy*,
   705 F.2d 624 (2d Cir. 1983)................................................................................6

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*,
   2021 WL 3617152 (S.D. Ohio Aug. 16, 2021) .......................................................9

*In re Flint Water Cases*,
   2024 WL 2244871 (E.D. Mich. May 17, 2024) ..............................................5, 7

*In re National Prescription Opiate Litig.*,
   2019 WL 3934490 (N.D. Ohio Aug. 20, 2019).......................................................9

*In re Welding Fume Prods. Liab. Litig.*,
   2010 WL 7699456 (N.D. Ohio June 4, 2010) ........................................................9

*Killion v. KeHE Distributors, LLC*,
   761 F.3d 574 (6th Cir. 2014) .............................................................................10

*Pont de Nemours and Co. C-8 Pers. Inj. Litig.*,
   348 F.Supp.3d 698 (S.D. Ohio 2016) ..................................................................8

*Rose v. Truck Centers*, *Inc.*,
   611 F.Supp.2d 745 (N.D. Ohio 2009)..................................................................11

*Sanchez v. Boston Sci Corp.*,
    2014 WL 4851989 (S.D. W. Va. 2014) ................................................................. 8

*Summerland v. Cnty. of Livingston*,
    240 F. App'x 70 (6th Cir. 2007) ........................................................................ 10

*Torres v. County of Oakland*,
    758 F.2d 147 (6th Cir. 1985) ......................................................................... 1, 6

*United States v. Melcher*,
    672 F. App'x 547 (6th Cir. 2016) ................................................................... 1, 5

*Univ. of Tennessee Research Foundation v. Caelum Biosciences, Inc.*,
    2024 WL 3249314 (E.D. Tenn. June 28, 2024) ..................................................... 9

Rules

Fed. R. Evid. 702 .......................................................................................... *passim*

## MEMORANDUM IN SUPPORT OF
## DEFENDANT UNITED STATES OF AMERICA'S
## MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY OF
## ERIK OLSON AND LARRY RUSSELL

In the Sixth Circuit and around the country, the law is plain that expert witnesses may not offer legal conclusions. It is the "province of the court," not expert witnesses, to determine what the law is and apply it to the facts of the case. *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985). To hold otherwise would be to invite "a whole new category of 'liability experts'" to tell the factfinder "what result to reach[.]" *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). The prohibition on legal conclusion testimony extends beyond an expert who "defines the governing legal standard" and also encompasses an expert who "applies the standard to the facts of the case." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016).

The reports of Plaintiffs' retained experts Erik Olson and Larry Russell have violated each of these precepts. Olson and Russell seek to instruct the Court on the legal powers and duties of EPA as applied to the circumstances of the Flint Water Crisis. These are quintessential legal questions and conclusions that are within the Court's purview to determine. They are not properly the subject of expert testimony.

Russell, who is an engineer by training and trade, has crossed the line into inadmissible legal conclusions despite his lack of expertise with the laws and

1

regulations pertaining to EPA. He admits he has nothing more than a general "familiar[ity]" with "regulatory agencies" based on his engineering career. Russell is unqualified to opine on what EPA could or should have done in Flint, and his opinions should be excluded for that additional reason.

The Court should exclude Olson's and Russell's reports and testimony.

## BACKGROUND

### A.    Report of Erik Olson

Erik Olson is a senior strategic director for health at the Natural Resources Defense Council, where he has worked since 2013. Ex. A, Olson Rpt. at 2. In that role, Olson—a lawyer by training—works on "advocacy," "lobbying," and "litigation" relating to "health, drinking water, pesticides, [and] toxic chemicals." *Id.* at Ex. 1 (Olson CV).

In his report,[1] Olson offers the core opinion that "EPA did not do its job to oversee MDEQ, Flint, or to implement and enforce the law ***as was its legal and ethical duty***." *Id.* at 3 (emphasis added). Olson adds that EPA was not "engaging in appropriate oversight of the Michigan Department of Environmental Quality (MDEQ) and Flint, as required by the [Safe Drinking Water Act] and EPA's

---

[1] Olson captions his expert report as a "Declaration" but also refers to it as a "report," *see, e.g.*, Rpt. at 1, 18. In substance it is an expert report, and it was disclosed with Plaintiffs' other expert reports on their expert report disclosure deadline.

