UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In re* FTCA Flint Water Cases | Civil No. 4:17-cv-11218 (Consolidated) |
| This Motion Relates to: | Linda V. Parker<br>United States District Judge |
| THE FIRST BELLWETHER PROCEEDINGS | Curtis Ivy, Jr.<br>United States Magistrate Judge |

---

**United States of America's Motion for Summary Judgment**

---

Pursuant to Federal Rule of Civil Procedure 56, Defendant United States of America moves for summary judgment on the negligence claims brought by nine of the eleven remaining bellwether plaintiffs: Jason Keys, Lawrence Cooley, Margie McClain, Patricia Crews, Stanley Langston, Vivian Anderson, Carolyn Daly, Anthony Vance, and John Campbell.

The Court should grant summary judgment in favor of the United States because six of the eleven remaining bellwether plaintiffs (Jason Keys, Lawrence Cooley, Margie McClain, Patricia Crews, Stanley Langston, and Vivian Anderson, collectively the "Late-Filing Bellwether Plaintiffs") submitted administrative claims to the EPA more than two years after their claims accrued, and their claims are

therefore barred by the FTCA's two-year statute of limitations. *See* 28 U.S.C. § 2401(b).

In addition, the Court should grant summary judgment in favor of the United States on the claims of three of the eleven remaining bellwether plaintiffs (Carolyn Daly, Anthony Vance, and John Campbell), as well as claims of the Late-Filing Bellwether Plaintiffs that are arguably not barred by Section 2401(b), because those bellwether plaintiffs lack sufficient evidence of causation to prove their damage claims.

Pursuant to Local Rule 7.1, the parties met and conferred prior to the filing of this motion. Plaintiffs indicated that they oppose the United States' motion for summary judgment.

Finally, the United States notes that the FTCA Plaintiffs requested certain materials referenced in and attached to this Motion be redacted or filed entirely under seal. The United States has, provisionally, complied with Plaintiffs' request, subject to the Court's approval. Plaintiffs have informed the United States that they will be filing a Motion to Seal in the coming days, indicating the bases for their sealing requests.

Dated:  October 16, 2024

Respectfully submitted,

*/s/ Jason T. Cohen*

Jason T. Cohen (CA Bar #214438)
Heidy L. Gonzalez (FL Bar #1025003)
Timothy B. Walthall (MA Bar #515460)

ii

Eric Rey (DC Bar #988615)
Daniel C. Eagles (DC Bar #1035048)
Marianne F. Kies (DC Bar #1023554)
Jewel M. Lightfoot IV (TX Bar #24138965)
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Environmental Tort Litigation
1100 L Street, N.W.
Washington, DC 20005
E-mail: Jason.T.Cohen@usdoj.gov
Phone: 202-514-0335
Fax: 202-616-4473

**ISSUES PRESENTED**

1. Whether the tort claims against the United States brought by 6 of the 11 remaining bellwether plaintiffs (Jason Keys, Lawrence Cooley, Margie McClain, Patricia Crews, Stanley Langston, and Vivian Anderson (the "Late-Filing Bellwether Plaintiffs")) are barred by the FTCA's two-year statute of limitations, 28 U.S.C. § 2401(b).

2. Whether the United States is entitled to summary judgment on the tort claims brought by bellwether plaintiffs Carolyn Daly, Anthony Vance, and John Campbell (as well as any tort claims brought by the Late-Filing Bellwether Plaintiffs not deemed barred by 28 U.S.C. § 2401(b)) due to lack of proof of causation.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)

*Ayers v. U.S.*, 277 F.3d 821 (6th Cir.2002)

*Baker v. Chevron U.S.A. Inc.*, 533 F.App'x 509 (6th Cir. 2013)

*Ball v. Union Carbide Corp.*, 385 F.3d 713 (6th Cir. 2004)

*Bartos v. United States*, Case No. 17-11059, 2018 WL 4005523 (E.D. Mich. Aug. 22, 2018)

*Bennett v. City of Eastpointe*, 410 F.3d 810 (6th Cir. 2005)

*Blake v. Columbia Gas Transmission, LLC*, No. CV 3:19-0847, 2021 WL 4255619 (S.D.W. Va. Sept. 17, 2021)

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

*Chomic v. United States*, 377 F.3d 607 (6th Cir. 2004)

*Coffie v. United States*, 43 F.App'x 808 (6th Cir. 2002)

*Cotter v. United States*, No. 1:06-CV-382, 2006 WL 3253289 (W.D. Mich. Nov. 8, 2006)

*Diminnie v. United States*, 728 F.2d 301 (6th Cir. 1984)

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000)

*Henry v. Dow Chem. Co.*, 473 Mich. 63, 701 N.W.2d 684 (2005)

*Hertz v. United States*, 560 F.3d 616 (6th Cir. 2009)

*Hogan v. United States*, 42 F.App'x 717 (6th Cir. 2002)

*Hughes v. Vanderbilt Univ.*, 215 F.3d 543 (6th Cir. 2000)

*Irwin v. Dep't of Veterans' Affairs*, 498 U.S. 89 (1990)

*Kabir v. United States*, No. CIV. 14-11563, 2015 WL 3968937 (E.D. Mich. June 30, 2015)

*Krueger v. United States*, No. 17-CV-10574, 2017 WL 5467743 (E.D. Mich. Nov. 14, 2017)

*Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 898 N.W.2d 906 (2017)

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)

*McIntyre v. United States*, 367 F.3d 38 (1st Cir. 2004)

*Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671 (6th Cir. 2011)

*Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652 (6th Cir. 2013)

*Redmond v. United States*, 194 F. Supp. 3d 606 (E.D. Mich. 2016)

*Spillers v. United States*, No. 13-13501, 2015 WL 519130 (E.D. Mich. Feb. 9, 2015)

*Tingle v. Arbors at Hilliard*, 692 F.3d 523 (6th Cir. 2012)

*United Klans of Am. v. McGovern*, 621 F.2d 152 (5th Cir.1980)

*United States v. Kubrick*, 444 U.S. 111 (1979)

*United States v. Wong*, 575 U.S. 402 (2015)

*Urie v. Thompson*, 337 U.S. 163 (1949)

*Wallace v. Kato*, 549 U.S. 384 (2007)

*West v. Gen. Motors Corp.*, 469 Mich. 177 (2003)

*West v. Target Corp.*, No. 2:19-CV-13183-TGB-APP, 2021 WL 2682833 (E.D. Mich. June 30, 2021)

*Whittlesey v. Cole*, 142 F.3d 340 (6th Cir. 1998)

*Willis v. United States*, 972 F.2d 350 (6th Cir. 1992)

*Zappone v. United States*, 870 F.3d 551 (6th Cir. 2017)

**Statutes**

28 U.S.C. § 2401(b)

## TABLE OF CONTENTS

**ISSUES PRESENTED**........................................................................ iv

**CONTROLLING OR MOST APPROPRIATE AUTHORITY** .......................v

**TABLE OF CONTENTS** ...................................................... viii

**INDEX OF EXHIBITS**.......................................................x

**INTRODUCTION**..............................................................1

**STATEMENT OF FACTS**..................................................2

**1.     Widespread Public Knowledge About Flint Water Contamination**.........2

**2.     Late-Filing Bellwether Plaintiffs' Knowledge of Injury Onset**.................7

**3.     Bellwether Plaintiffs' Submission of Administrative Claims to EPA** ......8

**RELEVANT PROCEDURAL BACKGROUND**.................................9

**STANDARD OF REVIEW** ................................................10

**ARGUMENT** ......................................................................12

**I.     The Claims of Six of the Eleven Remaining Bellwether Plaintiffs Are Barred by the Statute of Limitations** ..................................................12

A. The FTCA's Two-Year Statute of Limitations and Accrual.........................13

B. The Late-Filing Bellwether Plaintiffs had Constructive Knowledge of the Alleged Cause of Their Injury by October 1, 2015.......................................15

C. The Late-Filing Bellwether Plaintiffs Knew of Their Injury and Its Alleged Cause More than Two Years Before Submitting a Claim.............................19

1.  Vivian Anderson.................................................................20

2.  Stanley Langston ...............................................................22

3.  Jason Keys .........................................................................23

4.  Patricia Crews....................................................................24

5.  Margie McClain..................................................................26

6.  Lawrence Cooley................................................................27

II.  **The Adult Bellwether Plaintiffs Cannot Prove Causation**......................28

A. Bellwether Plaintiffs' Claims of Property Damage Due to Diminution of Value Lack Factual Support and Proof of Causation ...................30

