UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases,

_____/

This Motion Relates to:
ALL CASES

Civil No. 4:17-cv-11218
Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

_____

## PLAINTIFFS' AMENDED MOTION TO EXCLUDE CERTAIN OPINIONS OF JENNIFER HUFFMAN BASED ON LACK OF QUALIFICATIONS

Pursuant to Federal Rule of Evidence 702, Plaintiffs move to exclude portions of the testimony and report of Dr. Jennifer Huffman, that proffer opinions that are outside of her area of expertise.

Plaintiffs seek to limit Dr. Huffman's testimony to her neuropsychological evaluations of the child Bellwether Plaintiffs and exclude her opinion and testimony related to community, behavioral and mental health as impacted by the Flint Water Crisis; the traumatic impact of the Flint Water Crisis and resulting injuries to the adult Bellwether Plaintiffs; and the socioeconomic and mental health consequences of the water crisis on the Flint community and Plaintiffs.

Plaintiffs conferred with Defendant's counsel pursuant to Local Rule 7.1(a), after explaining the nature and basis for the motion, Defendant's counsel stated they would oppose.

1

Respectfully submitted,

By: s/ Deborah LaBelle
    Deborah A. LaBelle (P31595)
    LAW OFFICES OF DEBORAH A.
    LABELLE
    221 N. Main Street, Suite 300
    Ann Arbor, MI 48104 (734) 996-5620
    deblabelle@aol.com

    Cary S. McGehee (P42318)
    Beth M. Rivers (P33614)
    PITT McGEHEE PALMER & RIVERS, PC
    117 W. Fourth Street, Suite 200
    Royal Oak, MI 48067
    (248) 398-9800
    cmcgehee@pittlawpc.com
    brivers@pittlawpc.com

    Julie H. Hurwitz (P34720)
    GOODMAN HURWITZ & JAMES, PC
    1394 E. Jefferson Avenue
    Detroit, MI 48207
    (313) 567-6170
    jhurwitz@goodmanhurwitz.com

    *Attorneys for Plaintiffs*

By: /s/ Paul J. Napoli
    Paul J. Napoli
    NAPOLI SHKOLNIK PLLC
    270 Munoz Rivera Avenue, Suite 201
    Hato Rey, Puerto Rico 00918
    (787) 493-5088
    PNapoli@NSPRlaw.com

    *Co-Lead Counsel for the FTCA Plaintiffs*

Dated: October 21, 2024

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases,

_____/

This Motion Relates to:
ALL CASES

Civil No. 4:17-cv-11218
Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

_____

**PLAINTIFFS' AMENDED BRIEF IN SUPPORT OF MOTION TO
EXCLUDE CERTAIN OPINIONS OF JENNIFER HUFFMAN BASED ON
LACK OF QUALIFICATIONS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................iii

ISSUES PRESENTED...............................................................................iv

INTRODUCTION ....................................................................................1

1.    Dr. Huffman lacks the expertise, qualifications, and basis, upon which, to opine about the impact of the Flint Water Crisis on community mental health and community trauma ........................................................5

2.    Dr. Huffman lacks the expertise, qualifications, and basis to opine on the adult Bellwether Plaintiffs' emotional injuries as a result of the Flint Water Crisis...............................................................................10

3.    Dr. Huffman lacks the expertise to offer an opinion on the socioeconomic background of the Flint Community and the impact of the Flint Water Crisis on education and mental health or critique the opinion of Plaintiffs' expert Dr. Vonnie McLoyd............................................................15

CONCLUSION ......................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) ...................................... 12, 15

*Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993) ....................................2

*Everlight Elecs. Co. v. Nichia Corp*, 2014 WL 4707053 (E.D. Mich., Sept 22, 2014) ...............................................................................................................12

*Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255 (6th Cir. 2001) ...........................2

*In re Scrap Metal Antitrust Litigation*, 517 F.3d 517 (6th Cir. 2008) ....................3, 9

*League of Women Voters of Michigan v Benson*, 2019 WL 8106155 (6th Cir. 2019) .................................................................................................2

