UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

| | |
|---|---|
| *In re* FTCA Flint Water Cases | Civil No. 4:17-cv-11218 (Consolidated) |
| This Motion Relates to: ALL CASES | Linda V. Parker United States District Judge |
| | Curtis Ivy, Jr. United States Magistrate Judge |

### PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY OF DEFENDANT'S EXPERT, DR. JULIE GOODMAN, RELATED TO HER COMPENSATION FOR EXPERT WITNESS SERVICES IN THIS CASE AND REQUEST FOR SANCTIONS

Plaintiffs, by their undersigned counsel, pursuant to Fed. R. Civ. P. 37(a), hereby file Plaintiffs' Motion to Compel Production Documents and Testimony of Defendant's expert, Dr. Julie Goodman, Related to Her Compensation for Expert Witness Services in this Case, request of sanctions. In support thereof Plaintiffs state as follows:

1. Defendants retained Julie Goodman, Ph.D as an expert in this case, brought by residents of the city of Flint against the United States Environmental Protection Agency (EPA) under the Federal Tort Claims Act (FTCA), 28 U.S.C. sec 1346, 2671-80, alleging that EPA was negligent in its response to the Flint Water Crisis. Dr Goodman's educational expertise is in epidemiology and toxicology and

was presented to offer opinions on " the causal association between exposure to lead and various health conditions" in general and with regard to the adult bellwether plaintiffs. Dr Goodman also reviewed the opinions of certain Plaintiffs experts, including Dr Howard Hu, M.D, M.P.H., Sc. D. and offered opinions with regard to their reports and opinions in this case

    2.  In this case, Dr. Goodman opined that none of the Plaintiffs were harmed by exposure to lead and that, despite a plethora of scientific literature and expert opinions on lead toxicity to the contrary, low-level lead exposures (BLL of under 5 ug/dL) in childhood do not cause any identifiable cognitive or behavioral effects.[1] Indeed, Dr. Goodman went so far as to opine that there is a safe level of

---

[1] US EPA. *Integrated Science Assessment for Lead.* U.S. Environmental Protection Agency. EPA/600/R-23/375, January 2024. Available at www.epa.gov/isa. Such as: (a) Schnaas L, Rothenberg SJ, Flores MF, Martinez S, Hernandez C, Osorio E, Velasco SR, Perroni E. Reduced intellectual development in children with prenatal lead exposure. Environ.Health Perspect. 2006 May;114(5):791-7. PubMed PMID: 16675439; PubMed Central PMCID:PMC1459938; (b) Chiodo LM, Covington C, Sokol RJ, Hannigan JH, Jannise J, Ager J, Greenwald.M, Delaney-Black V. Blood lead levels and specific attention effects in young children.Neurotoxicol Teratol. 2007 Sep-Oct;29(5):538-46. Epub 2007 Apr 21. PubMed PMID: 17553667;(c) Searle AK, Baghurst PA, van Hooff M, Sawyer MG, Sim MR, Gallety C, Clark LS, McFarlaneAC. Tracing the long-term legacy of childhood lead exposure: a review of three decades of theport Pirie cohort study. Neurotoxicology. 2014 Jul;43:46-56.doi:10.1016/j.neuro.2014.04.004.Epub 2014 Apr 28. PubMed PMID: 24785378.
Such as: (a) Schwartz J. Low-level lead exposure and children's IQ: a meta-analysis and search for a threshold. Environ Res. 1994 Apr;65(1):42-55. PubMed PMID: 8162884; and (b).Budtz-Jørgensen E, Bellinger D, Lanphear B, Grandjean P; International Pooled Lead Study Investigators. An international pooled analysis for obtaining a benchmark dose for environmental lead exposure in children. Risk Anal. 2013 Mar;33(3):450-61. doi: 10.1111/j.1539-6924.2012.01882.x. Epub 2012 Aug 24. PubMed PMID: 22924487. Such as: (a) Jakubowski M. Low-level environmental lead exposure and intellectual impairment
in children--the current concepts of risk assessment. Int J Occup Med Environ Health. 2011 Mar;24(1):1-7. doi: 10.2478/s13382-011-0009-z. Epub 2011 Feb 16. Review. PubMed PMID: 21468897; and (b) Carlisle JC, Dowling KC, Siegel DM, Alexeeff GV. A blood lead benchmark

lead in water, an opinion contrary to the EPA's opinion, although acknowledging it has not yet been definitely determined what that level is. US EPA. *Integrated Science Assessment for Lead.* U.S. Environmental Protection Agency. EPA/600/R-23/375, January 2024

3. Dr Goodman submitted a lengthy report in this matter and was deposed on October 9, 2024. At the deposition Defendants provided invoices for Dr Goodman's services in this case through July 2024, which totaled over $700,000.00. Plaintiffs have not yet received invoices for services through the deposition in this matter.

