UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FTCA Flint Water Cases,

_____/

Case No. 17-cv-11218
(Consolidated)

This Order Relates to:

*All Cases*

Honorable Linda V. Parker

_____/

## OPINION AND ORDER DENYING THE UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION PURSUANT TO THE FEDERAL TORT CLAIMS ACT'S DISCRETIONARY FUNCTION EXCEPTION

Earlier in this litigation, the United States of America (hereafter "Government") filed a motion to dismiss, arguing that the Federal Tort Claim Act's discretionary function exception deprived the Court of subject matter jurisdiction.  On April 18, 2019, this Court denied the motion.  *See Burgess v. United States*, 375 F. Supp. 3d 796 (E.D. Mich. 2019).  Then, on September 27, 2019, the Court denied the Government's subsequent motion for interlocutory appeal.  *Id.*, Nos. 17-11218, 18-10243, 2019 WL 4734686 (E.D. Mich. Sept. 27, 2019).

In its decision denying interlocutory appeal, the Court noted the fact-intensive nature of the discretionary-function exception inquiry, and shared its

belief that discovery could reveal additional facts relevant to whether the

discretionary function exception applies to Plaintiffs' claims.  Several years later,

with the factual record now further developed, the Government has filed a second

motion to dismiss for lack of subject matter jurisdiction based on the exception.

The motion has been fully briefed.  Having reviewed the parties' filings, the Court

concludes that the expanded record does not warrant a different decision with

respect to the applicability of the discretionary function exception to the claims in

this case.  Therefore, the Court is denying the Government's motion.

### Standard of Review

The Government is asserting a factual challenge to the existence of subject

matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  In that

scenario, the court must "weigh the conflicting evidence to arrive at the factual

predicate that subject-matter does or does not exist." *Wayside Church v. Van*

*Buren Cnty.*, 847 F.3d 812, 817 (6th Cir. 2017) (quoting *Gentek Bldg. Prods., Inc.*

*v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2008)).  "[N]o presumptive

truthfulness applies to the [plaintiff's] factual allegations" and the "court has wide

discretion to allow affidavits, documents and even a limited evidentiary hearing to

resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*,

922 F.2d 320, 325 (6th Cir. 1990).

## Factual Background

The Court adopts the facts set forth in its previous decision and will not restate them here.  The parties' current filings do not offer significantly more information to add.

In its filings, the Government presents evidence supporting its assertion that, in the period from June 24 to July 20, 2015, there was debate within the Environmental Protection Agency ("EPA") as to whether Flint's failure to implement corrosion control when switching to the Flint River violated the Safe Drinking Water Act ("SDWA").  (ECF No. 262 at PageID. 5015.)  There is conflicting evidence on this issue, however.  The record also supports a finding that, at least as early as April 2015, the EPA had concluded that the law required corrosion control when Flint changed its water source to the Flint River and that the State of Michigan and the City of Flint were in violation of the SDWA and the Lead and Copper Rule.  (*See, e.g.*, ECF No. 53-2 at PageID. 1921-22; ECF No. 53-3 at PageID. 1925; *see also* ECF No. 275-11; ECF No. 274-15.)  Where the merits of the case intertwine with the jurisdictional issues, which the Court finds to be the case here, the evidence and any inferences that may be drawn from the facts must be viewed in the light most favorable to Plaintiffs.  *See Gentek Bldg. Prods.*, 491 F.3d at 330 (treating any disputed jurisdictional issues of fact under a standard similar to Federal Rule of Civil Procedure 56); *see also Skousen v. Brighton High*

3

*Sch.*, 305 F.3d 520, 526 (6th Cir. 2002) (citing *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (stating the standard of review

under Rule 56).

The Government also offers deposition testimony to show the internal

discussions and considerations of EPA officials when deciding how to respond to

the Flint Water Crisis.  For example, it points to Region 5 Administrator Susan

Hedman's testimony regarding her considerations when crafting EPA's July 10,

2015 press release.  (ECF No. 262 at PageID. 5016-17.)  The Government further

points to the testimony of Hedman and other officials as to why EPA did not act

more quickly in issuing an enforcement order.  (*Id.* at PageID. 5020-22.)

## Applicable Law & Analysis

## The Discretionary Function Exception - Generally

The discretionary function exception excludes from the United States'

waiver of governmental immunity under the FTCA:

> (a) Any claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or
> regulation, whether or not such statute or regulation be valid, or based
> upon the exercise or performance or the failure to exercise or perform
> a discretionary function or duty on the part of a federal agency or an
> employee of the Government, whether or not the discretion involved
> be abused.