2

regulations," *id.* at 2; that EPA "should have taken enforcement action likely by mid-2014 but certainly no later than April 2015," *id.*; and that by April 2015 EPA was "legally obliged to initiate an enforcement action under the mandatory enforcement provisions of SDWA §1414," *id.* at 3.

Olson's report further includes, among other things, extensive characterizations of the Safe Drinking Water Act ("SDWA") and its enforcement mechanisms, *id.* at 4-6, 9-10, 11-12, 14; the Lead and Copper Rule, *id.* at 7-9, 10-11; and section 1431 orders, *id.* at 14-15. Based on this discussion, Olson draws the conclusion that "EPA's failure to effectively bring an enforcement action and take other appropriate actions in Flint . . . was unjustifiable and failed to carry out the agency's duties under the SDWA to protect the citizens of Flint." *Id.* at 18.

**B.     Report of Larry Russell**

Larry Russell is an engineer. He holds a Ph.D. in civil and environmental engineering from the University of California at Berkeley, is a registered professional engineer, and holds various other engineering certifications or licenses. Ex. B, Russell Rpt. at 9. Russell describes himself as an expert in "water quality assessments, corrosion mitigation, and the behavior of materials exposed to drinking water." *Id.* Russell is not a lawyer or regulatory expert, nor does he claim expertise in those fields. Instead, Russell asserts only that based on his decades of

3

experience, he is "familiar with the performance of regulatory agencies like the USEPA." *Id.*

With that background, Russell announces in his original report of February 23, 2024, that he is providing his "***opinion of the liability of USEPA*** regarding the Flint Water Crisis." *Id.* at 5 (emphasis added). Russell proceeds to set forth an array of opinions about what he thinks EPA could and should have done, based explicitly and implicitly on Russell's understanding of federal environmental laws and regulations. A non-exhaustive list of these opinions would include:

- "USEPA should have insisted that in accordance with their regulations that an Optimized Corrosion Control Treatment (OCCT) strategy be developed on the City's behalf, before switching water sources from Detroit to the Flint River water, as is required by the USEPA Lead and Copper Rule regulations." Ex. B, Russell Rpt. at 10.

- "[T]he switch required a corrosion control evaluation before the switch over to aid in limiting these impacts, as is required by the USEPA SDWA regulations." *Id.*

- "The USEPA should have guided the City to consider blending the treated Flint River water with the treated Lake Huron water from the Detroit Water and Sewage Department (DWSD)." *Id.*

- "The USEPA, and the City's engineering consultants, should have guided the City to switch back to the corrosion optimized Lake Huron (DWSD) which had been supplied to the City since 1967." *Id.*

- "The USEPA should have guided and enforced on the City to immediately install of [sic] corrosion control." *Id.*

- "The USEPA should have recognized and guided the City that it should cease the usage of ferric chloride as a coagulant for removal of turbidity and THHM precursors from the Flint River water." *Id.*

4

- "The USEPA experts, and the City's engineering consultants, should have warned the City that the presence of highly corrosive water in the distribution system posed an immediate threat to human health and property." *Id.* at 13.

- "The USEPA failed to enforce the SDWA regulations that the absence of an optimized corrosion control plan be rectified." *Id.*

- "USEPA should have enforced on the City and should have guided the City and its consultants with enforcement to ensure that the City meet all drinking water standards simultaneously." *Id.*

- "The USEPA should have recognized and enforced against the City for not taking action to minimize the impacts of distributing the corrosive treated Flint River water." *Id.* at 14.

- "As the regulator, it was the USEPA's responsibility to recommend the completion of an Optimal Corrosion Control Treatment study before the switch, and its failure to enforce against the City did not comport with the USEPA obligations." *Id.* at 15.

- "The Flint Water Crisis could have been prevented through the institution of proper regulatory oversite [sic]". *Id.* at 61.

- "The USEPA shares responsibility in the allowing the switch in source water, allowing that water to be distributed without treatment including orthophosphates for corrosion control, and the decisions delay reconnection to the DWSD system with Lake Huron water treated with corrosion inhibitors." *Id.*

## LEGAL STANDARD

It is black-letter law that Federal Rule of Evidence 702 "prohibits expert witnesses from testifying to legal conclusions." *In re Flint Water Cases*, 2024 WL 2244871, at *7 (E.D. Mich. May 17, 2024) (Levy, J.) (quoting *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016)) (excluding legal conclusion

5

testimony of Larry Russell). "An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case." *Id.* "[T]estimony containing a legal conclusion . . . 'invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law.'" *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (citing *F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983), *cert. denied*, 464 U.S. 895 (1983)); *see also, e.g.*, *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible.").