B. Stanley Langston ...............................................................32

C. Margie McClain..................................................................34

D. Lawrence Cooley................................................................35

E. Carolyn Daly......................................................................37

F. Anthony Vance ..................................................................38

G. John Campbell ...................................................................39

**CONCLUSION**...............................................................................40

## INDEX OF EXHIBITS

**Exhibit A:**  Governor's Office Briefing Paper, Oct. 1, 2014

**Exhibit B:**  Declaration of State of Emergency, City of Flint, Dec. 14, 2015

**Exhibit C:**  Declaration of Ken Redden

**Exhibit D:**  John Campbell Administrative Claim

**Exhibit E:**  S.J. Administrative Claim (redacted)

**Exhibit F:**  Anthony Vance Administrative Claim

**Exhibit G:**  J.M. Administrative Claim (redacted)

**Exhibit H:**  William Daly, on behalf of Carolyn Daly, Administrative Claim

**Exhibit I:**  Vivian Anderson Administrative Claim

**Exhibit J:**  Stanley Langston Administrative Claim

**Exhibit K:**  Jason Keys Administrative Claim

**Exhibit L:**  Terry Crews, on behalf of Patricia Crews, Administrative Claim

**Exhibit M:**  Margie McClain Administrative Claim

**Exhibit N:**  Lawrence Cooley Administrative Claim

**Exhibit O:**  Proclamation, Declaration of Emergency, Gov. Rick Snyder, Jan. 5, 2016

**Exhibit P:**  Certificate of Death, Patricia Crews

**Exhibit Q:**  Certificate of Death, Carolyn Daly

**Exhibit R:** Vivian Anderson's Response to the USA's First Set of Interrogatories, excerpted

x

**Exhibit S:** Deposition of Vivian Anderson, May 1, 2023, excerpted

**Exhibit T:** Stanley Langston Plaintiff Fact Sheet, excerpted

**Exhibit U:** Stanley Langston's Response to the USA's First Set of Interrogatories, excerpted

**Exhibit V:** Deposition of Stanley Langston, April 21, 2023, excerpted

**Exhibit W**: Jason Keys Plaintiff Fact Sheet, excerpted

**Exhibit X:** Jason Keys' Response to the USA's First Set of Interrogatories, excerpted

**Exhibit Y:** Deposition of Jason Keys, February 6, 2023, excerpted

**Exhibit Z:** Jason Keys Medical Records - JK00021-23, excerpted

**Exhibit AA:** Deposition of Edward Gildeh, M.D., August 21, 2023, excerpted

**Exhibit AB:** Deposition of Terry Crews, January 23, 2023, excerpted

**Exhibit AC**: Patricia Crews Plaintiff Fact Sheet, excerpted

**Exhibit AD**: Margie McClain Plaintiff Fact Sheet, excerpted

**Exhibit AE:** Margie McClain's Response to the USA's First Set of Interrogatories, excerpted

**Exhibit AF:** Deposition of Margie McClain, January 25, 2023, excerpted

**Exhibit AG:** Deposition of Leo McClain, April 24, 2023, excerpted

**Exhibit AH**: Lawrence Cooley Plaintiff Fact Sheet, excerpted

**Exhibit AI:** Lawrence Cooley's Response to the USA's First Set of Interrogatories, excerpted

**Exhibit AJ:** Deposition of Lawrence Cooley Vol. I, April 4, 2023, excerpted

**Exhibit AK:** Deposition of Lawrence Cooley Vol. II, April 12, 2023, excerpted

**Exhibit AL:** Expert Report of Dr. Bruce A. Brod

**Exhibit AM**: Anthony Vance Plaintiff Fact Sheet, excerpted

**Exhibit AN:** Terry Crews, on behalf of The Estate Patricia Crews, Response to the USA's First Set of Interrogatories, excerpted

**Exhibit AO:** FTCA Plaintiffs Disclosures of Expert Opinions Pursuant to FRCP 26(a)(2)(C), dated 2-23-24, 5-13-24, and 8-19-24

**Exhibit AP:** Deposition of Jamal Michael Saad, July 30, 2024, excerpted

**Exhibit AQ:** Commercial Broker Price Opinion for 1610 W. Pasadena Rd., Legins Deposition Exhibit 4

**Exhibit AR:** Deposition of Dr. Mohammed Syed, August 23, 2023, excerpted

**Exhibit AS:** Margie McClain's Response to the USA's First Set of Requests for Production, excerpted

**Exhibit AT:** Deposition of Dr. Wrex Weaver III, July 17, 2023, excerpted

**Exhibit AU:** Lawrence Cooley's Response to the USA's First Set of Requests for Production, excerpted

**Exhibit AV**: Carolyn Daly Plaintiff Fact Sheet, excerpted

**Exhibit AW:** William Daly, on behalf of The Estate of Carolyn Daly, Response to the USA's First Set of Interrogatories, excerpted

**Exhibit AX:** Carolyn Daly Medical Records – CD00295, excerpted

**Exhibit AY:** Carolyn Daly Medical Records – CD00343, excerpted

**Exhibit AZ:** Deposition of Dr. Timothy Piontkowski, August 10, 2023, excerpted

**Exhibit BA:** Anthony Vance's Second Corrected Response to the USA's First Set of Interrogatories, excerpted

**Exhibit BB**: John Campbell Plaintiff Fact Sheet, excerpted

**Exhibit BC:** John Campbell's Response to the USA's First Set of Requests for Production, excerpted

**Exhibit BD:** Deposition of John Campbell, December 1, 2022, excerpted

**Exhibit BE:** Deposition of Dr. April Fischer, December 15, 2023, excerpted

---

**United States of America's Memorandum in Support of its
Motion for Summary Judgment**

---

## INTRODUCTION

The United States moves for summary judgment on the claims of nine of the remaining eleven bellwether plaintiffs (all but minor plaintiffs J.M. and S.J.).

Six of the adult bellwether plaintiffs (Vivian Anderson, Stanley Langston, Jason Keys, Patricia Crews, Margie McClain, and Lawrence Cooley; hereinafter, collectively referred to as the "Late-Filing Bellwether Plaintiffs") submitted administrative claims to the U.S. Environmental Protection Agency more than two years after their claims accrued, that is, more than two years after each plaintiff knew of his or her injuries and their probable cause, and thus had inquiry-notice of his or her claims. *See United States v. Kubrick*, 444 U.S. 111, 123 (1979) (holding that claim under the Federal Tort Claims Act accrues when plaintiff is aware of his injury and its probable cause). These claims are thus barred by the Federal Tort Claims Act's two-year statute of limitations, 28 U.S.C. § 2401(b).

Several of the claims of the adult bellwether plaintiffs (the six above, plus Carolyn Daly, Anthony Vance, and John Campbell), also fail because plaintiffs cannot prove causation. The admissible record lacks evidence to substantiate these claims and, in particular, lacks valid expert testimony to support specific causation.

1

## STATEMENT OF FACTS[1]

### 1.      Widespread Public Knowledge About Flint Water Contamination

The Flint Water Crisis was a tragic and unprecedented situation that began in April 2014 when, to save money, the City of Flint and the Michigan Department of Environmental Quality ("MDEQ") decided to switch Flint's water source from City of Detroit water to Flint River water processed at the Flint water treatment plant. Per direction of the MDEQ, the primary agency responsible for regulating drinking water within the State, the City did not treat the Flint River water with corrosion control—a process to prevent lead and other substances from leaching from pipes into the water—and instead undertook two 6-month rounds of water sampling to determine whether corrosion control was needed. Cook email (May 1, 2015), ECF 38-1, PageID.1135; Briefing Paper, ECF 38-10, PageID.1169. The U.S. Environmental Protection Agency ("EPA") was not involved in the City's and MDEQ's decisions to switch to the Flint River and forego corrosion control. Poy Depo. at 341:8-12, 350:8-11, ECF 262-1, PageID.5086-87.

Following the water source switch, boil water advisories were issued in the City of Flint in August and September 2014; on October 13, 2014, General Motors

---

[1] The Court's prior factual discussion regarding the legislative and administrative regulatory regime and general factual background are incorporated by reference. *See Burgess v. United States*, 375 F. Supp. 3d 796, 801-09 (E.D. Mich. 2019) (ECF No. 76).

2

stopped using Flint River water at its engine plant in Flint due to concerns about corrosion to its engine parts; and a violation notice for exceeding the maximum contaminant level standard for total trihalomethanes was issued in January 2015. Exh. A, Governor's Office Briefing Paper (Oct. 1, 2014); Busch email (Oct. 16, 2014), ECF 40-2, PageID.1346; Shoven Depo. at 95:4-15, 97:16-23, ECF 262-4, PageID.5120; Flint Drinking Water Issues Briefing Paper, ECF 262-3, PageID.5109. According to the FTCA Plaintiffs, "[b]y late January 2015, the news media regularly reported . . . widespread water quality issues and resulting illnesses occurring in Flint," and "[a] casual internet search in January, February or March of 2015, would have produced scores of news reports about the environmental crisis developing in Flint." *Burgess v. United States*, Civ. Case No. 17-11218, Sec. Am. Compl. (ECF No. 73) at ¶38; *Thomas v. United States*, Civ. Case No. 18-10243, Compl. (ECF No. 1) at ¶30.[2] However, it was not until April 2015, one year after the water source switch, that EPA employees investigating water quality issues in Flint learned definitively that the Flint River water was not being treated with proper corrosion control. *Burgess*, 375 F. Supp. 3d at 806; Cook email (Apr. 24, 2015), ECF 38-1, PageID.1137.