*Mannino v International Mfg. Co.*, 650 F.2d 846 (6th Cir. 1981) .............................5

*Memorial Hall Museum, Inc. v. Cunningham*, 455 F.Supp.3d 347 (W.D. Ky. 2020) ...............................................................................................5

*Mikee v. Aetna Life Ins.*, 423 F.2d 623 (6th Cir. 1970) .........................................9, 14

*Nelson v Tennessee Gas Pipeline Co.,* 243 F.3d 244 (6th Cir. 2001) ........................4

*Oglesby v General Motors Corp.*, 190 F.3d 244 (4th Cir. 1999) ..............................11

*Pride v BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) ...................................................4

*Shreve v Sears, Robuck & Co.*, 166 F. Supp. 2d 378 (D. Md. 2001) ........................11

*United States v. Thomas*, 74 F.3d 676 (6th Cir. 1996) ...........................................12

## <u>Statutes</u>

Fed. R. Evid Rule 702 ...................................................................................... passim

## ISSUES PRESENTED

1.   Should Jennifer L. Huffman's testimony and opinions be limited to her qualifications as a neuropsychologist based upon her neuropsychological examinations of the two child Bellwether Plaintiffs?

2.   Should the Court exclude the testimony, report and opinions of Jennifer L. Huffman as they relate to: Community Mental Health Trauma; the trauma and mental health of the six adult Bellwether Plaintiffs; and the socioeconomic background of the City of Flint and the impact of the Flint Water Crisis on education and mental health, because her opinions in these areas are outside her area of expertise and qualifications and are speculative and unreliable?

## INTRODUCTION

Defendants, "retained Dr. Jennifer L. Huffman, a licensed psychologist, to perform neuropsychological examinations ("Rule 35 DMEs") of both adult and child Bellwether plaintiffs". ECF 214 , ID 4353, Protocol for Rule 35 Defendant Medical Exams. Subsequently, on July 19, 2023 and August 1, 2023, Dr. Huffman performed neuropsychological examinations ("Exams") of only the child Bellwether Plaintiffs, but did not examine the adult Bellwether Plaintiffs.

Plaintiffs do not seek to exclude Dr. Huffman's opinions, as they relate to her neuropsychological evaluations of the Bellwether child Plaintiffs, as both her education and experience are in the area of pediatric neuropsychology. Her licensure, clinical and forensic experience is almost entirely limited to pediatric neuropsychology. (Exh. 1, Jennifer Huffman, Ph.D., CV). Dr. Huffman performed the Exams of two Bellwether children in this matter, (JM and SJ), and submitted lengthy reports for each on August 11th and 30th, 2023, as well as a rebuttal report, critiquing Plaintiffs' neuropsychologist examination and report on child Plaintiff JM. Dr. Huffman also submitted supplemental reports for SJ. In addition to Dr. Huffman's opinions, based on her exams of the child Bellwether Plaintiffs, she also opined on an array of matters for which she lacks the knowledge, experience, training, education, and factual basis upon which to render such opinions.

Plaintiffs are cognizant that *Daubert* motions are disfavored in a bench trial, where the Court can assess expert testimony and give it the appropriate weight. *League of Women Voters of Michigan v Benson*, 2019 WL 8106155 (6th Cir. 2019). For that reason although Dr. Huffman, in her reports on her Exams of JM and SJ, strays from her expertise as a pediatric neuropsychologist, into opinions on the toxicity of lead exposure for children in Flint, the medical impact of low lead exposure, the validity of bone scan technology as well as opining on the levels of lead in the public drinking water in Flint during various stages of the Flint Water Crisis, Plaintiffs are not now seeking to exclude these opinions through a *Daubert* motion to the extent that these opinions are related, if tangentially, to her examinations of JM and SJ. Rule 702 requires district courts to ensure that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 597 (1993). The rule imparts a "gatekeeping" responsibility on district courts to exclude unreliable and irrelevant expert testimony from trial. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001).