4. In part due to the level of billing in this case, Plaintiffs began asking a series of questions regarding Dr Goodman's source of income from other clients. Dr. Goodman testified that she employed by Gradient Corporation, an environmental consulting firm, but refused to answer even basic questions of her salary or terms of compensation. While Defendants made no objections to any of Plaintiffs questions, Dr Goodman refused to answer. During Dr. Goodman's deposition, Plaintiffs in questioning her about her compensation from Gradient, limited the questions to her compensation during her retention for Defendants in this case. Specifically, **Plaintiffs asked for (1) Dr. Goodman's salary/compensation for the years she**

---

for assessing risks from childhood lead exposure. J Environ Sci Health A Tox Hazard Subst Environ Eng. 2009 Oct;44(12):1200-8. doi: 10.1080/10934520903139829. Review. PubMed PMID: 19847706.

3

**was retained by the USA in this case, (2) her base salary and bonuses, (3) her yearly revenue goals, and (4) additional compensation received by Dr. Goodman based on a percentage of billings she generated in this case.** (Goodman Dep. pgs.64-65, Oct. 9, 2024).

5. Dr. Goodman refused to answer, claiming the information was confidential. *Id.* As noted, Defense counsel stated no objections and did not instruct Dr. Goodman not to answer the question. Instead, defense counsel requested that the portion of the transcript disclosing financial information be marked as confidential to which Plaintiffs agreed and then instructed her to answer the question. Dr. Goodman continued to refuse to answer the questions claiming that her employer, Gradient, would not permit her to provide the information as it was business confidential. (Goodman Dep, Oct. 9, 2024, pgs. 9-12). Plaintiffs' counsel offered to place the testimony under seal, and yet Dr Goodman continued to refuse to answer any of the questions surrounding her compensation. (Goodman Dep. Oct 9, 2024, pgs. 9-12; 64). Plaintiffs' counsel objected to Dr. Goodman's refusal to answer the questions and reserved her right to recall her following a Court Order compelling her to answer these questions.

6. Subsequent to Dr. Goodman's deposition, Plaintiffs' counsel attempted to resolve the dispute without the Court's intervention, by requesting the information via document production. Defense counsel refused this request.

7. In a final effort to resolve the issue, pursuant to L.R. 7.1, the parties conducted a meet and confer on November 13, 2024, but the parties were not able to reach any agreement regarding any of the information requested, necessitating this motion.

8. Pursuant to Fed. R. Civ. P 26(b)(1) and 30 (c)(2), and as recognized by defense counsel, there was no valid legal reason for Dr. Goodman's refusal to answer questions regarding her compensation in this matter. While Dr. Goodman testified that, it is Gradient's policy and practice to keep the terms of its compensation and incentive programs confidential, Dr Goodman could not explain why maintaining the information under seal would not satisfy her employers concerns.

9. The information sought by Plaintiffs is clearly relevant (although even if Defendants contended it was not relevant, such an objection is not a basis to refuse to answer) as it goes to bias and undue influence and may be used to effectively impeach the expert's opinion. In addition, the information is easily obtainable and therefore proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). See *Great Lakes Anesthesia, PLLC v State Farm Mut. Auto. Ins. Co.,* 2011 WL 4507417 (E.D. Mich. 2011), where the Court held that "expert witnesses in the business of furnishing litigation support, may have a motive to slant testimony to favor their

customers and promote the continuation of their consultation business." *Great Lakes*, 2011 WL at *15.

10. Nor is the basis for this line of questioning in this case, based solely on standard inquiry. The rather extraordinary billings for this expert combined with her controversial and extreme minority opinions regarding lead exposure and impact raised concerns for Plaintiffs. Indeed, Dr. Goodman's employer, and Dr. Goodman herself, have been criticized in the toxic chemical expert community of being willing to proffer extreme opinions for sufficient compensation. An article entitled, "Meet the rented white coats who defend toxic chemicals", that was written as part of an investigative series called "Science for Sale", by the Center for Public Integrity, detailed how experts employed at Gradient, and in particular one of its principals, Dr. Julie Goodman, offer opinions that are influenced by corporation interests and financial compensation. David Heath, *Meet the 'Rented White Coats' who Defend Toxic Chemicals'*, The Center for Public Integrity (Feb. 8, 2016). https://publicintegrity.org/environment/meet-the-rented-white-coats-who-defend-toxic-chemicals/ ("Meet the rented white coats who defend toxic chemicals, attached hereto as Exhibit 1)