28 U.S.C. § 2680(a).  Where a claim falls within the exception, federal courts lack

subject matter jurisdiction, and the claim must be dismissed.  *Kohl v. United States*,

699 F.3d 935, 940 (6th Cir. 2012) (citing *Feyers v. United States*, 749 F.2d 1222,

1225 (6th Cir. 1984)).  The Government bears the burden of demonstrating that the

exception applies.  *Carlyle v. United States Dep't of the Army*, 674 F.2d 554, 556

(6th Cir. 1982).

      The Supreme Court has set forth a two-step test for deciding whether the

exception applies.  *Kohl*, 69 F.3d at 940 (citing *United States v. Gaubert*, 499 U.S.

315, 322-23 (1991); *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997)).

A court must first ask "whether the challenged act or omission violated a

mandatory regulation or policy that allowed no judgment or choice."  *Id.* (quoting

*Rosebush*, 119 F.3d at 441) (citing *Gaubert*, 499 U.S. at 322-23).  Where a

mandatory regulation or policy is violated, the exception is inapplicable "because

'there was no element of judgment or choice,' and thus 'the employee has no

rightful option but to adhere to the directive.'"  *Id.* (quoting *Berkovitz v. United

States*, 486 U.S. 531, 536 (1988)).

      "If, on the other hand, there was room for judgment or choice in the decision

made, then the challenged conduct was discretionary."  *Kohl*, 699 F.3d at 940

(citing *Rosebush*, 119 F.3d at 331).  In that instance, a court proceeds to the second

step and must determine "whether the conduct is 'of the kind that the discretionary

function exception was designed to shield.'"  *Rosebush*, 119 F.3d at 441 (quoting

*Gaubert*, 499 U.S. at 322-23).  Through the discretionary function exception,

Congress "wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).  Thus, the exception is applicable only to an action that "involves choice or judgment that is 'susceptible to policy analysis[.]'" *Kohl*, 699 F 3d. at 940 (quoting *Gaubert*, 499 U.S. at 325); *see also Berkovitz*, 486 U.S. at 537 (providing that the exception "protects only governmental actions and decisions based on considerations of public policy").

"[C]hoices made by regulatory actors are *presumptively* based on considerations of policy." *Myers v. United States*, 17 F.3d 890, 896 (6th Cir. 1994) (citing *Gaubert*, 499 U.S. at 324, 25)  While this presumption is "strong," it may be rebutted.  *Id*. at 896.  Further, "the inquiry must focus on the objective evaluation of the discretion conferred rather than a review of the actor's subjective method of choosing a course of action."  *Id*. (citing *Gaubert*, 499 U.S. at 325).  As the Supreme Court explained in *Gaubert*, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation but on the nature of the actions taken and on whether they are susceptible to policy analysis."  499 U.S. at 325.

**The Conduct at Issue**

The "crucial first step" in deciding whether the discretionary function exception applies is "determin[ing] exactly what conduct is at issue." *Rosebush*, 119 F.3d at 441 (citation omitted). Plaintiffs claim the Government failed to take mandatory actions under Sections 1414 and 1431 of the SDWA in response to the Flint Water Crisis. Specifically, Plaintiffs claim the EPA failed to timely investigate, provide technical assistance, obtain compliance, or commence a civil action. Plaintiffs further claim the Government was negligent when responding to the complaints it received from Flint residents, misleading them regarding the safety of the water and the extent to which the Michigan Department of Environmental Quality ("MDEQ") and the City were handling the crisis to ensure the water met health standards.[1]

**Claims Based on the Failure to Act**

**Section 1414**

Section 1414 of the SDWA sets forth actions the EPA must take when a public water system is not in compliance with federal standards. As relevant to a State with primary enforcement authority, like Michigan, the statute reads in relevant part:

---

[1] Although the Court describes the conduct by referencing Plaintiffs' claims of negligence, it understands that "[n]egligence . . . is not relevant to [its] inquiry at this point." *Kohl*, 699 F.3d at 941 (quoting *Rosebush*, 119 F.3d at 442).

(a) Notice to State and public water system; issuance of administrative order; civil action

(1)(A) Whenever the Administrator finds during a period during which a State has primary enforcement responsibility for public water systems (within the meaning of section 300g-2(a) of this title) that any public water system--

(i) for which a variance under section 300g-4 or an exemption under section 300g-5 of this title is not in effect, does not comply with any applicable requirement, . . .

…

he shall so notify the State and such public water system and provide such advice and technical assistance to such State and public water system as may be appropriate to bring the system into compliance with the requirement by the earliest feasible time.

(B) If, beyond the thirtieth day after the Administrator's notification under subparagraph (A), the State has not commenced appropriate enforcement action, the Administrator shall issue an order under subsection (g) requiring the public water system to comply with such applicable requirement or the Administrator shall commence a civil action under subsection (b).