## ARGUMENT

### A. Olson and Russell Are Improperly Offering Legal Conclusions.

Not only are Olson's and Russell's reports replete with legal conclusions—their *central purpose*, as they state explicitly, is to offer legal conclusions about what EPA should have done. *See, e.g.*, Ex. B, Russell Rpt. at 5 (report offers "opinion of the liability of USEPA regarding the Flint Water Crisis"); Ex. A, Olson Rpt. at 3 ("EPA did not do its job to oversee MDEQ, Flint, or to implement and enforce the law as was its legal and ethical duty."). In other words, Olson and Russell seek to answer for the Court the ultimate legal question of whether the EPA was negligent, as Plaintiffs allege.

Such testimony is inadmissible, as the Sixth Circuit has made clear: "If courts did not exclude testimony that expresses legal conclusions, 'we would soon

6

breed a whole new category of 'liability experts' whose function would be to tell the jury what result to reach—exactly what the expert did here.'" *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994); *see also, e.g.*, *Alvarado v. Oakland County*, 809 F.Supp.2d 680, 690-91 (E.D. Mich. 2011) ("Dr. Lyman will be prohibited from expressing any legal conclusions, which either explicitly or implicitly embrace the ultimate legal issue in this case of whether Deputy Simpkinson's conduct was reasonable under the totality of the circumstances which he faced.").

For these reasons, earlier this year, Judge Levy partially excluded Russell's opinions in one of the parallel Flint cases, insofar as Russell offered legal conclusions about whether engineering firm VNA had had the "last clear chance" to avoid the Flint Water Crisis. *In re Flint Water Cases*, 2024 WL 2244871, at *7 (E.D. Mich. May 17, 2024) ("An expert like Dr. Russell can therefore discuss the underlying facts about the timing of VNA's engagement in Flint, though he cannot state his conclusion in terms of legal liability.").

The "ultimate" legal conclusions that Olson and Russell put forward are not the only ones that are inadmissible: all of their subsidiary legal conclusions, the building blocks toward their ultimate legal conclusions, are inadmissible as well. Every opinion about what EPA's duties were, what EPA could have done, or what EPA should have done, as applied to the facts of the Flint Water Crisis, is a legal

7

conclusion that necessarily derives from the expert's purported understanding of the federal laws and regulations that EPA is charged with administering. *In re E.I. du Pont de Nemours and Co. C-8 Pers. Inj. Litig.*, 348 F.Supp.3d 698, 718 (S.D. Ohio 2016) ("Opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.") (quoting *Sanchez v. Boston Sci Corp.*, 2014 WL 4851989, at *4, *29-30 (S.D. W. Va. 2014)). EPA's duties and the courses of action available to EPA in Flint can be understood only by interpretation and application of federal law. That is the role of the Court, not the role of a witness. *Burkhart v. WMATA*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (expert opinions on legal conclusions are inadmissible because "[e]ach courtroom comes equipped with a 'legal expert,' called a judge") (citation omitted). It is impossible to draw conclusions about what EPA could or should have done in Flint without applying federal environmental laws and regulations to the facts of the Flint Water Crisis.

But that is exactly what Olson and Russell both seek to do in the courtroom. Olson and Russell both opine at length on what EPA's legal powers and obligations were in Flint. *See supra* at 2-5; *see also, e.g.*, Ex. A, Olson Rpt. at 2 (EPA "should have taken enforcement action"; was not "engaging in appropriate oversight . . . as required by the SDWA and EPA's regulations"); *id.* at 3 ("legally obliged to initiate an enforcement action"); Ex. B, Russell Rpt. at 10-15