---

[2] Notably, the *Thomas* complaint is identical to the other, non-*Burgess* complaints in the *In re FTCA Flint Water Cases* consolidated cases.

3

On June 24, 2015, EPA scientist Miguel Del Toral issued an interim report describing his investigation of water quality issues at a Flint resident's home. Del Toral Interim Report (June 24, 2015), ECF 38-2, PageID.1141; ECF 263-1, PageID.5303; Del Toral email (June 24, 2015), ECF 38-38-4, PageID.1150. The interim report highlighted the lack of corrosion control by Flint and the potential systemwide problems with increased water lead levels that could result. The interim report was provided to the homeowner and then made public by local and national media outlets. Hyde email (June 30, 2015), ECF 38-5, PageID.1155; Hedman Depo. at 35-37, ECF 263-5, PageID.5342; Hedman email (July 10, 2015), ECF 263-11, PageID.5430. By early July 2015, "[t]he threat to the public health of the citizens of Flint became nationwide news." *Burgess*, Sec. Am. Compl. (ECF No. 73) at ¶60; *Thomas*, Compl. (ECF No. 1) at ¶52; *see also* Michigan Radio article (July 13, 2015), ECF 53-35, PageID.2167.

Public information and media reports about Flint water contamination and lead issues related to Flint's drinking water became more widespread in September 2015. On September 3, 2015, the media reported that studies of Flint residential water contamination levels by Dr. Marc Edwards, an engineering professor from Virginia Polytechnic Institute, "showed that there is an immediate public health crisis at hand" and that "Flint River water was causing lead contamination in Flint homes." *Burgess*, Sec. Am. Compl. (ECF No. 73) at ¶73;

*Thomas*, Compl. (ECF No. 1) at ¶65. Also on September 3, 2015, Flint's Mayor announced that the City of Flint would implement corrosion control treatment and invited EPA corrosion control experts to join the Flint Technical Advisory Committee. *Burgess*, 375 F. Supp. 3d at 808.

On September 24, 2015, Dr. Mona Hanna-Attisha, a pediatrician and professor at Michigan State University College of Human Medicine, released the results of her study of the incidences of elevated blood lead levels in children in Flint. The media reported that "[h]er position was dramatic: every child in Flint is presumed to have ingested lead and has been harmed by this toxic metal." *Burgess*, Sec. Am. Compl. (ECF No. 73) at ¶87; *Thomas*, Compl. (ECF No. 1) at ¶79; *see also* NPR article (Sept. 29, 2015), ECF 53-29, PageID.2138. Immediately thereafter, on September 25, 2015, the City of Flint issued a lead advisory, as did the Genesee County Board of Commissioners on September 29, 2015. City of Flint Lead Advisory (Sept. 25, 2015), ECF No. 264-3, PageID.5452; Genesee Cty. Pub. Health Advisory (Sept. 29, 2015), ECF No. 264-4, PageID.5456; *Burgess*, Sec. Am. Compl. (ECF No. 73) at ¶88; Thomas, Compl. (ECF No. 1) at ¶80. And on October 1, 2015, the Genesee County Health Department issued a "Do Not Drink the Water" Advisory. *Burgess*, Sec. Am. Compl. (ECF No. 73) at ¶90; *Thomas*, Compl. (ECF No. 1) at ¶82; *see also* Governor's Flint Water Advisory Task Force Timeline, ECF No. 53-27, at PageID.2127 (noting that in conjunction with the 'Do Not Drink'

advisory, a news conference was held, GCHD declared a Public Health Emergency, the Flint Mayor issued a statement saying Flint Water customers should filter their water, and MLive published news reports about the warnings).

On October 2, 2015, the State publicly released a 10-Point Plan (with which EPA Region 5 Administrator Hedman assisted) to address Flint's water problems, including: (1) providing free bottled water and pre-mixed formula to Flint residents; (2) providing free water filters; and (3) accelerating implementation of corrosion control. Hedman email (Sept. 29, 2015), ECF 39-12, PageID.1278; Kaplan Depo. at 174, 213, ECF 262-14, PageID.5274, 5279; Hedman Depo. at 426, ECF 263-5, PageID.5379; Hedman email (Oct. 2, 2015), ECF 264-7, PageID.5496. On October 8, 2015, the Michigan Governor and the Mayor of Flint announced that Flint would connect to the Great Lakes Water Authority, the then-operator of the Detroit drinking water system, and on October 16, 2015, Flint switched back to purchasing finished water from the City of Detroit. *Burgess*, 375 F. Supp. 3d at 808; Busch email (Oct. 22, 2015), ECF 41, PageID.1707; Hedman letter (Dec. 10, 2015), ECF 41-2, PageID.1718.

There continued to be issues with Flint's ability to respond to and carry out EPA recommendations and safely manage the City's water system. *See* Shoven Depo. at 252-53, ECF 262-4, PageID.5133. On December 14, 2015, the Mayor of Flint declared an emergency; and on January 5, 2016, Michigan Governor Snyder

6

declared an emergency in Flint. *See* Exh. B, Flint Declaration of State of Emergency (Dec. 14, 2015); Exh. O, Michigan Proclamation Declaration of Emergency (Jan. 5, 2016). Soon thereafter, on January 14, 2016, Governor Snyder requested emergency disaster assistance, followed by declaration of a federal emergency two days later. And on January 21, 2016, the EPA issued an emergency order pursuant to Section 1431 of the Safe Drinking Water Act ("SDWA"). *Burgess*, 375 F. Supp. 3d at 808; Emergency Administrative Order (Jan. 21, 2016), ECF 39-15, PageID.1292; Kaplan Depo. at 116-21, ECF 262-14, PageID.5267; Giles Depo. at 37-37, ECF 264-8, PageID.5504.

## 2.      Late-Filing Bellwether Plaintiffs' Knowledge of Injury Onset

Although each of the six adult Late-Filing Bellwether Plaintiffs became aware of his or her alleged injuries at different times, nearly all their alleged injuries manifested prior to October 1, 2015, the date on which the Genesee County Health Department issued a public "Do Not Drink the Water" Advisory, or more than two years prior to the submission of an administrative claim to the EPA. Each Late-Filing Bellwether Plaintiff's knowledge of the onset of his or her particular alleged injuries is set forth in greater detail in Pt. I(C), below.

### 3.   Bellwether Plaintiffs' Submission of Administrative Claims to EPA

For the eleven bellwether plaintiffs currently before the Court, the dates that they submitted their underlying administrative claims to the EPA range from October 2016 to March 2019.[3] *See* Exh. C, Redden Decl.

Five of the bellwether plaintiffs submitted administrative claims to the EPA prior to October 1, 2017:  John Campbell's and S.J.'s administrative claims were submitted on October 13, 2016; Anthony Vance's and J.M.'s administrative claims were submitted on May 9, 2017; and William Daly (on behalf of Carolyn Daly)'s administrative claim was submitted on May 11, 2017. *See* Exh. D, Campbell Admin. Cl.; Exh. E, S.J. Admin. Cl.; Exh. F, Vance Admin. Cl.; Exh. G, J.M. Admin. Cl.; and Exh. H, Daly Admin. Cl. The instant Motion does not dispute that these five claims were timely submitted.

The six remaining bellwether plaintiffs (the Late-Filing Bellwether Plaintiffs) submitted their administrative claims to the EPA after October 1, 2017:  Vivian Anderson's administrative claim was submitted on October 16, 2017; Stanley Langston's administrative claim was submitted on March 26, 2018; Jason Keys'

---

[3] The applicable date of submission is the date the claim was received by the agency, not the date it was mailed or signed by the plaintiff. *See Willis v. United States*, 972 F.2d 350, at *2 (6th Cir. 1992) (unpublished) ("The mere mailing of documents does not constitute presentment within the meaning of 28 U.S.C. § 2401(b).") (citing *Bailey v. United States*, 642 F.2d 344, 347 (9th Cir. 1981)).

administrative claim was submitted on July 31, 2018; Terry Crews (on behalf of Patricia Crews)'s and Margie McClain's administrative claims were submitted on February 6, 2019; and Lawrence Cooley's administrative claim was submitted on March 14, 2019. *See* Exh. I, Anderson Admin. Cl.; Exh. J, Langston Admin. Cl.; Exh. K, Keys Admin. Cl.; Exh. L, Crews Admin. Cl.; Exh. M, McClain Admin. Cl.; and Exh. N, Cooley Admin. Cl.