And while Dr. Huffman admittedly has no expertise in toxicology, lead exposure, epidemiology, or bone scan technology should Defendant seek to have Dr. Huffman offer these expert opinions at trial, Plaintiffs reserve the right to file a pretrial motion in limine to exclude this testimony and/or address these matters

during cross examination and leave these issues to the Court to give what weight they entitled to during trial in this matter.. (Exh. 2, Deposition Transcripts of Jennifer Huffman, TR. Vol. II, 09/10/24, p. 164 ln. 2-25 to p. 165 ln. 1-8).[1]

Plaintiffs do seek to exclude the Huffman expert opinions (wildly outside her qualifications and untethered to any examinations of Bellwether Plaintiffs) which serve to critique Plaintiffs' experts and offer opinions on community public health, epidemiology, socioeconomic implications of the Flint Water Crisis, and assessments of the trauma and injuries of the six adult Bellwether Plaintiffs that Dr. Huffman did not interview or examine.

This Circuit has long interpreted Fed. R. Evid. 702 to require the court to determine whether an expert's testimony meets three requirements: 1) the expert witness must be qualified by "knowledge, skill, experience, training or education;" 2) the testimony is relevant and "will assist the trier of act to understand the evidence or to determine a fact in issue;" and 3) the testimony is reliable in that it is based on scientific, technical or other specific knowledge." See *In re Scrap Metal Antitrust Litigation*, 517 F.3d 517, 529 (6th Cir. 2008) .

Thus, this Court, in performing its gatekeeper role, should limit expert testimony to the areas of the expert's expertise. *Sundance, Inc., v. Demonte*

---

[1] Exhibit 2 includes all deposition references for Volumes I, II, and III (rough) of Dr. Huffman's deposition which was split over three days, September 9, 2024, September 10, 2024 and October 4, 2024.

*Fabricating, Ltd.*, 550 F.3d 1356, 1363 (2008). Defendants bear the burden of demonstrating that Dr. Huffman has sufficient qualifications to offer opinion and to testify in the relevant areas. *Pride v BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000); *Nelson v Tennessee Gas Pipeline Co.,* 243 F.3d 244, 251 (6th Cir. 2001) ( the proponent of expert testimony "must establish its admissibility by a preponderance of proof." )

In addition to two neuropsychologists who examined the child Bellwether Plaintiffs, Plaintiffs retained the following three experts: 1) Dr. Daryn Reicherter, M.D.: to address the public health and community trauma as a result of the Flint Water Crisis:; 2) Dr. Leslie Lebowitz, Ph.D.: to examine and evaluate the adult Bellwether Plaintiffs for trauma and associated injuries:; and 3) Dr. Vonnie C. McLoyd, Ph.D.: to address the socioeconomics of the City of Flint and the impact of additional stressors of the Flint Water Crisis on the community's mental health and, in particular, the psychosocial effects of the crisis on school age children.: There is no dispute that these individuals are respected experts in their respective field of trauma psychiatry, behavioral health and community public health; psychological trauma; and child development with particular focus on the impact and relationship of socioeconomic, race and ethnicity.

Defendants now proffer Dr. Huffman as an expert in all of these fields and propose that she offer critiques and opinions in these areas, in addition to her

4

testimony as an expert in pediatric neuropsychology, about which she lacks the expertise and qualifications to render opinions. Plaintiffs thus move to limit Dr. Huffman's testimony to her pediatric neuropsychological examinations and opinions related to those examinations of children JM and SJ.

The question is whether Dr. Huffman has sufficient qualifications and knowledge of the subject matter, based on sufficient facts and data, such that her opinion will likely assist this Court in arriving at the truth of the issues before this court. *Memorial Hall Museum, Inc. v. Cunningham*, 455 F.Supp.3d 347, 365 (W.D. Ky. 2020); *Mannino v International Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). As addressed below, Dr. Huffman simply lacks any expertise in these areas such that her testimony and opinion will only clutter the trial without providing any assistance in reaching the truth.