11. There is simply no basis to support Dr Goodman's refusal to answer questions at her deposition, nor was any basis for the refusal proffered at the deposition. A deponent must answer a question after objection is preserved and the

6

only basis for instructing a deponent not to answer is where it is necessary "to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d) (3). Fed Rule Civ Pro. 30 (c)(2). The information sought is not protected by any recognized privilege, was not subject to any limitation imposed by this Court, and Defendant has failed to present a Motion to justify the refusal of their expert to respond.

12. Plaintiffs seek Order compelling Defendants expert to produce documentation responsive to Plaintiffs questions and present herself, without costs to Plaintiffs, for continued deposition to respond on the record to this line of inquiry, without further expense to Plaintiffs. Specifically, Dr. Goodman should be compelled to provide documentation and answer questions about her: (1) salary/compensation for the years she was retained by the USA in this case, including bonuses and incentives , (2) yearly revenue goals, and (4) additional compensation and/or benefits provided , promised or received based on a percentage and or total of billings generated in this case.

13. The parties met and conferred, and Plaintiffs sought but did not obtain concurrence in the relief sought.

                Respectfully submitted,

By: *s/ Cary S. McGehee*
     Cary S. McGehee (P42318)
     Beth M. Rivers (P33614)

<div style="margin-left: 40%;">

PITT McGEHEE PALMER & RIVERS, PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
cmcgehee@pittlawpc.com
brivers@pittlawpc.com

Julie H. Hurwitz (P34720)
GOODMAN HURWITZ & JAMES, PC
1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
*Co-Lead Counsel for the FTCA Plaintiffs*

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A. LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com
*Attorneys for Plaintiffs*

</div>

Dated: December 19, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

| | |
|---|---|
| *In re* FTCA Flint Water Cases | Civil No. 4:17-cv-11218 (Consolidated) |
| This Motion Relates to:<br>ALL CASES | Linda V. Parker<br>United States District Judge |
| | Curtis Ivy, Jr.<br>United States Magistrate Judge |

---

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY OF DEFENDANT'S EXPERT, DR. JULIE GOODMAN, RELATED TO HER COMPENSATION FOR EXPERT WITNESS SERVICES IN THIS CASE AND REQUEST FOR SANCTIONS**

# TABLE OF CONTENTS

Index of Authorities ..................................................................................... ii

I. ARGUMENT ........................................................................................ 1

    A. LEGAL STANDARD ................................................................. 1

    B. DR. GOODMAN'S COMPENSATION FOR WORK PERFORMED IN THIS CASE IS RELEVANT TO BIAS AND UNDUE INFLUENCE AND TO IMPEACH HER EXPERT OPINIONS. ................................................................................. 3

    C. THIS COURT SHOULD AWARD COSTS AND ATTORNEY FEES ............................................................................ 6

II. CONCLUSION AND REQUEST FOR RELIEF ..................................... 6

# INDEX OF AUTHORITIES

**Cases**

*Behler v. Hanlon,* 199 F.R.D. 553, 556 (D.Md. 2001)..............................................2

*Great Lakes Anesthesia, PLLC v State Farm Mut. Auto. Ins. Co.,* 2011 WL 4507417 (E.D. Mich. 2011)..............................................................................5, 1

*Nusbaum v. Enlighten Fam. Chiropractic*, 2023 WL 315719, *10 (E.D. Mich. 2023)...................................................................................................................3

*Reed v. Baxter,* 134 F.3d 351, 355-56 (6th Cir. 1998)....................................................1

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)...................................................................................................2
Fed. R. Civ. P. 26(b)(1) .................................................................................................1
Fed. R. Civ. P. 37(a)(5)(A)............................................................................................6
Fed. R. Evid. 401 ..........................................................................................................1
Rule 26(b)(1)..................................................................................................................2

I. **ARGUMENT**

   A. **LEGAL STANDARD**

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevant evidence is evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.

Pursuant to Fed. R. Civ. P 30 (c)(2): "A person may instruct a deponent not to answer **only** when necessary to preserve privilege[2], to enforce a limitation ordered by the Court, or to prevent a motion under rule 30(d0(3).