42 U.S.C. § 300g-3.  Relying primarily on *Myers v. United States*, 17 F.3d 890, 895-96 (6th Cir. 1994), this Court previously concluded that this provision confers discretion on the EPA.  *See Burgess*, 375 F. Supp. 3d at 812-13.  However, the Court is persuaded by the Honorable Judith E. Levy's subsequent analysis in a related Flint Water case that it, in fact, does not.  *In re Flint Water Cases*, 482 F. Supp. 3d 601, 628-32 (E.D. Mich. 2020).

8

As Judge Levy reasoned, the discretion in Section 1414 pertains to conduct preceding the actions and inactions underlying Plaintiffs' claims. *Id.* at 631. This distinguishes the present matter from *Myers*. Like the Mine Safety and Health Act provision in *Myers*, Section 1414 contains an " 'if/then' logical structure." However, the plaintiff's claim in *Myers* focused on the "if" element—that is, did the predicate condition exist. *See Myers*, 17 F.3d at 896-97 ("Plaintiffs do not contend, for instance, that MSHA inspectors actually found safety violations in the Grundy mine but then failed to take the required action. Rather, plaintiffs contend that the MSHA inspectors *should have found*, but *failed to find*, the existence of certain safety violations and, if they had, the deaths of these miners would have been prevented."). Here, in comparison, Plaintiffs' claim is not directed at the "if" but the "then." In other words, Plaintiffs are not focused on the EPA's assessment as to Flint's and MDEQ's noncompliance with the SDWA, but EPA's failure to carry out the statute's mandatory choices in the face of such noncompliance. *See Collins v. United States*, 783 F.2d 1225, 1230-31 (5th Cir. 1986) (finding the discretionary function exception inapplicable to claims arising when government inspectors failed to follow the statute's mandated action after determining that the predicate condition had been met).

But even if the Court adhered to its previous assessment of the discretionary nature of Section 1414, it still would find the exception inapplicable for the reasons

stated in its earlier decision.  *See Burgess*, 375 F. Supp. 3d at 814-15.  Congress

already balanced the "social, economic, [and] political policy" considerations when

it mandated EPA action in response to a State's failure to timely reach compliance.

As the Court previously stated:

> Congress sought to set national standards for compliance "to assure
> that water supply systems serving the public meet minimum national
> standards for protection of public health" and to empower the federal
> government to intervene if States fail in their primary responsibilities.
> [H.R. 93-1185, 1974 U.S.C.C.A.N. 6454,] 6454-56.  Federalism and
> the efficient use of federal and state resources were policy
> considerations that factored into devising the regulatory scheme and
> establishing conditions for the federal government's intervention.
> Nevertheless, Congress expressly directed the EPA to intervene under
> specified conditions.  In other words, having weighed varying policy
> interests, Congress decided when federal intervention is necessary.

*Burgess*, 375 F. Supp. 3d at 815.  Congress did not authorize the EPA to reweigh

those policy considerations and decide whether or not to follow the mandated

choices in Section 1414.  *See also In re Flint Water Cases*, 482 F. Supp. 3d at 632

("Once Congress, having balanced economic, social, and political policy

considerations, adopts safety standards in the form of specific and mandatory

regulations or policy, employees do not have discretion to violate these

standards.").

Moreover, as this Court also previously reasoned, the Flint Water Crisis may

present a scenario "where decisions by government actors, even if discretionary,

'may pass a threshold of objective reasonableness such that no reasonable observer

would see them as susceptible to policy analysis.'" *Burgess*, 375 F. Supp. 3d at

816 (quoting *Hajdusek v. United States*, 895 F.3d 146, 152 (1st Cir. 2018)).  As the

Sixth Circuit has expressed, there may be instances in which no legitimate

government purpose could "justify the yearlong contamination of an entire

community."[2]  *Guertin v. Michigan*, 912 F.3d 907, 926 (2019).  As this Court

previously expressed, it "cannot conceive of a public policy consideration that

could be legitimately balanced against the need to warn and protect an entire

community from involuntary and continued poisoning."  *Burgess*, 375 F. Supp. 3d

at 816.

In short, the additional facts set forth in the Government's renewed motion,

which suggest that the EPA's actions and inaction in response to the Flint Water

Crisis were the result of policy considerations, do not lead the Court to conclude

that the discretionary function exception is applicable to Plaintiffs' claims.  As

discussed, Congress resolved these policy considerations when devising the

regulatory scheme and establishing conditions for the federal government's

---

[2] Admittedly, the Sixth Circuit made this statement in the context of a claim
alleging the constitutional violation of the plaintiffs' bodily integrity—a claim
which the Government argues is not viable against it under the circumstances
presented here.  (*See* ECF No. 276 at PageID. 6805.)  Yet, in this Court's view, the
Sixth Circuit's sentiment was not focused on the claim at issue but the type and
degree of harm resulting from the government's decisions.  *Guertin*, another action
arising from the Flint Water Crisis, involved the same contamination of an entire
community which is at issue here.

intervention.  The decisions Congress left to the EPA were only those informed by

objective scientific standards, scientific knowledge, and the professional judgment

of experts in the field.  For the reasons above and those articulated in the Court's

previous decision, which are incorporated herein, the Court concludes that the

exception is not applicable to Plaintiffs' claim arising under Section 1414.