8

(repeatedly asserting that under applicable laws and regulations EPA should have "recognized" various circumstances in Flint, "guided" or "warned" the City, or "enforced" those laws and regulations against the City). These are textbook legal conclusions of the type that district courts in this Circuit have repeatedly excluded. *See, e.g.*, *In re National Prescription Opiate Litig.*, 2019 WL 3934490 (N.D. Ohio Aug. 20, 2019) (plaintiff expert "cannot express opinions as to what the law requires or whether Defendants' conduct violated the law"); *Univ. of Tennessee Research Foundation v. Caelum Biosciences, Inc.*, 2024 WL 3249314, at *11 (E.D. Tenn. June 28, 2024) ("Reviewing federal policies, statutes, contracts and university IP policies and then applying them to certain facts to determine ownership of and/or commercial rights to the 11-1F4 antibody at issue in this case is quintessentially legal analysis."); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.*, 2021 WL 3617152, at *8 (S.D. Ohio Aug. 16, 2021) ("no expert, including Dr. Beatrice, may offer legal opinions, such as that the Ventralight ST was 'misbranded'" under FDA regulations and applicable tort law); *In re Welding Fume Prods. Liab. Litig.*, 2010 WL 7699456, at *77 (N.D. Ohio June 4, 2010) (the Court will "exclude any 'ultimate conclusion testimony' opining whether a defendant did actually meet any given legal requirement . . . [and] will strictly limit any expert's attempt to explain the

9

meaning of any terms or provisions in any statute or regulation, as opposed to simply what the statute or regulation says.").

Because they are replete with inadmissible legal conclusions, the Court should strike Russell's and Olson's reports in their entirety. The Court should not and is not expected to parse the reports to identify any stray strand of testimony that might conceivably be separable from the legal conclusions. Repeatedly offering legal conclusions is sufficient reason to strike the entire report. *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 593 (6th Cir. 2014) ("These are plainly attempts to define legal terms. Although these references do not comprise the majority of the report, they are sufficient to support the conclusion that the district court acted within its discretion in excluding the same."); *Summerland v. Cnty. of Livingston*, 240 F. App'x 70, 81 (6th Cir. 2007) ("[B]ecause Donaldson's report goes beyond this point (many times over), the district court's decision to strike his entire report was not erroneous.").

**B.     Russell Is Not Qualified To Offer Legal Opinions.**

Russell's report should be excluded for the additional reason that Russell is unqualified to opine on federal environmental laws and regulations or to apply them to the facts of this case. Russell is an engineer, not a lawyer or regulatory expert. An expert witness must be qualified "by knowledge, skill, experience, training, or education," Fed. R. Evid. 702, but nothing in Russell's CV or report

10

demonstrates that he has the education, training, or experience to qualify as an expert in federal environmental laws and regulations, or that he has otherwise acquired more than a passing familiarity with that field. His assertion that he is merely "familiar with the performance of regulatory agencies like the USEPA" reveals his lack of qualifications. Likewise, his CV recites various engineering-related "Areas of Expertise," Ex. B, Russell Rpt. at Ex. 1; legal and regulatory expertise are tellingly absent.

Whatever Russell's engineering credentials may be, he is unqualified to opine on the laws and regulations governing the EPA or their application to events in Flint. His report and testimony should be excluded for that independent reason. *See, e.g.*, *Berry*, 25 F.3d at 1351 ("The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."); *Rose v. Truck Centers, Inc.*, 611 F.Supp.2d 745, 749-751 (N.D. Ohio 2009) (quoting *Berry* and excluding expert as unqualified).

## CONCLUSION

The Court should exclude the expert reports and testimony of Erik Olson and Larry Russell in their entirety.

11

Dated: October 16, 2024                Respectfully submitted,

*/s/ Daniel C. Eagles*
Daniel C. Eagles (DC Bar #1035048)
Jason T. Cohen (CA Bar #214438)
Eric Rey (DC Bar #988615)
Heidy L. Gonzalez (FL Bar #1025003)
Timothy B. Walthall (MA Bar #515460)
Marianne F. Kies (DC Bar #1023554)
Jewel M. Lightfoot IV (TX Bar #24138965)
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Environmental Torts Litigation Section
175 N Street NE
Washington, DC 20002
E-mail: daniel.c.eagles@usdoj.gov
Phone: 202-305-0253
Fax: 202-616-4473

*Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2024, a copy of the foregoing document was filed via the Court's ECF system and served on counsel of record through the ECF system.

*/s/ Daniel C. Eagles*
Daniel C. Eagles

13