## RELEVANT PROCEDURAL BACKGROUND

Plaintiffs in the FTCA cases consolidated before this Court all bring identical negligence claims: (1) negligent failure to take mandatory actions required by SDWA, specifically: the failure to issue a § 1431 emergency order sooner; failure to provide technical assistance, obtain compliance, and commence a civil action under § 1414; and negligent undertaking regarding corrosion control (Count I); (2) negligent performance of undertaking regarding timely investigations (Count II); and (3) negligent undertaking of the duty to warn the public of environmental risks to public health (Count III). *Burgess*, Sec. Am. Compl. (ECF No. 73) at 27-34; *Thomas*, Compl. (ECF No. 1) at 17-21.

The parties agreed to a bellwether process for litigating this consolidated FTCA case. *See* ECF No. 111. Of the fourteen bellwether plaintiffs originally

selected for discovery, *see* ECF No. 172, eleven remain.[4] Fact and expert discovery were completed on these bellwether plaintiffs on September 13, 2023, *see* ECF No. 219, and September 9, 2024, *see* ECF No. 282, respectively.

In accordance with the Court's Scheduling Orders, the United States filed its motion to dismiss the Bellwether Plaintiffs' claims pursuant to the FTCA's discretionary function exception on February 9, 2024. ECF No. 262. The deadline to file additional motions related to subject matter jurisdiction, summary judgment, and *Daubert* motions is October 16, 2024. *See* ECF No. 286. Per the Court's October 4, 2024, text-only Order, the United States may also file a motion to exclude belated expert reports on or before October 23, 2024.

## STANDARD OF REVIEW

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial." *Kabir*

---

[4] *See* ECF Nos. 231 (dismissing P.F.), 253 (removing E.M. from the bellwether process), and 288 (dismissing H.J.).

10

*v. United States*, No. CIV. 14-11563, 2015 WL 3968937, at *1 (E.D. Mich. June 30, 2015) (Parker, J.) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

"The movant has the initial burden of showing 'the absence of a genuine issue of material fact.' *Id.* (quoting *Celotex*, 477 U.S. at 323). This initial burden may be overcome by showing "that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005). "Once the movant meets this burden, the 'nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Kabir*, 2015 WL 3968937 at *1 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The existence of any factual dispute, standing alone, does not defeat a properly supported motion for summary judgment. *Bartos v. United States*, Case No. 17-11059, 2018 WL 4005523, at *4 (E.D. Mich. Aug. 22, 2018). Instead, the disputed factual issue must be material. *Id.* A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013). A "mere 'scintilla' of evidence" supporting the nonmoving party's position is insufficient to defeat summary judgment. *Tingle v. Arbors at Hilliard*,

692 F.3d 523, 529 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)).

## ARGUMENT

### I.    The Claims of Six of the Eleven Remaining Bellwether Plaintiffs Are Barred by the Statute of Limitations

Although all eleven bellwether plaintiffs (indeed, all of the FTCA Plaintiffs in the consolidated cases before this Court) allege the same three negligence claims against the United States under the FTCA, the dates on which they submitted their administrative claims to the EPA differ significantly. *See* Exh. C, Redden Decl. The Late-Filing Bellwether Plaintiffs (Jason Keys, Lawrence Cooley, Margie McClain, Patricia Crews, Stanley Langston, and Vivian Anderson) submitted their administrative complaints to the EPA more than two years after October 1, 2015, the date of the Genesee County Health Department's public "Do Not Drink the Water" Advisory. By that date, the extensive media coverage and public notification was sufficient to charge the plaintiffs with constructive knowledge of the alleged cause of their injuries. *See Chomic v. United States*, 377 F.3d 607, 610 (6th Cir. 2004) (noting that a negligence claim under the FTCA accrues within the meaning of 28 U.S.C. § 2401(b) when a plaintiff knows of both the existence and the probable cause of his injury). Because these bellwether plaintiffs' injuries were manifest or known prior to October 1, 2015, or more than two years prior to the submission of an administrative claim to the EPA, the Late-Filing Bellwether Plaintiffs' claims are

untimely under the FTCA's statute of limitations, 28 U.S.C. § 2401(b), and summary judgment in favor of the United States is warranted.

## A.   The FTCA's Two-Year Statute of Limitations and Accrual

The FTCA's statute of limitations provides, in relevant part, that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). The burden is on the government to show that the statute of limitations has run in an FTCA action. *Hogan v. United States*, 42 F.App'x 717, 722 (6th Cir. 2002). "Section 2401(b) . . . is the balance struck by Congress in the context of tort claims against the Government; and [the Court is] not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Kubrick*, 444 U.S. at 117.

Under the FTCA, a claim accrues "when a plaintiff knows of both the existence and the cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute negligence." *Chomic*, 377 F.3d at 610 (citing *Kubrick*, 444 U.S. at 123). The Sixth Circuit characterizes this as an "inquiry-notice rule"—"[s]pecifically, a claim accrues when a plaintiff possesses enough information with respect to her injury that, '[h]ad [she] sought out independent legal and [expert] advice at that point, [she] should have been able to determine in the two-year period whether to file an administrative claim.'" *Hertz v. United States*,

560 F.3d 616, 618 (6th Cir. 2009) (quoting *McIntyre v. United States*, 367 F.3d 38, 53 (1st Cir. 2004)); *see also Kubrick*, 444 U.S. at 123 ("A plaintiff . . . armed with the facts about the harm done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."). This inquiry "is necessarily fact-intensive," *id.* at 619, and is an objective one, *see, e.g.*, *Coffie v. United States*, 43 F.App'x 808, 811 (6th Cir. 2002) ("The timeliness of this inquiry is measured by an objective standard—whether a reasonable person's suspicions of an injury would induce that individual to seek professional advice regarding legal recourse.").[5]

---

[5] Although the Supreme Court held in *United States v. Wong*, 575 U.S. 402 (2015), that the FTCA's statute of limitations provision may be subject to equitable tolling, there do not appear to be compelling reasons for doing so here and the burden is on the plaintiffs to establish that equitable tolling should be applied. *See Wong*, 575 U.S. at 420; *Ayers v. U.S.*, 277 F.3d 821, 828 (6th Cir. 2002) (noting that equitable tolling is applied "sparingly" in suits against the United States and requires more than "garden variety" excusable neglect) (quoting *Irwin v. Dep't of Veterans' Affairs*, 498 U.S. 89, 96 (1990)); *see also Zappone v. United States*, 870 F.3d 551, 556 (6th Cir. 2017) (plaintiffs "carr[y] the burden of establishing [their] entitlement to equitable tolling"); *Bond v. United States*, No. CV 18-13114, 2019 WL 3842839, at *3 (E.D. Mich. Aug. 15, 2019). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

**B.    The Late-Filing Bellwether Plaintiffs had Constructive Knowledge of the Alleged Cause of Their Injury by October 1, 2015.**

All of the bellwether plaintiffs allege that EPA's negligent response to the Flint Water Crisis harmed them; these allegations are based on their belief that the EPA's conduct caused additional or preventable exposure to contaminants, particularly lead, in the Flint water, which caused personal injury or property damage.

Based on the public record and their own admissions, by October 1, 2015, the Late-Filing Bellwether Plaintiffs knew, or had reason to know, of the danger of contaminants and increased lead levels in Flint drinking water. "Where events receive . . . widespread publicity, plaintiffs may be charged with knowledge of their occurrence." *United Klans of Am. v. McGovern*, 621 F.2d 152, 154 (5th Cir.1980); *see also McIntyre v. United States*, 367 F.3d 38, 60-61 (1st Cir. 2004). Moreover, "[p]laintiffs are bound by admissions in their pleadings," and "such admissions can undermine the timeliness of a plaintiff's claim." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 549 (6th Cir. 2000).

Here, the FTCA Plaintiffs' pleadings acknowledge that there was widespread media coverage of the water problems in Flint—the alleged cause of each Plaintiff's injury—*as of March 2015. See Burgess*, Sec. Am. Compl. (ECF No. 73) at ¶38; *Thomas*, Compl. (ECF No. 1) at ¶30; *see also* Governor's Flint Water Advisory Task Force Timeline, ECF No. 53-27, PageID.2114-18 (referencing numerous news

reports and articles from Detroit Free Press, MLive, Bridge Magazine, APNewsBreak, and ABC12 about the Flint Water Crisis). By July 2015, the Del Toral interim report was made public through various Michigan media outlets and the "threat to the public health of the citizens of Flint became *nationwide news*." *Burgess*, Sec. Am. Compl. at ¶60 (emphasis added); *Thomas*, Compl. at ¶52 (emphasis added); *see also* Michigan Radio article, ECF No. 53-35, PageID.2167. Then, in September 2015, local and national media publicized Dr. Edwards' findings linking the Flint River water to lead contamination in homes and Dr. Hanna-Attisha's report linking the Flint River water to elevated blood lead levels in children. *See Burgess*, Sec. Am. Compl. at ¶73, 87; *Thomas*, Compl. at ¶65, 79; *see also* ECF No. 53-27, PageID.2123-25. That news was followed, on September 25, 2015, by a City of Flint lead advisory and, on October 1, 2015, a Genesee County Health Department 'Do Not Drink the Water' advisory. *Burgess*, Sec. Am. Compl. at ¶88, 90; *Thomas*, Compl. at ¶80, 82.