**1.    Dr. Huffman lacks the expertise, qualifications, and basis, upon which, to opine about the impact of the flint water crisis on community mental health and community trauma.**

Dr. Huffman included in her report, and deposition, critiques and opinions with regard to the expert report of Dr. Daryn Reicherter, M.D., an international expert on community mental health, trauma psychiatry and behavioral health. (Exh. 3, Daryn Reicherter, M.D., CV). Dr. Reicherter is the director of the Human Rights in Trauma Mental Health Program at Stanford University School of Medicine, Medical Director of the Center for the Treatment of Survivors of Torture, and a

Professor at Stanford University, School of Medicine's Department of Psychiatry and Behavioral Sciences. He is an expert by education, training and experience in the field of trauma psychiatry and community mental health. Dr. Reicherter has created and directed multiple clinical mental health programs for vulnerable communities and has created and cultivated new clinical rotations for residency, medical school, and undergraduate education in community psychiatry for vulnerable populations. He is one of the listed experts for the United Nations' Special Investigations, and for the International Criminal Court. He is also the editor and the co-author of the United Nations' Field Guide and Reference Guide for best practices for trauma informed investigations.

Dr. Reicherter, for his report in this case, interviewed mental health experts and community leaders in the City of Flint as well as did an extensive review and evaluation of the governmental and private public health surveys, studies and literature addressing the mental health impacts of the Flint Water Crisis on the community as part of the work applying his expertise in this area and forming the basis of his opinions. (Exh. 4, Expert Report Daryn Reicherter, M.D. (without exhibits), pp. 3-4).

Rule 702 permits expert witnesses to testify only if they are qualified by knowledge, skill, experience, training or education. Dr. Huffman has never been involved with assessing public health, behavioral health or community trauma, and

has no publications, no experience, education or training in this area. (Exh. 2, Huffman Dep. TR. Vol. II, 09/10/24, p. 177 ln. 3 to p. 179, ln. 6).

Dr. Huffman does not have a medical degree and testified that, other than seeing patients in her clinical practice that presumably live in a community, she has no experience with community mental health and is not an expert in public health. (Exh. 2, Huffman Dep. TR. Vol. I, 09/9/24, p. 112, ln. 12-17; Vol. II, p. 177 ln. 3-4). She has never conducted any studies or participated in any studies nor had "any experience with assessing the health of a community." (Exh. 2, Huffman Dep. TR. Vol. I, 09/09/24, p. 113, ln. 19 to p. 114, ln. 17).

Dr. Huffman has no degrees or specific education in the area of public health or community health or behavioral health. She admits she has not reviewed any academic scholarship in the area of public or community health, has never published in this area, and has never testified about public or community health in any forensic setting. (Exh. 2, Huffman Dep. TR. Vol. I, 09/09/24, p. 116 ln. 22 to p. 122, ln. 12).

Moreover, Dr. Huffman has little or no knowledge of the methodologies involved in assessing public health or community trauma—other than opining that it could involve "knocking on doors and administering questionnaires or interview of individual ... random phone calls." *Id.* Dr. Huffman has never been involved in any such assessments and has had no conversations with community leaders or members of the Flint community. Beyond her Exams of the two Bellwether children

in this case, Dr. Huffman has not engaged in any interviews with Flint residents regarding the water crisis. *Id.*

Dr. Huffman conducted no review of the relevant literature or academic scholarship in this area (Exh. 2, Huffman Dep. TR. 09/10/24, Vol. II, pp. 178, ln. 5 to p. 179, ln. 6). Her list of references is devoid of the extensive literature in this area.[2] Even if Dr. Huffman reviewed the relevant literature she lacks the expertise to evaluate such literature involving public health or the community trauma in Flint as a result of the water crisis.[3]

The purpose of expert testimony is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). And, while this bar

---

[2] Dr. Huffman reviewed the abstract of the Epidemiology of Traumatic Event Exposure Worldwide Results from the World Mental Health Survey Consortium. (Exh. 5, Huffman List of References). She could provide no information as to whether she read or reviewed any of the references accompanying Dr. Reicherter's report with the exception of the declaration of Dr. McLoyd in this case. (Exh. 6, Reicherter List of References); (Exh. 2, Huffman Dep. TR. Vol. I, 09/09/24, p. 119, ln. 7 to p. 122, ln. 12 (Q: So when you talked about you did some literature review with regard to the community, can you cite to me anything that you reviewed? A: Not off the top of my head, no.)).