Recognizing the reality of bias associated with expert compensation, the court in *Great Lakes Anesthesia, PLLC v State Farm Mut. Auto. Ins. Co.,* 2011 WL 4507417 (E.D. Mich. 2011) determined that "expert witnesses in the business of furnishing litigation support, may have a motive to slant testimony to favor their customers and promote the continuation of their consultation business." *Great Lakes*, 2011 WL at *15.

---

[2] The elements of privilege are: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) unless the protection is waived. *Reed v. Baxter,* 134 F.3d 351, 355-56 (6th Cir. 1998). None of these circumstances apply to the questions asked of Dr. Goodman.

In *Estate of Jackson v. Billingslea*, 2019 WL 2743750, *4 (E.D. Mich. 2019), Judge Victory Roberts held: "financial information of an expert witness is squarely within the scope of discovery if its purpose is to uncover potential bias." It is for this purpose that Rule 26(a)(2) requires expert witnesses to provide "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2). Judge Roberts went on to rule that: "any information related to the expert's volume of work, number of defendants he worked for, the amount paid by those defendants, and the **percentage of income derived from his expert witness services was found within the scope of discovery**." (emphasis added) *Estate of Jackson,* 2019 WL at *4-5.

The Eastern District of Michigan has adopted the position that the "importance of credibility of witnesses in the trial of cases cannot be overstated and this is especially true with respect to expert witnesses." *Behler v. Hanlon,* 199 F.R.D. 553, 556 (D.Md. 2001). In *Burger v. Allstate Ins. Co.*, "Plaintiff sought information… from defendant's expert witnesses relating to 1099s, records of payments, and all other rewards of payments or income pertaining to medical evaluations performed by [the expert witnesses] at the request, directly or indirectly, of an insurance company or other defendant in a lawsuit." *Id.* at *2. The court determined that "this type of information bears directly on the bias of the witness and, therefore it is relevant within the meaning of Rule 26(b)(1)." *Id.* at *6. *See also,*

2

*Estate of Jackson,* 2019 WL at *4 (the court determined "the financial information of an expert witness is squarely within the scope of discovery if its purpose is to uncover potential bias"); *Nusbaum v. Enlighten Fam. Chiropractic*, 2023 WL 315719, *10 (E.D. Mich. 2023) (exclaiming, "federal courts have allowed a litigant's showing of bias to prevail against objections to broad requests for financial information as well).

### B. DR. GOODMAN'S COMPENSATION FOR WORK PERFORMED IN THIS CASE IS RELEVANT TO BIAS AND UNDUE INFLUENCE AND TO IMPEACH HER EXPERT OPINIONS.

In this matter, Plaintiffs' counsel deposed Defendant's expert witness, Dr. Julie Goodman, and asked her questions about her compensation package with her employer, Gradient Corporation, during her retention with Defendant. (Goodman Dep. pgs.64-65, Oct. 9, 2024).

There existed no basis for Dr. Goodman to refuse to answer this line of questioning, as apparently recognized by defense counsel, who did not instruct her not to answer the questions but instead requested that a confidential record be made, which plaintiff's counsel did not object to.

Information regarding Dr. Goodman's compensation with Gradient may reveal incentives for her to provide expert opinions that support Defendant's defenses in this case. For example, if Dr. Goodman's yearly revenue goals are

3

satisfied through the work that she performs for the USA in this case, she may be more influenced to give favorable expert testimony for defendant.

As set forth in Plaintiffs Motion, Dr. Goodman's reputation raises these specific concerns. . . David Heath, *Meet the 'Rented White Coats' who Defend Toxic Chemicals'*, The Center for Public Integrity (Feb. 8, 2016). https://publicintegrity.org/environment/meet-the-rented-white-coats-who-defend-toxic-chemicals/ See Exhibit 1.[3] The focus of this article is on Gradient and Dr. Goodman, whose name is referenced over 20 times in the article along with her photograph. The article severely criticizes her expert opinions in multiple toxic tort cases and how they may have been influenced by corporate interests and financial gain.