## Section 1431

As discussed in the Court's previous decision, Section 1431 "grants the EPA

a significant 'element of judgment or choice' in its response" to information that a

contaminant is present in or likely to enter a public water system.[3]  *See Burgess*,

---

[3] The statute reads, in relevant part:

> Notwithstanding any other provision of this subchapter, the
> Administrator, upon receipt of information that a contaminant which
> is present in or is likely to enter a public water system or an
> underground source of drinking water, or that there is a threatened or
> potential terrorist attack (or other intentional act designed to disrupt
> the provision of safe drinking water or to impact adversely the safety
> of drinking water supplied to communities and individuals), which
> may present an imminent and substantial endangerment to the health
> of persons, and that appropriate State and local authorities have not
> acted to protect the health of such persons, may take such actions as
> he may deem necessary in order to protect the health of such persons.
> To the extent he determines it to be practicable in light of such
> imminent endangerment, he shall consult with the State and local
> authorities in order to confirm the correctness of the information on
> which action proposed to be taken under this subsection is based and
> to ascertain the action which such authorities are or will be taking.
> The action which the Administrator may take may include (but shall
> not be limited to) (1) issuing such orders as may be necessary to
> protect the health of persons who are or may be users of such system

375 F. Supp. 3d at 813.  The Court leaves that conclusion undisturbed for the reasons discussed in that decision.  *See id.* at 813-14.  Nevertheless, as the Court also concluded previously, and as discussed above with respect to Section 1414, the discretion conferred on the EPA is not the kind "that can be said to be grounded in the policy of the regulatory regime[.]"  *Gaubert*, 499 U.S. at 325.  The EPA's decisions in response to the Flint Water Crisis involved professional and scientific judgments, not multiple and competing policy considerations.  *See Whisnant v. United States*, 400 F.3d 1177, 1181-83 (9th Cir. 2005) (finding that "matters of scientific and professional judgment—particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy"); *see also Anestis v. United States*, 749 F.3d 520, 529 (6th Cir. 2014) (reflecting that scientific and professional judgments, such as the emergency state of a patient, are not the type of decisions susceptible to policy analysis).

---

(including travelers), including orders requiring the provision of alternative water supplies by persons who caused or contributed to the endangerment, and (2) commencing a civil action for appropriate relief, including a restraining order or permanent or temporary injunction.

42 U.S.C. § 300i.

**Claims Based on Action**

Plaintiffs do not identify a statute or regulation imposing a duty on the EPA

to issue warnings.  The SDWA regulations in fact impose this requirement on

public water systems.  *See* 42 C.F.R. § 141.85.  Where no statute or regulation

mandates an agency's response, the Sixth Circuit has concluded that the agency

has discretion to decide whether to formulate one.  *See Lockett v. United States*,

938 F.2d 630, 637 (6th Cir. 1991).

Nevertheless, once the EPA decided to respond to citizen complaints, the

implementation of that decision did not involve a permissible exercise of policy

judgment.  *See Burgess*, 375 F. Supp. 3d at 816-17 (collecting cases).  While the

EPA may have had the discretion in deciding when and how to respond to citizen

complaints about Flint's water, once it decided to respond, it did not have the

discretion to provide dangerously misleading or inaccurate information which

"downplayed the urgency of the situation in Flint and may have induced

detrimental reliance on the EPA." *In re Flint Water Cases*, 482 F. Supp. 3d at 637.

As mentioned earlier, there are some decisions that "may pass a threshold of

objective unreasonableness such that no reasonable observer would see them as

susceptible to policy analysis." *Hajdusek*, 895 F.3d at 152.

Thus, the Court finds the discretionary function exception inapplicable to

Plaintiffs' claims arising out of the EPA's response to citizen complaints.

**Conclusion**

In summary, even after the record has been further developed, the Court
continues to find the discretionary function exception inapplicable to the EPA's
actions and inactions in response to the Flint Water Crisis, which are the basis of
Plaintiffs' claims in this lawsuit.

Accordingly,

**IT IS ORDERED** that the Government's motion to dismiss for lack of
subject matter jurisdiction (ECF No. 262) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 28, 2025