This widespread media coverage and the public pronouncements concerning the Flint Water Crisis admitted by plaintiffs and confirmed in the record (*see supra* at 3-5) provided the Late-Filing Bellwether Plaintiffs with sufficient factual information to start the FTCA claim-accrual period by October 1, 2015, if not earlier. *See, e.g.*, *In re Flint Water Cases*, No. 17-10164, 2019 WL 3530874, at *13 (E.D. Mich. Aug. 2, 2019) (noting that plaintiffs bringing § 1983 claims "knew or should

16

have known of their injury" by early October 2015, "at the very latest," when the Governor publicly admitted that Flint's water was dangerously contaminated), *aff'd in part and remanded on other grounds*, 969 F.3d 298 (6th Cir. 2020).

Because the knowledge standard is objective, the media coverage provided notice regardless of whether the Plaintiffs themselves heard or read any of these particular media reports. For example, in *Hughes*, even though the plaintiff submitted an affidavit that she personally had not read any newspapers or watched any media coverage, the Court held that extensive publicity was sufficient to charge her with constructive knowledge of the events underlying her cause of action. *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548-49 (6th Cir. 2000) (finding that a press release, front-page stories in the city's two leading newspapers, and newspaper and television coverage of a similar lawsuit one year later showed that a "reasonable person *should have been aware* of the claims at issue by that date" (emphasis in original)); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 722 (6th Cir. 2004) (finding statute of limitations triggered because public record was sufficient to alert plaintiffs as to a possible connection between emissions and health risks).

Plaintiffs need not know the United States' role in the Flint Water Crisis or whether the EPA was potentially negligent for their claims to accrue. By October 1, 2015, the extensive media coverage and public pronouncements that a water crisis had and was occurring in Flint was enough to put them on inquiry notice of the

17

alleged cause of their injury and to induce a reasonable person to investigate and seek legal counsel. *Hertz*, 560 F.3d at 619.

Moreover, as the Sixth Circuit has explained, "before the accrual of a cause of action against the United States under the FTCA may be deferred because of the plaintiff's inability to identify the party whose conduct triggered the injury, it must be shown that the United States itself played a wrongful role in concealing the culprit's identity." *Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir. 1984). In other words, an FTCA Plaintiff cannot delay claim accrual by claiming ignorance until a later date of EPA's potential liability unless that FTCA Plaintiff can also show entitlement to equitable tolling due to the United States' fraudulent concealment of its role in Flint (which Plaintiffs cannot show here). *Diminnie*, 728 F.2d at 305-06. The Sixth Circuit's *Diminnie* decision is consistent with numerous other decisions holding that "the fact that Plaintiff was not aware that [an alleged tortfeasor] was a federal employee does not extend the limitations period." *Cotter v. United States*, No. 1:06-CV-382, 2006 WL 3253289, at *5 (W.D. Mich. Nov. 8, 2006); *see also Whittlesey v. Cole*, 142 F.3d 340, 343 (6th Cir. 1998) (a contrary rule "would remove incentives for the timely investigation and prompt presentation of claims . . . the very purpose of the statute of limitations"); *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 745 (4th Cir. 1990) ("The statute of limitations under the FTCA commences to run from the date of accrual and does not wait until a plaintiff is aware

18

that an alleged tort-feasor is a federal employee."); *Dyniewicz v. United States*, 742 F.2d 484, 486 (9th Cir. 1984) ("Discovery of one's injury . . . does not mean knowing who is responsible for it.").

Thus, the extensive media coverage in Flint and nationally set forth in plaintiffs' own allegations was sufficient to provide a reasonable person with constructive knowledge of lead contamination issues in Flint drinking water by October 1, 2015. Furthermore, for some Late-Filing Bellwether Plaintiffs, such as Vivian Anderson, their own testimony establishes that their claims accrued more than two years before they submitted their claims to the EPA. *See infra*. at Pt. I(C)(1).

### C. The Late-Filing Bellwether Plaintiffs Knew of Their Injury and Its Alleged Cause More than Two Years Before Submitting a Claim.

The record shows that each Late-Filing Bellwether Plaintiff knew of the existence of his or her particular alleged injuries prior to the October 1, 2015, 'Do Not Drink the Water' advisory, or at a minimum more than two years prior to submitting an administrative claim to the EPA. Thus, each had sufficient knowledge and facts about the harm allegedly done to them that they could "protect [themselves] by seeking advice in the legal community." *Kubrick*, 444 U.S. at 123. In addition, in many cases, the record provides plaintiff-specific evidence showing knowledge of the alleged cause of their injury separate and apart from the October 1, 2015, 'Do Not Drink Water' advisory.

Generally, to the extent it appears that "a specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time," then the "cause of action accrues when the injury manifests itself." *Krueger v. United States*, No. 17-CV-10574, 2017 WL 5467743, at *5 (E.D. Mich. Nov. 14, 2017) (quoting *Fries v. Chi. & Nw. Transp. Co.*, 909 F.2d 1092, 1094 (7th Cir. 1990) (citing *Urie v. Thompson*, 337 U.S. 163 (1949))); *see also Wallace v. Kato*, 549 U.S. 384, 391 (2007) ("Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.") (citation omitted). Moreover, courts within this Circuit typically undertake an injury-specific analysis to determine when a claim-based injury accrues. *See, e.g.*, *Redmond v. United States*, 194 F. Supp. 3d 606, 621 (E.D. Mich. 2016) (differentiating between timing of liver cancer diagnosis and Hepatitis B diagnosis because claim was based on death due to liver cancer).

### 1. Vivian Anderson

Bellwether plaintiff Vivian Anderson submitted her administrative claim to the EPA on October 16, 2017. Ms. Anderson alleges that she sustained ████ ████████████████████████████ as a result of exposure to lead in the water distributed by the City of Flint Water Supply. Exh. R, Anderson Resp. to 1st

Set of Interrogatories at 6-7.[6] Ms. Anderson testified that her ███████████

███████████ began in 2014. Exh. S, Anderson Depo. at 88, 104-05, 108, 116-17.

Ms. Anderson noticed changes in the taste, smell, and color of her home's tap water in the summer of 2014 and then switched to bottled water for cooking, drinking, and tooth brushing. Exh. S, Anderson Depo. at 64-66. Soon thereafter, also in 2014, the water in Ms. Anderson's home was tested and she learned from her boyfriend that the results indicated there was lead in the water. *Id.* at 66-68. Thus, Ms. Anderson was aware of water contamination issues no later than the end of 2014. And, certainly, by October 1, 2015: given the widespread public media information about the Flint Water Crisis, she had sufficient information to investigate any possible connection between the water contamination and her health problems.

Under federal law, Ms. Anderson's claims accrued at the time she became aware of the existence and probable cause of her alleged injuries, *i.e.*, by the end of 2014, and at the latest by October 1, 2015. *See Chomic*, 377 F.3d at 610. Given that her administrative claim was submitted to the EPA on October 16, 2017, over two years after claim accrual, Ms. Anderson's personal injury claims are barred by the FTCA's two-year statute of limitations.

---

[6] In her Plaintiff Fact Sheet and Interrogatory Responses, Ms. Anderson also alleged property damage and diminution of value at 2847 Mackin Road; however, those claims have since been dismissed with prejudice via stipulated order. ECF No. 221, PageID.4444-45.

### 2. Stanley Langston

Bellwether plaintiff Stanley Langston submitted his administrative claim to the EPA on March 26, 2018. Mr. Langston alleges that personal injuries consisting of ███████████████████████ were caused by exposure to water distributed by the City of Flint Water Supply after April 25, 2014, as well as property damage to his home at 2017 Mallery Street. Exh. T, Langston PFS at 3, 20-21; Exh. U, Langston Resp. to 1st Set of Interrogatories at 5-6, 10-12; Exh. V, Langston Depo. at 22-23.