[3] While Dr. Huffman argues she has been involved in research: (Q: Have you done any work as a researcher in the last 20 years? A: We already covered this yesterday. I would refer you to my previous responses. ( Exh 2, Huffman Dep. TR. 09/10/24, Vol. II, p. 179) The only 'research' referenced in her CV was as a consultant in neuropsychology for a month twenty years ago. Dr. Huffman had no idea what the findings of the research were and did not contribute to the final research paper. (Huffman Dep TR. 09/09/24, Vol. I, p. 42 ln. 8 to p. 44, ln 3).

is generally low, the testimony must be based upon sufficient facts or data that an expert with sufficient knowledge and expertise then applies reliable principles and methods to the facts to arrive at an opinion that is a product of their expertise. *In re Scrap Metal Antitrust Litig*, 527 F.3d 517, 529 (6th Cir. 2008). An expert must offer more than an attorney could argue and present, and must have "qualifications such that her opinion would rest on substantial foundation" to assist the trier of fact in the search for the truth. *Mikee v. Aetna Life Ins.*, 423 F.2d 623, 624 (6th Cir. 1970).

Here Dr.  Huffman's opinions on community trauma and the public health impacts of the Flint Water Crisis are based on unsupported speculation and beliefs. She disagrees with Dr.  Reicherter's opinions, but has no basis upon which to support such critique or opinions. She opines that rather than community trauma the Flint residents experienced "mass hysteria", but lacks the requisite knowledge, expertise or experience to reach such a conclusion or address the impacts of the Flint Water Crisis on the Flint community.  She does not have the qualifications to render such an opinion. (Huffman Dep. TR. Vol. III (rough draft), 10/04/24, pp. 43-44).

At a certain point the wholesale lack of qualifications cannot be deferred to testimony and weighing the evidence.  Here, it amounts to wasting this Court's and the parties' time on speculation or providing comments on material without any greater expertise than counsel who reads the material. There is no weight her

testimony could be given when there is simply no basis for her to render a qualified expert opinion.

Plaintiffs move to preclude Dr. Huffman from testifying or offering any opinions regarding community behavioral and mental health or community trauma or critiques of Dr. Reicherter's opinions in this matter.

**2.    Dr. Huffman lacks the expertise, qualifications, and basis to opine on the Adult Bellwether Plaintiffs' emotional injuries as a result of the Flint Water Crisis.**

Plaintiffs retained Dr. Leslie Lebowitz, Ph.D., an expert in trauma and its emotional and psychological impacts, to examine and evaluate six adult Bellwether Plaintiffs in this matter. Dr. Lebowitz is a coinvestigator for the National Center for Posttraumatic Stress Disorders and is widely published in the methodology, study and impact of psychological trauma and its stressors. Dr. Lebowitz, in addition to her clinical work, developed and taught graduate courses in trauma in individuals and society; and has worked to develop curriculum and training for the United States Air Force Services. She is a recognized expert in psychological trauma and its impacts and has consistently been qualified to testify as an expert in these matters. (Exh. 7, Leslie Lebowitz, Ph.D., CV).

Dr. Lebowitz submitted an expert report detailing the results of evaluations of the six adult Bellwether Plaintiffs' following clinical interviews lasting 3.6 to 6.5 hours and follow-up interviews and review of common sequelae of trauma.

Despite never having met or examined any of these adult Plaintiffs, , Dr. Huffman took it upon herself to include in her report, opinions as to each of the adult Plaintiffs' trauma, emotional and psychological injuries and lack thereof, as well as a critique and disagreement with Dr. Lebowitz's opinions. (Exh 2, Huffman Dep. TR., p. 63, ln. 9-15; p. 65, ln. 12-18).