> Gradient belongs to a breed of scientific consulting firms that defends the products of its corporate clients beyond credulity, even exhaustively studied substances whose dangers are not in doubt, such as asbestos, lead and arsenic.
>
> **Gradient's scientists rarely acknowledge that a chemical poses a serious public health risk.** The Center for Public Integrity analyzed 149 scientific articles and letters published by the firm's most prolific principal scientists. Ninety-eight percent of the time, they found that

---

[3] According to the article, " Gradient was founded in 1985, about the same time as two of its biggest competitors: Environ and ChemRisk. When the company was bought in 1996 by the IT Group, a hazardous-waste-disposal company, it was reporting annual revenues of $5 million. When Gradient was sold back to its founders in 1999 it no longer reports its revenues.  Id at p. 11

4

> the substance in question was harmless at levels to which people are typically exposed.
>
> "They truly are the epitome of rented white coats," said Bruce Lanphear, a Simon Fraser University professor whose own research showing that even tiny amounts of lead could harm children has been called into question by Gradient scientists. A panel of experts convened by the Centers for Disease Control and Prevention concluded in 2012 that there is no reliable evidence for a safe level of lead. (Exhibit 1 at p. 5)

The article addresses Dr. Goodman providing expert opinions in toxic tort cases involving bisphenol A (BPA), N-propyl bromide, and asbestos where she opined that the chemical exposure at issue was harmless to humans, similar to the opinions she has offered in this case that the low levels of lead in water are not harmful to humans, that none of the plaintiffs were harmed due to lead exposure, and, contrary to the EPA's regulatory and statutory language, there *is* a safe level of lead.

For all the reasons stated above, the compelled discovery meets the test the Sixth Circuit has adopted to determine if discovery is "relevant" under Rule 26(b). The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon,* 424 F.2d at 500-01. The requested information in this Motion is "reasonably calculated" in pursuit of admissible evidence with the acknowledged legitimate purpose of impeaching an expert witness.

5

The information requested is also readily available, not burdensome to produce[4], is relevant and proportional to the needs of this important case. Therefore, Dr. Goodman should be compelled to produce the compensation and financial documentation requested and be produced for her continued deposition, without further expense to Plaintiffs, so that she can be questions on this topic.

### C. THIS COURT SHOULD AWARD COSTS AND ATTORNEY FEES

If a court grants a motion to compel, or if discovery is received after the motion is filed, then the court must award reasonable expenses and attorney's fees, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

For the reasons set forth above, there existed no legitimate reason for Dr. Goodman to refuse to answer questions about her compensation and produce financial information, and therefore, this Court should award Plaintiff's counsel reasonable expenses and attorney fees expended in preparing and filing this motion.

### II. CONCLUSION AND REQUEST FOR RELIEF

For all the reasons set forth above and, in their Motion, attached hereto, Plaintiffs request that this Court issue an order compelling the USA to produce:

---

[4] The party seeking to deny the motion to compel bears the burden of proving the requested information is overly broad or unduly burdensome. *Giunto v. Metro. Group Prop. & Cas. Ins Co.*, 2013 WL 12131306 (N.D. Ohio 2013).

1. Dr. Goodman for her continued deposition to answer questions regarding her compensation related to her retention in this matter;

2. Documentation regarding Dr. Julie Goodman's base salary during her retention in this case.

3. Documentation regarding Dr. Goodman's bonuses and the formula used to calculate her bonuses during her retention in this case;

4. Documentation regarding Dr. Goodman's yearly revenue goals with Gradient and the formula utilized to determine these goals during her retention in this case; and

5. Any additional documentation regarding Dr. Goodman's compensation or benefits associated with her expert billings during her retention in this case.

6. An award of Plaintiff's attorney fees and costs incurred in having to bring this motion to compel.

          Respectfully submitted,

      By: _s/ Cary S. McGehee_
      Cary S. McGehee (P42318)
      Beth M. Rivers (P33614)
      PITT McGEHEE PALMER &
      RIVERS, PC
      117 W. Fourth Street, Suite 200
      Royal Oak, MI 48067
      (248) 398-9800
      cmcgehee@pittlawpc.com
      brivers@pittlawpc.com

        Julie H. Hurwitz (P34720)
GOODMAN HURWITZ & JAMES,
PC 1394 E. Jefferson Avenue
Detroit, MI 48207
(313) 567-6170
jhurwitz@goodmanhurwitz.com
*Co-Lead Counsel for the FTCA Plaintiffs*

By: */s/ Paul J. Napoli*
Paul J. Napoli
NAPOLI SHKOLNIK PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
PNapoli@NSPRlaw.com

Deborah A. LaBelle (P31595)
LAW OFFICES OF DEBORAH A. LABELLE
221 N. Main Street, Suite 300
Ann Arbor, MI 48104 (734) 996-5620
deblabelle@aol.com
*Attorneys for Plaintiffs*

Dated: December 19, 2024

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above cause was served via the ECF filing system on December 19, 2024.

      Signature:   s/ Carrie Bechill
                        117 W. Fourth Street, Suite 200
                        Royal Oak, MI 48067
                        (248) 398-9800
                        cbechill@pittlawpc.com