Mr. Langston became aware of and acted in response to water contamination issues shortly after the switch to Flint River water; he stated that he stopped drinking the tap water at his home in the fall of 2014, soon after seeing news reports that General Motors stopped using Flint water in its production processes. Exh. V, Langston Depo. at 74-75. Mr. Langston stated that the damage to his property began in 2014. *Id*. at 32. Moreover, Mr. Langston's ████████████ manifested prior to the switch by the City of Flint to Flint River water, as his ████████████ were first detected and diagnosed in late-2013 or early-2014, after which he ████████████ ████████████ that concluded in May 2014. Thus, his treatment for ████ ████ concluded just as the Flint Water Crisis began, and he has been ████████ ever since. Exh. V, Langston Depo. at 25, 48, 51, 55, 57-60. Accordingly, Mr. Langston had sufficient knowledge of the existence and alleged cause of his

███████████ and property damage for those damage claims to accrue before October 1, 2015, and his failure to file a timely administrative claim warrants summary judgment for the United States.[7]

### 3. Jason Keys

Bellwether plaintiff Jason Keys submitted his administrative claim to the EPA on July 31, 2018. Mr. Keys alleges that ███████████████████ were caused by contaminants in the Flint water, as well as business losses and property damage to his beauty salon and barber shop at 1610 W. Pasadena Road. Exh. W, Keys PFS at 15-17, 20-22; Exh. X, Keys Resp. to 1st Set of Interrogatories at 6-7, 11-12.

Mr. Keys learned about contamination problems with the water distributed by the Flint Water system in the middle (*i.e.*, "spring going into summer is when we started finding out") of 2015. Exh. Y, Keys Depo. at 194:1-14. Mr. Keys' ██████ ███████████████ manifested by October 15, 2014, when he was seen by his primary care physician regarding complaints of ██████████████████████ ████████████████. Exh. Z, JK00021-23. Mr. Keys' alleged property

---

[7] The record is ambiguous as to when Mr. Langston first manifested the ███████ that he attributes to his exposure to Flint water. When asked to specify when the ████ first started, Mr. Langston stated, "I would say around about 2016, but I didn't pay no attention." Exh. V, Langston Depo. at 65-66. There are no medical records associated with Mr. Langston's ████████. Even if Mr. Langston's ████████ damage claims were not barred by the statute of limitations, they still fail for lack of causation. *See infra* at Pt. II(B).

damage manifested in 2015 when Mr. Keys had to replace his hot water heater. Exh. Y, Keys Depo. at 71. In addition, Mr. Keys, who owned a barbershop, attributes his business losses and extra business expenses to increased turnover of renters of booths in his barbershop beginning "around 2014, [20]15" and to the extra costs to open a new barbershop location in November 2015. *Id.* at 42-44, 90-91, 264.[8] Although Mr. Keys was aware of these personal injury and business loss damage claims by the end of 2015, his administrative claim was not submitted to the EPA until July 2018, over 2 ½ years past the claim accrual date, and well beyond the applicable statute of limitations. Accordingly, summary judgment in favor of the United States is appropriate on Mr. Keys' claims.

### 4. Patricia Crews

Terry Crews submitted an administrative claim alleging wrongful death (on behalf of Patricia Crews) to the EPA on February 6, 2019. Patricia Crews died on November 24, 2015, at the age of 66, of acute respiratory failure, health care acquired pneumonia, and chronic lymphocytic leukemia. *See* Patricia Crews Cert. of Death, Exh. P; *see also* Exh. AA, Gildeh Depo. at 66:17-22 ("█████████████

████████████████████████████████████████████

---

[8] Mr. Keys also claims a decline in the value of his business. The timing and basis for such a claim is unclear, but the record plainly lacks any submissible evidence of causation in support of such a claim. *See infra* at Pt. II(A).

24

███████████████████████████████████████████████████

███████████████████████████████████████ ").

By at least the date of Ms. Crews' death, Mr. Crews knew of the existence of the injury, and, as noted above based on widespread publicity about water contamination and the Flint Water Crisis, he had sufficient knowledge of the alleged cause of injury for the wrongful death claim to accrue. *See Chomic*, 377 F.3d at 612 (applying *Kubrick* inquiry-notice standard to derivative claim for wrongful death); *see also Spillers v. United States*, No. 13-13501, 2015 WL 519130, at *4 (E.D. Mich. Feb. 9, 2015) (applying inquiry-notice rule in a medical-malpractice claim where the patient died). Because Mr. Crews' administrative claim was submitted to the EPA 3.5 years after the wrongful death claim accrued, summary judgment in favor of the United States is appropriate.

Mr. Crews is not claiming any personal physical injuries. Exh. AB, Crews Depo. at 10. Nor is Mr. Crews claiming any damage to personal property. *Id*. at 37. Mr. Crews, however, does appear to also be alleging diminution in the value of his house in addition to wrongful death claims on behalf of Patricia Crews. *Id*. at 11-12; Exh. AC, Crews PFS at 3, 15-16. Given the widespread publicity about the Flint Water Crisis, a reasonable person in Mr. Crews' position would have inquiry notice of such a claim by the end of November 2015. Nevertheless, to the extent such a

claim could be considered timely, summary judgment in favor of the United States is appropriate given the lack of support in the record. *See infra* at Pt. II(A).

### 5. Margie McClain

Bellwether plaintiff Margie McClain submitted an administrative claim to the EPA on February 6, 2019. Ms. McClain alleges business losses and damage to business property at 551 Mary Street and 1006 8th Avenue, which includes loss of rental income and property damage to the furnace, hot water tank and pipes at both properties. Exh. AD, McClain PFS at 3, 20-22; Exh. AE, McClain Resp. to 1st Set of Interrogatories at 11-12; Exh. AF, M. McClain Depo. at 19. Ms. McClain stated that she learned about and became aware of the water contamination issues through the news. Exh. AF, M. McClain Depo. at 96.

Ms. McClain generally testified that she did not know anything about the business losses or property damage claims and had no knowledge or documentation to verify or support any of the claims. Exh. AF, M. McClain Depo. at 45-46, 48, 63-66. However, her husband, Leo McClain, testified that the hot water heaters and the furnaces at issue were replaced between 2014 and 2016. Exh. AG, L. McClain Depo. at 40-43. Pipe replacement appears to have been done in the same time frame. *Id*. at 79.

Ms. McClain's business loss administrative claims were submitted to the EPA in February 2019, more than three years after the couple became aware of their

injuries and the events underlying their claims, and are thus barred by the statute of limitations. And even if the Court were to find her claims timely, Ms. McClain has not provided an evidentiary basis to support her claims or prove causation. *See infra* at Pt. II(C).

### 6. Lawrence Cooley

Bellwether plaintiff Lawrence Cooley submitted an administrative claim to the EPA on March 14, 2019, nearly 3.5 years after Genesee County's 'Do Not Drink the Water' advisory. Mr. Cooley brings personal injury claims, alleging ██████ ████████████████████████████ as a result of exposure to water distributed by the City of Flint, as well as property damage and diminution in value to his property at 3316 Iroquois Ave. Exh. AH, Cooley PFS at 3, 16, 20-21; Exh. AI, Cooley Resp. to 1st Set of Interrogatories at 6-7, 11-12.

Mr. Cooley testified that his home's water came out discolored shortly after the switch to Flint River water, and at that point, he stopped drinking or cooking with tap water. Exh. AJ, Cooley Depo. I at 68-70. He could not provide specific information about when his personal injuries first manifested, but stated generally that his problems began "back at the beginning of the crisis," at the same time that local news agencies reported the water was contaminated, and/or back during 2015 or 2016. Exh. AK, Cooley Depo. II at 36, 42, 44-45; *see also* Exh. AL, Brod Expert Rpt. at 4 (stating, based on a review of medical records, that Mr. Cooley's ██

███████████████ began in June 2015). Mr. Cooley could not remember or provide details regarding the property damage or alleged diminution in value of his property. Exh. AK, Cooley Depo. II at 52-60.

Based on this record, and crediting Mr. Cooley's testimony as true and accurate for purposes of summary judgment, Mr. Cooley had sufficient inquiry-notice of his alleged injuries and the probable cause of those injuries for his claims to have accrued by the end of 2016, at the latest. Because his administrative claim was not submitted to the EPA until March 14, 2019, it was submitted beyond the FTCA's two-year statute of limitations, and his claims are barred.

## II.   The Adult Bellwether Plaintiffs Cannot Prove Causation

Even if the tort claims brought by the Late-Filing Bellwether Plaintiffs were not barred by the FTCA's two-year statute of limitations, summary judgment in favor of the United States is still appropriate because there is not sufficient evidence of causation to support such claims. Furthermore, the administrative claims of three other bellwether plaintiffs—William Daly (on behalf of Carolyn Daly), Anthony Vance, and John Campbell—even if timely presented, also fail for insufficient evidence of specific causation. Accordingly, summary judgment in favor of the United States is warranted on the claims as set forth below.