While Jennifer Huffman has a degree in psychology, a degree in the broad field of psychology does not qualify her to opine and offer opinions in all areas of psychology. *Shreve v Sears, Robuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001) ("[A]n expert who is a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering; unless he is to testify only to general engineering principles that any mechanical engineer would know, engineer must possess some special skill, knowledge or experience concerning the particular issue before the court."). *Oglesby v General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)

Similarly, Dr. Huffman's background and particular experience in neuropsychology does not give her the necessary expertise to opine and offer testimony in all areas in the field of psychology. While Dr. Huffman could testify to general psychology principals, that any psychologist would know, she must possess "some special skill, knowledge or experience" concerning the particular issue before

the Courtin order to qualify as an expert in that area. *Everlight Elecs. Co. v. Nichia Corp*, 2014 WL 4707053 (E.D. Mich., Sept 22, 2014) *9.

Just as Dr. Lebowitz would not opine on the neuropsychology evaluations of two children she did not examine, and in a field in which she does not have specialized knowledge sufficient to help inform the Court, Dr. Huffman has no basis upon which to opine on trauma or the emotional impact of the Flint Water Crisis on the six adult Bellwether Plaintiffs who she did not meet and did not evaluate.[4]

Dr. Huffman has no background in trauma or its psychological impacts. She has never published or reviewed any papers, reports or literature in this area. (Huffman Dep. TR. Vol. II, 09/10/24, p. 183, ln. 24 to p. 184, ln. 2. ("Q: Have you ever published in the area of trauma impact stressors, how to assess trauma, or identify the consequences of trauma? A: No.")). Dr. Huffman testified that she receives two journals which are limited to neuropsychology. (Exh. 2 Huffman Dep. TR. 09/09/24, Vol. I, p. 121). She has never presented any papers on trauma "at any

---

[4] Nor does Dr. Huffman have any specialized training to assist in the record review she performed of Plaintiffs' medical records which did not involve any counseling records. Her opinion that the medical records do not contain documented evidence of clinically impairing emotional distress do not require expert testimony. Expert evidence is not helpful and is improperly admitted when it addresses matters within the understanding or common knowledge of the average juror or invades the province of the jury. *United States v. Thomas*, 74 F.3d 676, 684 n. 6 (6th Cir. 1996); *Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir. 1994) ("If everyone knows [a particular fact], then we do not need an expert because the testimony will not 'assist the trier of fact to understand the evidence or to determine a fact in issue.' ")

conferences, meetings, associations events or symposiums;" and she has never testified as an expert on trauma. (Exh. 2, Huffman Dep. TR. Vol. II, 09/10/24, pp. 187-191). Lastly, Dr. Huffman did not do a literature review for the issues related to opinion on trauma and the adult Bellwether Plaintiffs.[5] (Exh. 2, Huffman Dep., Vol. II, p. 183, ln. 1-10).

When asked if she had any "specialized expertise in trauma and its impact" Dr. Huffman admitted she did not. (Huffman Dep. TR. Vol. II, 09/10/24, p. 184). She has never taught any class on trauma. She has no specialized education or experience with trauma victims other than seeing a 'handful' of people, over twenty years of clinical practice, whose presentation included a prior trauma, and working as a supervised pre-doctorate intern with an unspecified number of veterans twenty-five (25) years ago. (Exh. 2, Huffman Dep, Vol. II, p. 184, ln. 9 to p. 186, ln. 14).

Despite this lack of expertise, and without meeting or evaluating any of these individuals, Defendants intend to present Dr. Huffman's opinions regarding the harm – or lack thereof – suffered by these Adult Bellwether Plaintiffs as a result of the Flint Water Crisis and her critique of Dr. Lebowitz's opinions regarding the

---

[5] A review of the references which Dr. Huffman relied upon for her opinions in this matter reveal that Dr. Huffman lists forty references which are devoid of any of the significant literature addressing the Flint Water Crisis and trauma. In fact, references relied upon related to psychiatric trauma are two websites from the National Center for PTSD, the SAMSHA, which has a section on PTSD, and a review of the DSM-IV criteria for PTSD.