Claims based on an alleged negligent undertaking, such as those brought by the FTCA Plaintiffs here, require proof of duty, breach, causation, and damages. *See*

*West v. Target Corp.*, No. 2:19-CV-13183-TGB-APP, 2021 WL 2682833, at *3 (E.D. Mich. June 30, 2021). Under Michigan law, the plaintiff in a toxic tort case has the burden to "establish both general and specific causation through proof that the toxic substance is capable of causing, and did cause, the plaintiff's alleged injury." *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676-77 (6th Cir. 2011). "Evidence of specific causation consists of proof that exposure to the toxin more likely than not caused the plaintiff's injury." *Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 898 N.W.2d 906, 914 (2017) (Markman, C.J., concurring). "[A] specific causation witness must first 'rule in' exposure to a toxin as a possible cause of the injury, and then reliably rule out the rejected causes." *In re Flint Water Cases*, No. 17-10164, 2021 WL 5847102, at *11 (E.D. Mich. Dec. 9, 2021). Moreover, because "'a substance may cause different harmful effects in different doses,'" a plaintiff can show causation "only by a showing 'of enough exposure to cause the plaintiff's specific illness.'" *In re Flint Water Cases*, No. 17-cv-10164, 2021 WL 5631706, at *4 (E.D. Mich. Dec. 1, 2021) (quoting *Lowery*, 500 Mich. at 1043-44, 898 N.W.2d at 914). In the case of personal injury claims, these causation inquiries "involve scientific assessments that must be established through the testimony of a medical expert." *Pluck*, 640 F.3d 677. "Without this testimony, 'a plaintiff's toxic tort claim will fail.'" *Id*. (quoting *Baker v. Chevron USA, Inc.*, 680 F. Supp. 2d 865,

874 (S.D. Ohio 2010), *aff'd sub nom. Baker v. Chevron U.S.A. Inc.*, 533 F.App'x 509 (6th Cir. 2013)).

In addition, the fact that injuries arose after the alleged exposure does not establish causation under Michigan law. *See Lowery*, 898 N.W.2d at 907 (expert's inference that defendant's toxic spill was cause of plaintiff's problems because plaintiff was not having his problems before spill but was having them afterwards is not reasonable); *West v. Gen. Motors Corp.*, 469 Mich. 177, 186 n.12 (2003) ("Relying merely on a temporal relationship is a form of engaging in the logical fallacy of *post hoc ergo propter hoc* (after this, therefore in consequence of this) reasoning.") (quotation marks omitted); *accord McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) ("[S]imply because a person takes drugs and then suffers an injury does not show causation. Drawing such a conclusion from temporal relationships leads to the blunder of the *post hoc ergo propter hoc* fallacy.").

## A.     Bellwether Plaintiffs' Claims of Property Damage Due to Diminution of Value Lack Factual Support and Proof of Causation

Several of the adult bellwether plaintiffs claim damages based on diminution of property value due to EPA's failure to properly respond to the Flint Water Crisis:

Anthony Vance (926 Maxine St.), *see* Exh. AM, Vance PFS at 20-21;

Stanley Langston (2017 Mallery St.), *see* Exh. T, Langston PFS at 20-21;

Lawrence Cooley (3316 Iroquois Ave.), *see* Exh. AH, Cooley PFS at 20-21;

Terry Crews on behalf of Patricia Crews (2521 Winona St.), *see* Exh. AN, Crews Resp. to 1st Set of Interrogatories No. 8 at 11;

Margie McClain (1006 W. 8th Ave. and 551 Mary St.), *see* Exh. AD, McClain PFS at 20-22; Exh. AE, McClain Resp. to 1st Set of Interrogatories No. 8 at 11; Exh. AF, M. McClain Depo. at 43-45; Exh. AG, L. McClain Depo. at 37-38; and

Jason Keys (1610 W. Pasadena Rd.), *see* Exh. W, Keys PFS at 20-21.

In support of these claims, plaintiffs rely on the expert testimony of residential appraiser Jamal Michael Saad and real estate broker Anthony Legins. *See* Exh. AO, FTCA Plaintiffs' 2nd Corrected Disclosure of Expert Opinions Pursuant to FRCP 26(a)(2)(C) at 19-20. Neither Mr. Saad nor Mr. Legins produced a report in compliance with Rule 26(a)(2)(B), and both are the subject of a separately-filed Motion to Exclude.

Regardless of whether the United States' Motion to Exclude is granted, Plaintiffs' reliance on the opinions of Mr. Saad and Mr. Legins to support their diminution in value claims is unfounded and insufficient. Both Mr. Saad and Mr. Legins calculated only present value; neither made any attempt to calculate a retrospective pre-Flint Water Crisis or pre-EPA intervention value for comparison. *See* Exh. AP, Saad Depo. at 42-43; Exh. AQ, Legins Broker Price Opinion ("BPO") (Legins Depo. Exh. 4). Nor did either provide any opinions on the potential effects of contamination, the Flint Water Crisis, or EPA's conduct on housing or business

prices. *See* Exh. AP, Saad Depo. at 59; Exh. AQ, Legins BPO. And although the bellwether plaintiffs speculated that their property diminished in value, they provided no additional documentation or proof that their property value diminished because of the Flint Water Crisis, much less the actions of the EPA. Taken as a whole, Plaintiffs are unable to provide sufficient evidence of causation to support any of their diminution of value claims and overcome the United States' motion for summary judgment. *See, e.g.*, *Blake v. Columbia Gas Transmission, LLC*, No. CV 3:19-0847, 2021 WL 4255619, at *2-3 (S.D.W. Va. Sept. 17, 2021) (noting that the calculation of a loss of value caused by a specific factor is a complicated analysis which is beyond the knowledge of an average property owner); *Pluck*, 640 F.3d at 677.

### B.    Stanley Langston

As noted above, in addition to bringing several time-barred claims (related to ████████ and property damage), bellwether plaintiff Stanley Langston alleges damages due to ████████. Even assuming, for purposes of this motion, that Mr. Langston first became aware of the alleged water-caused ████████ less than two years prior to submitting an administrative claim to the EPA, Mr. Langston's ████████ damages claim fails because there is no record evidence demonstrating that exposure to lead or other toxins in the Flint water caused Mr. Langston's ████████. The burden is on the plaintiff to establish specific causation by showing that the

water contamination more likely than not caused his alleged injury. *Pluck*, 640 F.3d at 676-77. Here, there are no medical records documenting any ████████████ ██ complaints, or showing any linkage between Mr. Langston's ████████████ and the Flint water. Further, Dr. Syed, Mr. Langston's primary treating physician, stated that he never treated Mr. Langston for ████████, and it would have been documented in the medical records if he had done so. Exh. AR, Syed Depo. at 64-66. Mr. Langston's doctor never told him that ████████ or other conditions were caused by the water change in Flint, and when Mr. Langston requested a blood lead screening test in April 2016, his blood lead level was ████████████. *Id.* at 67-68.[9]

Moreover, plaintiffs have not identified a dermatologist to testify regarding specific causation of Mr. Langston's ████████. Rather, plaintiffs' lone dermatology expert, Dr. Brod, limited his review and opinions to dermatological issues pertaining to FTCA Plaintiffs ████████████████████. *See* Exh. AL, Brod Expert Rpt. There simply is no documentary evidence or expert testimony in the record establishing a causal link between Mr. Langston's alleged

---

[9] In addition, Dr. Syed confirmed that paperwork showed Mr. Langston completed his ████████████████████████████ just as the Flint Water Crisis began. Exh. AR, Syed Depo. at 63-64. Plaintiffs cannot prove causation for an illness that began prior to the change in water sources, and for which successful treatment was completed long before EPA's involvement.

████████ and his exposure to Flint water. Accordingly, summary judgment in favor of the United States on Mr. Langston's ████████ damages claim is appropriate due to lack of proof of causation.

### C.    Margie McClain

As noted above, bellwether plaintiff Margie McClain asserted a host of business loss claims with respect to two rental properties. However, neither Ms. McClain nor her husband, Leo McClain, provided any documentation or other evidence to support those claims and establish a causal link to Flint water exposure and the EPA. *See* Exh. AS, M. McClain's Response to First Set of Requests for Production at 14 No. 9 (responding that Plaintiff "does not have any documents" that depict or record the property damage or business loss).

Leo McClain testified that the hot water heaters and the furnaces at issue were replaced between 2014 and 2016 but provided no records regarding either replacement. Exh. AG, L. McClain Depo. at 40-43. Nor was any testimony or expert report supplied to support a link between the change in Flint's drinking water source and this alleged property damage, beyond Mr. McClain's unsupported speculation. *Id*. at 41-42, 44. Mr. McClain indicated that pipe replacement was done in the same time frame, but there is no documentary evidence substantiating the pipe work and its cost or linking the pipe replacement to the change in Flint's drinking water source or to water contamination. *Id*. at 79. Nor did Mr. or Ms. McClain provide any

documentation of rental losses or when such losses occurred. Exh. AG, L. McClain Depo. at 73, 119. And to the extent Ms. McClain claims loss of value of her business properties due to water contamination after the switch to Flint River water, neither Mr. nor Ms. McClain could or did provide any evidence to support such claims. Exh. AG, L. McClain Depo. at 65, 112;[10] *see also supra* at Pt. II(A).

The complete absence of any evidence to prove the McClain's losses and that any such losses were caused by Flint water and the EPA's actions in responding to the Flint Water Crisis warrants summary judgment in favor of the United States on Margie McClain's business loss claims.