Adult's experiences of trauma, its stressors and its impacts. (Huffman Dep. TR. Vol. I, 09/09/24, pp. 63, ln. 9-15; p. 65, ln. 12-18. ("I didn't perform an evaluation of the individuals. I performed a review of the available records.").)

An expert must have "qualifications such that her opinion would rest on substantial foundation" and aid the trier of fact in the search for truth. *Mikee v Aetna Life Ins.*, 423 F.2d 623, 624 (6th Cir. 1970). Allowing an expert, such as Dr. Huffman, without any particular or necessary expertise, to testify about the trauma, emotional distress, impairment of daily living and long-term impacts of the stressors of the Flint Water Crisis, suffered by the adult Plaintiffs as a result of the Flint Water Crisis, is little more than advocacy from the stand. Defendants' counsel can argue that the medical records of the Plaintiffs don't contain evidence of psychological harm or that Plaintiffs did not seek out psychological treatment for their harm as a result of the Flint Water Crisis. Dr. Huffman's reliance only on record review, given her lack of expertise in trauma related injuries, does not provide a basis for her opinions on the harm to the adult Plaintiffs in this matter nor provide a basis for critiquing Dr. Lebowitz.

The issue is whether the expert holds qualifications, not in the abstract but whether those qualifications provide adequate foundation to answer specific questions before the court. This limitation applies within an area of general expertise as well. Neither Dr. Huffman's general degree in psychology, nor her experience and

education in pediatric neuropsychology, provide sufficient expertise to allow her to opine on the impact of trauma stressors occurring during the Flint Water Crisis, continuing after the crisis, or of the impact of the trauma of the crisis on individuals with previous vulnerabilities. *Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir 1994) ("It is like declaring an attorney an expert in the "law." A divorce lawyer is no more qualified to opine on patent law questions than anyone else, and it is a mistake for a trial judge to declare anyone to be generically an expert.")

3.    **Dr. Huffman lacks the expertise to offer an opinion on the socioeconomic background of the Flint Community and the impact of the Flint Water Crisis on education and mental health or critique the opinion of Plaintiffs' expert Dr. Vonnie McLoyd.**

Dr. McLoyd is a professor of psychology at the University of Michigan, where she develops and teaches courses on the psychology of the Black Child in America, economic issues and poverty affecting child development and research on adolescent development. Her research grants include grants from the National Institution of Health and Human Development involving the impact on youth and communities of additional stressors. She is president of the Society for Research in Child Development. She has developed, taught, conducted, and published extensively on the interrelationship of economic stress and negative life events. (Exh. 8, Vonnie C. McLoyd, Ph.D., CV).

Dr. McLoyd reviewed the literature, studies and research on the psychological, behavioral and physical health of adults and children who

experienced the Flint Water Crisis. She applied her expertise in this area to provide opinions on the impact of new stressors on top of already existing stressors involving both income and racial disparities in the Flint community.

In stark contrast to Dr. McLoyd, Dr. Huffman has neither conducted nor been involved in any research projects involving socioeconomic stressors and their impact on emotional and behavioral health, nor has she engaged in any work related to child psychology and socioeconomic and racial impacts. Dr. Huffman has never taught classes in this area, never reviewed any articles for peer publication, does not subscribe to any journals in the field, and is not a member of any academy, or organization related to these issues.  She also has never conducted any evaluations, prepared reports, or testified in this area. (Exh. 2, Huffman Dep. TR. Vol. II, 09/10/24, p. 179, ln. 11 to p. 182 to 183, ln. 4).

And while Plaintiffs are not arguing that Defendant's purported expert in this field has to have the same level of expertise as Dr. McLoyd – as evidenced by her books, recognitions, honors, fellowships, or status – Dr. Huffman must have some qualifications that would render her opinions and critiques of Plaintiffs' expert in this area, instructive to the Court.