### D.    Lawrence Cooley

In addition to being untimely and barred by the FTCA's two-year statute of limitations, *see supra* at Pt. I(C)(6), several of Mr. Cooley's personal injury and property damage claims are also without sufficient proof to survive summary judgment.

Mr. Cooley alleges personal injury claims that include ███████████. Plaintiffs did not produce a dental expert or other expert to support Mr. Cooley's claim that his exposure to Flint water caused his loss of teeth. And Dr. Weaver,

---

[10] In addition, plaintiffs' plumbing expert, Zak Rostar, did not provide any opinions regarding the McClain properties, and is the subject of a separately-filed Motion to Exclude. *See* Exh. AO, FTCA Plaintiffs' 2nd Corrected Disclosure of Expert Opinions Pursuant to FRCP 26(a)(2)(C) at 20-21.

Mr. Cooley's treating dentist during the time period in question, made it clear that

███████████████████████████████████████████████████████

████████████████████████████████. Exh. AT, Weaver Depo. at 21,

23, 25, 27, 31, 33, 34, 37-38, 42-44. In short, there is no evidence to support

Mr. Cooley's claim that ████████████████████████ were caused by

his exposure to Flint water.

Mr. Cooley provided very little information and no documentation to explain

or support his property damage claims. Exh. AK, Cooley Depo. II at 52-60. His

property damage claims appear to relate to a hot water heater replacement, water

system rental, and general water bill. *See* Exh. AH, Cooley PFS at 20-21; Exh. AI,

Cooley Resp. to 1st Set of Interrogatories No. 8 at 11. There is no expert testimony

to support these claims, and nothing in the record to document and confirm these

damages or establish that they were caused by water contamination in the water

distributed by the Flint water system. *See* Exh. AU, Cooley's Response to First Set

of Requests for Production at 13-14 No. 9 (responding that Plaintiff "does not have

any documents responsive" to the request for documentation that depicts or records

the property damage). Without such information, Mr. Cooley cannot meet his burden

of proof on these claims.

### E.    Carolyn Daly

Bellwether plaintiff William Daly brings a wrongful death claim on behalf of Carolyn Daly, who died on October 31, 2015, at age 71, from pulmonary fibrosis and breast cancer. *See* Exh. AV, Daly PFS at 3; Exh. Q, Carolyn Daly Cert. of Death. Mr. Daly alleges that Carolyn Daly contracted and passed away from an unknown lung disorder/disease caused by her exposure to Flint water while being treated for breast cancer in 2015. Exh. AW, Daly Resp. to 1st Set of Interrogatories at 6-8.

Plaintiffs have presented no documentary or testimonial evidence linking Carolyn Daly's death to her exposure to the water distributed by the City of Flint. Relying on the timing of Ms. Daly's idiopathic illness, without more, is insufficient. *See Lowery*, 898 N.W.2d at 907 (expert's inference of cause based solely on timing of problems is unreasonable). Ms. Daly's medical records do not show evidence of exposure to lead or other contaminants in Flint water nor any connection between Flint water exposure and Ms. Daly's lung disease. *See, e.g.*, Exh. AX, CD00295 ("█████████████████████████████████████████████████████████ █████████████████████████████"); Exh. AY, CD00343 ("█████████ ███████████████████████████████████████████████████████ ████████████████"). Nor have Plaintiffs presented any testimony from a pulmonologist, oncologist, or other medical professional establishing a causal link between Ms. Daly's exposure to Flint water and her lung problems. Dr. Piontkowski,

Ms. Daly's primary treating physician, ███████████████████████████

████████████████████████" Exh. AZ, Piontkowski Depo. at 22; *see also id.*

at 18, 23-25, 36-37, 45-47, 50-51, 54-56, 59-63. Accordingly, Plaintiffs cannot prove

causation, and summary judgment in favor of the United States on the Daly wrongful

death claim is appropriate.

### F.    Anthony Vance

Bellwether plaintiff Anthony Vance claims property damage to his residence

at 926 Maxine Street, including damage to the pipes and plumbing, water damage

from a burst pipe, and diminution in property value.[11] Exh. AM, Vance PFS at 3-4,

20-21; Exh. BA, Vance 2nd Corrected Resp. to 1st Set of Interrogatories.

To support these property damage claims, plaintiffs rely on the testimony of

journeyman plumber Zak Rostar, who is "expected to testify that the untreated

corrosive water that had previously been going through the galvanized pipes in [the

Vance's house] caused the galvanized pipes to corrode and clog." Exh. AO, FTCA

Plaintiffs' Disclosure of Expert Opinions Pursuant to FRCP 26(a)(2)(C) at 21.

However, Mr. Rostar is the subject of a separately-filed Motion to Exclude because

of his improper designation as a FRCP 26(a)(2)(C) witness and failure to provide an

expert report, as well as a *Daubert* challenge because Mr. Rostar is not qualified to

---

[11] Mr. Vance's diminution in property value claim fails for the reasons set forth
above in Pt. II(A).

provide expert testimony regarding the cause of corrosion in residential pipes and his analysis did not apply reliable principles and methodology.

Furthermore, Plaintiffs also provided an additional report from Larry Russell regarding 926 Maxine Street on September 25, 2024, over seven months past the expert report disclosure deadline and several weeks past the close of expert discovery, purporting to analyze evidence from 2023 that had not been disclosed during fact discovery; this Russell report is also the subject of a separately-filed Motion to Exclude that will be filed on October 23, 2024. If those motions are granted, Mr. Vance's claims will be supported by only speculation and temporal coincidence, which are insufficient to establish causation. Thus, summary judgment in favor of the United States on the Vance property damage claim is appropriate.

### G.   John Campbell

Bellwether plaintiff John Campbell alleges personal injuries consisting of █ █ and emotional distress from exposure to the Flint water. Exh. BB, Campbell PFS at 3, 15-17; Exh. BC, Campbell Resp. to 1st Set of Interrogatories at 7-8.

With respect to his ██ claim, Mr. Campbell states that his ██████ first appeared at the end of 2014 or early 2015, but he did not see a healthcare provider about the issue, and there is no evidence of any ████████ in the medical records. Exh. BD, Campbell Depo. at 87-89; *see also* Exh. BE, Fischer Depo. at 24 (statement by Mr. Campbell's treating physician that ██████████

████████████████████████████████████████████ ). Nor have Plaintiffs provided any expert testimony to support a causal link between Mr. Campbell's alleged ██████ and his exposure to Flint water, as their lone dermatology expert, Dr. Brod, did not opine upon Mr. Campbell's injuries. *See* Exh. AL, Brod Expert Rpt. In the absence of any expert testimony to support Mr. Campbell's speculation of a link between his exposure to Flint water and his █████, Mr. Campbell's claim lacks sufficient proof of causation, and summary judgment to the United States on the claim should be granted.

Given the lack of evidence to support any physical injury to Mr. Campbell, his claim of emotional distress cannot stand. In Michigan, "present physical injury" is necessary to state a claim for negligence. *Henry v. Dow Chem. Co.*, 473 Mich. 63, 701 N.W.2d 684, 691 (2005). An allegation of emotional trauma, standing alone, does not cure the problem, because a claim of negligent infliction of emotional distress requires "physical manifestations of that distress." *Henry*, 701 N.W.2d at 692. Accordingly, the Court should grant summary judgment to the United States on all of Mr. Campbell's personal injury claims.

## CONCLUSION

For the reasons set forth above, in addition to those in the United States' separately-filed *Daubert* motions and motions to exclude, summary judgment in favor of the United States should be granted with respect to the claims brought by

bellwether plaintiffs Vivian Anderson, Stanley Langston, Jason Keys, Terry Crews (on behalf of Patricia Crews), Margie McClain, Lawrence Cooley, William Daly (on behalf of Carolyn Daly), Anthony Vance, and John Campbell.

Dated:  October 16, 2024       Respectfully submitted,

*/s/ Jason T. Cohen*

Jason T. Cohen (CA Bar #214438)
Heidy L. Gonzalez (FL Bar #1025003)
Timothy B. Walthall (MA Bar #515460)
Eric Rey (DC Bar #988615)
Daniel C. Eagles (DC Bar #1035048)
Marianne F. Kies (DC Bar #1023554)
Jewel M. Lightfoot IV (TX Bar #24138965)
Trial Attorneys
United States Department of Justice
Civil Division, Torts Branch
Environmental Tort Litigation
1100 L Street, N.W.
Washington, DC 20005
E-mail: Jason.T.Cohen@usdoj.gov
Phone: 202-514-0335
Fax: 202-616-4473

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, I electronically filed the foregoing Motion for Summary Judgment and accompanying Memorandum in Support and Exhibits using the Electronic Case Filing ("ECF") system of this Court. The ECF system will send a "Notice of Electronic Filing" to the attorneys of record.

/s/ *Jason T. Cohen*
Jason T. Cohen