Dr. Huffman was asked with regard to Dr. McLoyd's opinion to "review documents and comment on any opinions I had." (Huffman Dep. TR. Vol. II,

09/10/24, p. 193, ln. 20-25 to p. 194, ln. 2).[6] Dr. Huffman could identify only two articles that Dr. McLoyd analyzed as her review of the literation for her opinions and critiques of Dr. McLoyd in this case. Although stating she did other reading, Dr. Huffman could not identify anything else. (Exh. 2, Huffman Dep. TR., Vol. II, p. 202, ln. 23 to p. 203, ln. 10; p. 206, ln. 9-16). Such a cursory review of one of the studies referenced in the articles is insufficient knowledge to form the basis for her critique and opinions.

One of Dr. Huffman's central critiques was. McLoyd's and one of the other authorities' reliance on the Center for Disease Control and Prevention's, "CDC's Study, called CASPER, studies which were performed in the City of Flint in 2016 and 2018. CASPER studies and reports are initiated in communities to assess mental health needs and resources following negative life events of consequences. However, during her deposition the day prior she testified that although Dr. Huffman knew the CASPER reports were based on "surveys of mental health. I haven't read them in detail." (Exh. 2, Huffman Dep. TR. Vol. I, 09/09/24, p. 90, ln. 1-6). She was unaware that CASPER's were federal studies conducted by the CDC; unaware why the studies were conducted; and unaware of the protocol. (Exh. 2, Huffman

---

[6] When asked if she advised anyone that she did not have any expertise in the areas of social and economic research or racial disparity, Dr. Huffman stated she was never asked if she had that expertise. (Exh. 2, Huffman Dep. TR. Vol. II, 09/10/24, p. 193, ln. 24 to p. 194, ln. 2).

Dep. TR. Vol. I, 09/09/24, p. 90, ln. 7-17). Yet, the following day, in her continued deposition, Dr. Huffman critiqued the CASPER studies which were addressed by Dr. McLoyd and part of the studies Dr. McLoyd evaluated for her opinion as a reason to challenge this opinion. (Exh. 2, Huffman Dep. TR. Vol. II, 09/10/24, po. 197-201).

Dr. Huffman's lack of knowledge of the relevant studies combined with a lack of background, education, training and experience in this area render her unqualified to provide opinions or critiques that are in any way useful for the Court's understanding of these issues.

While Dr. Huffman asserted she "did a lot of reading on this," she could not name a specific article beyond review of the articles analyzed by Dr. McLoyd and their references.  None of these purported additional readings are included in her list of references.  When asked, "Q: Could you tell me what else you read? A: I just said I can't." (Huffman Dep. TR. Vol. II, 09/10/24, p. 203, ln. 7).  Dr. Huffman, who was critical of the opinions set forth in published papers analyzed and opined on by Dr. McLoyd, lacks any background in the subject matter to serve as a basis for her critique.

There are no facts or testimony to support any independent review of the literature or research that underpins Dr. McLoyd's report and opinion.  Dr. Huffman

does not have sufficient qualifications to support her testimony regarding Dr. McLoyd's work.

## CONCLUSION

Plaintiffs ask that this Court limit Dr. Huffman's report and opinion to those grounded in her expertise in neuropsychology and limited to her neuropsychological evaluations of JM and SJ, and opinions related to those exams.

Respectfully submitted,

By: *s/ Deborah LaBelle*
Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A. LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com

Cary S. McGehee (P42318)
Beth M. Rivers (P33614)
PITT McGEHEE PALMER & RIVERS, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

Julie H. Hurwitz (P34720)
GOODMAN HURWITZ & JAMES, PC
1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com

*Attorneys for Plaintiffs*

19

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

*Co-Lead Counsel for the FTCA Plaintiffs*

Dated: October 21, 2024

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on October 21, 2024.

*/s/Betsy L. Lewis*
221 N Main St., Ste 300
Ann Arbor, MI 48104
734-996-5620
betsyllewis@gmail.com