UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In re* FTCA Flint Water Cases | Civil No. 4:17-cv-11218 (Consolidated) |
| This Motion Relates to: | Linda V. Parker<br>United States District Judge |
| THE FIRST BELLWETHER PROCEEDINGS | Curtis Ivy, Jr.<br>United States Magistrate Judge |

**United States of America's Reply in Support of Its
Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to the
Federal Tort Claims Act's Analogous Private Liability Requirement and
Misrepresentation Exception**

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Mays v. City of Flint, Mich.*, 871 F.3d 437 (6th Cir. 2017)

*Myers v. United States*, 17 F.3d 890 (6th Cir. 1994)

*Najbar v. United States*, 723 F. Supp. 2d 1132 (D. Minn. 2010)

*Ohio Pub. Int. Rsch. Grp., Inc. v. Whitman*, 386 F.3d 792 (6th Cir. 2004)

*Patentas v. United States*, 687 F.2d 707 (3d Cir. 1982)

*Renner v. Ford Motor Co.*, 516 F. App'x 498 (6th Cir. 2013)

*Sagan v. United States*, 342 F.3d 493 (6th Cir. 2003)

*Turner v. United States*, 736 F.3d 274 (4th Cir. 2013)

*United States v. Olson*, 546 U.S. 43 (2005)

*Wilburn v. United States*, 616 F. App'x 848 (6th Cir. 2015)

## TABLE OF CONTENTS

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................... i

ARGUMENT ........................................................................................................1

I.   The Bellwethers Have Not Established Section 324A Liability. .........................1

   A. The Bellwethers' Claims Do Not Satisfy Section 324A(a)-(c). .......................1

      1.  The Record Does Not Show Detrimental and Justifiable Reliance Upon EPA's Negligently Performed Undertaking. ....................................................1

      2.  EPA Did Not Supplant MDEQ or the City from An Undertaking that EPA Negligently Performed. ...........................................................................5

      3.  EPA Did Not Increase the Bellwethers' Risk of Physical Harm. ..............8

   B. Some of the Alleged Undertakings Defy the Caselaw and the Record.........11

   C. The Bellwethers Fail to Present Evidence that EPA Negligently Performed Alleged Undertakings. ...............................................................................14

II.  If EPA's Communications Were to Give Rise to the Bellwethers' Claims, then the Misrepresentation Exception Would Bar Such Claims. ...............................14

CONCLUSION..................................................................................................15

As detailed below and in the United States' opening motion (ECF No. 291, Mot.), the Court should dismiss the Bellwether Plaintiffs' (Bellwethers) claims for lack of subject-matter jurisdiction, including because they have not established one of three additional requirements for Good Samaritan liability under Section 324A(a)-(c) and their reliance on unsubstantiated factual allegations divorced from the robust factual record developed over the last nearly six years does not satisfy their burden.

## ARGUMENT

I. **The Bellwethers Have Not Established Section 324A Liability.**

A. **The Bellwethers' Claims Do Not Satisfy Section 324A(a)-(c).**

"Negligence alone . . . is not sufficient under Section 324A because [the Bellwethers] must also demonstrate that one of the three alternative bases for the imposition of a duty also existed." *Myers v. United States*, 17 F.3d 890, 902 (6th Cir. 1994); *accord Burgess v. United States*, 375 F. Supp. 3d 796, 818 (E.D. Mich. 2019) ("2019 Op."). They have not done so and this alone is fatal to their claims. *Myers*, 17 F.3d at 902-04. The United States begins with Section 324A(c)—the sole basis that the Court previously addressed. Mot. at PageID.6936.

1. **The Record Does Not Show Detrimental and Justifiable Reliance Upon EPA's Negligently Performed Undertaking.**

The Bellwethers tacitly concede that they did not communicate with EPA regarding water complaints, which was one of the Court's two prior bases for finding that Plaintiffs' allegations satisfied Section 324A(c). 2019 Op. at 818; ECF No. 327

1

(Opp'n) at PageID.10976 (Bellwethers testified they did not communicate with EPA). In its opening motion, the United States identified specific portions of the Bellwethers' depositions showing that none of them communicated with EPA about water complaints and none forewent "other remedies or precautions" in reliance on EPA communications. Mot. at PageID.6937. The Bellwethers point to no record evidence to the contrary. *See* Opp'n at PageID.10976-78. Therefore, under a Rule 56 standard,[1] the Bellwethers have failed to carry their burden on this reliance theory. Rule 56(c) & (e); *Travelers Cas. & Sur. Co. of Am. v. J.O.A. Const. Co.*, 479 F. App'x 684, 692 (6th Cir. 2012) ("By failing to dispute Travelers' showing, Appellants failed to carry their burden, and the district court properly granted summary judgment").

The Bellwethers then pivot to alleged reliance by MDEQ and the City, Opp'n at PageID.10978, but offer no evidence of Section 324A(c)'s touchstone—a "physical manifestation" of these entities "forgo[ing] other remedies or precautions against the risk" in reliance on an undertaking EPA negligently performed. *Myers*, 17 F.3d at 903. The Bellwethers cite to one of their prior complaints (Opp'n at PageID.10979), but, under Rule 56, they "may not rest upon the mere allegations or denials of [their] pleadings," *Dudley v. Eden*, 260 F.3d 722, 725 (6th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

---

[1] Mot. at PageID.6920-21; ECF No. 326 at 3-4 (applying Rule 56 to the United States' Rule 12(h)(3) motion under the FTCA's discretionary function exception).

2

Likewise, the Bellwethers' unsupported allegations that MDEQ and the City "relied on" EPA are both: (1) insufficient under Rule 56;[2] and (2) even if true, would still fall short of Section 324A(c)'s touchstone. *Myers*, 17 F.3d at 903. Across the numerous Flint Water Cases, over 40 State of Michigan or City employees have been deposed, resulting in over 19,000 transcript pages. Given this robust discovery and in the face of the United States' opening motion (Mot. at PageID.6938), the Bellwethers' failure to cite any admissible evidence of these entities forgoing precautions in reliance on a negligently performed EPA undertaking speaks volumes.

At best, the Bellwethers argue, in footnote 23, that "EPA condoned a delay of corrosion control" while it sought a legal memo, Opp'n at PageID.10978 n.23, but the record does not show that MDEQ or the City in fact waited to implement corrosion control while EPA prepared the memo.[3] Two of the records the Bellwethers cite in this footnote pertain only to EPA's actions, and thus are irrelevant to whether MDEQ or the City detrimentally relied on the forthcoming memo. ECF Nos. 327-

---

[2] Rule 56(c) & (e); *Peeples v. Wayne State Univ.*, No. CV 18-14049, 2022 WL 4292311, at *2 & n.1 (E.D. Mich. Sept. 16, 2022) (Parker, J.) (Under Rule 56, "[t]he parties are required to designate with specificity the portions of the record such that the court can 'readily identify the facts upon which the ... party relies;'" "Plaintiff's counsel failed to comply with this requirement and Rule 56(c)(1). Most of the factual assertions in the response brief are not followed by any citation to the record.") (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989))).

[3] *E.g.*, Ex. AM at 23, 308:4-21 (Liane Shekter-Smith (Chief of MDEQ's Drinking Water Branch) testifying that MDEQ instructed the City to implement corrosion control in response to the results of the second round of LCR sampling and not from the subsequent call with EPA in which the request for the legal memo originated).

3

20 & 21 (Exs. 19-20). The third (the State's Task Force report) contains one unsubstantiated sentence on this issue—*i.e.*, "MDEQ forestalled imposing the requirement of CCT pending issuance of a legal opinion." ECF No. 327-19 (Ex. 18) at PageID.11290. But "[a] court cannot rely on unsworn inadmissible hearsay when ruling on a summary judgment motion." *Hoover v. Walsh*, 682 F.3d 481, 491 n.34 (6th Cir. 2012) (citation omitted).[4] Aside from being inadmissible, the Task Force's claim also contradicts the record that MDEQ instructed, and the City agreed, to implement corrosion control months before EPA issued the memo.[5]

Without evidence that the Bellwethers, MDEQ, or the City detrimentally relied on a specific undertaking EPA negligently performed, the Bellwethers contend that SDWA itself engendered their reliance on EPA. Opp'n at PageID.10979-80. The Court should reject this theory for three reasons. First, it is indistinguishable from a claim for compensatory damages because EPA violated SDWA—something Congress chose not to provide when enacting SDWA, and therefore the Bellwethers

---

[4] "[A]t summary judgment, hearsay 'must be disregarded.'" *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 447 (6th Cir. 2021)) (citation omitted). That the Task Force's report contains this statement does not render it admissible, as "factual findings, which are based on inadmissible hearsay, are not admissible under Rule 803(8)(C) because the underlying information is untrustworthy." *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994).

[5] 2019 Op. at 807-08 & n.4 ("On August 17, 2015, MDEQ instructed Flint to implement corrosion control as soon as possible . . . . On September 3, 2015, Flint's Mayor announced that the City would implement corrosion control treatment . . . ." Later, "on November 3, 2015," EPA issued the memo); Ex. AM at 308:4-21.

4

cannot accomplish through a FTCA Good Samaritan claim. Mot. at PageID.6923 (quoting *Myers*, 17 F.3d at 905); *Mays v. City of Flint, Mich.*, 871 F.3d 437, 450 (6th Cir. 2017) ("there is no private right of action for damages arising from a violation of the SDWA"). Second, the Bellwethers provide no evidence of their physical manifestation of foregoing precautions against the risk of contaminated water because of EPA's SDWA duties. *Myers*, 17 F.3d at 903; *Wilburn v. United States*, 616 F. App'x 848, 854–55 (6th Cir. 2015) (at summary judgment, plaintiff must present evidence of her reliance on Army action and not just "that the Army did not follow its own regulations").[6] Indeed, some were unaware of EPA or its role in Flint. Mot. at PageID.6918-19, 6937. Third, as in *Myers*, any "such reliance—even if it had occurred—would have been manifestly unreasonable and unjustified" because SDWA placed "primary responsibility" for operational and enforcement matters on the City and MDEQ, respectively. *Myers*, 17 F.3d at 904; Mot. at PageID.6940-41.

### 2. EPA Did Not Supplant MDEQ or the City from An Undertaking that EPA Negligently Performed.

The Bellwethers do not contend—nor could they—that EPA supplanted MDEQ or the City from all their SDWA operational and enforcement duties in Flint prior to EPA issuing the SDWA Section 1431 Order. *Compare* Mot. at PageID.6939-40, *with* Opp'n at PageID.10974-75. The Bellwethers' efforts to argue that EPA still

---

[6] Mr. Vance's reported lost trust in EPA, Opp'n at PageID.10977, is not evidence of a physical manifestation of justifiable, detrimental reliance, Mot. at PageID.6936.

5

supplanted MDEQ or the City—and therefore Section 324A(b) liability has been met—as to certain, narrower duties does not withstand scrutiny for four reasons.

First, although the Bellwethers appear to argue that Miguel Del Toral's sampling of Mrs. Walters' and her two neighbors' homes imposes Section 324A liability on EPA, Opp'n at PageID.10974,[7] they have presented no evidence that Mr. Del Toral negligently performed this sampling, which is a Section 324A element. Mot. at PageID.6935. The Bellwethers cite their experts' opinions that Lead and Copper Rule (LCR) sampling in Flint was negligently performed (Opp'n at PageID.10967-68), but the LCR sampling was performed by the City,[8] and therefore such opinions are irrelevant to whether Mr. Del Toral's separate sampling was negligent. Indeed, none of the pages the Bellwethers cite mention Mr. Del Toral's sampling. ECF No. 327-3 at PageID.11010; ECF No. 327-15 at PageID.11223.

Second, the Bellwethers' citation to EPA monitoring lead results, observing the lead service line replacement at Mrs. Walters' residence,[9] and providing other, unspecified technical assistance does not impose Section 324A(b) liability on EPA. Opp'n at PageID.10974. That is because, at most, these tasks assisted or

---

[7] The Bellwethers do not specify (or cite to the factual record regarding) the EPA sampling to which they refer, but it appears to be Mr. Del Toral's sampling.
[8] *E.g.*, Ex. AP at 287-90, 293 (The City conducted the LCR sampling).
[9] The City replaced Mrs. Walters' service line and Mr. Del Toral observed. Ex. AQ at 437-38; Ex. AP at 810-811. As with his sampling, the Bellwethers provide no evidence that Mr. Del Toral negligently observed the line replacement.

6

supplemented—but did not supplant—the City or MDEQ in performing their duties. Mot. at PageID.6939-42 (collecting cases). The Bellwethers cite no evidence that this assistance supplanted the City or MDEQ. Indeed, the record shows it did not.[10]

Third, although the Bellwethers argue in footnote 20 that EPA's January 2016 SDWA Section 1431 Order supplanted MDEQ and the City (Opp'n at PageID.10975), their claims are not based upon EPA's conduct under this Order. The operative complaints all pertain to EPA's conduct between April 2014 (when Flint switched water sources) and until (but not after) EPA issued the Order. *Burgess*, ECF No. 73; *Thomas*, ECF No. 1 (same). The Bellwethers ratified this scope in their 2022 responses to contention interrogatories regarding what undertakings they contend EPA negligently performed. Ex. AR.[11] Years later, the Bellwethers cannot now change theories and assert that their claims are based on EPA's conduct under the Order. *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent [plaintiff] seeks to expand its claims to assert new theories, it may

---

[10] Mot. at PageID.6941; Ex. AM at 318:1-19:16 (MDEQ declined EPA's recommendation to remove pre-flushing from the LCR sampling guidelines); Ex. AN at 16:21-20:12, 116:18-118:23, 154:12-155:19 (MDEQ declined Mr. Del Toral's April 2015 recommendation to implement corrosion control); Ex. AO at 229:6-230:23 & 349:12-24 (MDEQ declined EPA's September 2015 recommendation to instruct the City to issue public notices).
[11] *Bledsoe v. FCA US LLC*, No. 4:16-CV-14024, 2021 WL 1720833, at *5 (E.D. Mich. Apr. 30, 2021) ("'contention interrogatories,' serve legitimate and useful purposes, 'such as . . . narrowing the focus and extent of discovery, and clarifying the issues for trial.'") (citation omitted).

7

not do so in response to summary judgment or on appeal."); *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013) (in response to a summary judgment motion, plaintiff cannot claim acts from a different time period are the basis for his claims). Even if the Bellwethers could, they still would need to present evidence that EPA negligently performed such undertakings. *Myers*, 17 F.3d at 902. They have not.

Finally, the Bellwethers argue that EPA's *potential* to supplant MDEQ or the City through withdrawing MDEQ's primacy or taking other enforcement action satisfies Section 324A(b),[12] but they cite to no caselaw for this proposition. Opp'n at PageID10974-75. To the contrary, the Bellwethers' position defies Section 324A(b)'s plain language (and the caselaw interpreting it) that require the alleged tortfeasor to in fact supplant the one with the original duty. Mot. at PageID.6939-41.

### 3. EPA Did Not Increase the Bellwethers' Risk of Physical Harm.

The Bellwethers do not dispute that EPA was uninvolved in MDEQ's and the City's decision to switch the City's water source to the Flint River and to forego corrosion control treatment. 2019 Op. at 803; Mot. at PageID.6914 & 6943; Opp'n at PageID.10947 & 10971.[13] The Court should reject the Bellwethers' two alternative theories of how EPA's negligent undertakings satisfy Section 324A(a).

---

[12] Again, without citation to the record, the Bellwethers contend that EPA had the authority "to order Flint to switch water sources." Opp'n at PageID.10975 n.20. The record indicates otherwise. Ex. AV at 235:6-13 (EPA does not possess "the authority . . . to direct the use of a particular water source."); Ex. AQ at 671:10-14 (same).
[13] The Bellwethers state (without citing the record) that "[i]n 2013 EPA learned that

8

First, the Bellwethers erroneously equate the passage of time with increased risk, arguing that each day EPA did not intervene "allowed the contamination to worsen" and thereby increased the Bellwether's risk. Opp'n at PageID.10969-71. Even if this unsupported factual claim were true (the record indicates that it is not),[14] the Bellwethers' argument reflects a "fundamental misconception regarding Section 324A(a)" by analyzing whether the risk would have been lower if EPA intervened sooner. *Myers*, 17 F.3d at 903; Mot. at PageID.6944-46. The Bellwethers' citation to *Sagan v. United States*, 342 F.3d 493 (6th Cir. 2003) exemplifies this misconception. Opp'n at PageID.10970. In *Sagan*, the Sixth Circuit held that the Coast Guard had increased the risk of harm because it affirmatively prevented another defendant from engaging in the rescue—not just because the Coast Guard itself delayed in rescuing plaintiff. 342 F.3d at 500.[15] Again, EPA did not prevent MDEQ or the City from

---

Flint intended to switch the public water source to the Flint River." Opp'n at PageID.10947. Especially at this stage of the litigation (*see supra* at 3 n.2), the Court should not rely on such vague and unsupported allegations to reach a different factual finding than it did before as to EPA's lack of involvement in the switch. *See* 2019 Op. at 803; *accord Mays v. City of Flint, Mich.*, 871 F.3d 437, 446 (6th Cir. 2017).

[14] The evidence indicates that the contamination was worse shortly after the switch in 2014 and before EPA personnel learned of the lack of corrosion control. Ex. AS at 258:20-23 & 259:12-16 (Dr. Edwards, Virginia Tech University, testifying that, based on his analysis of lead concentrations in Flint wastewater (biosolids), "we believe that the lead was worse right after the switch in Flint and that for some reason, to our surprise, the lead levels got quite a bit better than that after" and agreeing that "This analysis strongly suggests that the worst lead exposure during the Flint Water Crisis was restricted to June-October 2014."); Ex. AT (Dr. Edwards' biosolids study).

[15] *Id.* ("The Coast Guard prevented [other defendants] from carrying out this [rescue]

9

implementing corrosion control or switching water sources sooner (Mot. at PageID.6916-17, 6943) and the Bellwethers have not cited any evidence EPA did. The alleged delay by EPA itself does not establish Section 324A(a) liability.[16]

Second, the Bellwethers misconstrue Section 324A(a)'s legal standard when they contend that EPA increased the Bellwethers' risk of harm by continuing to allow MDEQ to have SDWA primacy, approving MDEQ's SDWA program, or allowing divestments. Opp'n at 10971-72.[17] To the contrary, as the Sixth Circuit has explained under the identical provision of Section 323:[18]

> When considering whether a defendant "increased the risk" of harm to the plaintiff under § 323(a), the pertinent question is not whether the risk was increased by the defendant's failure to adhere to an internal policy compared to what the risk would have been had it adhered to the policy. ***Rather, the correct question is whether the defendant's adoption of and subsequent failure to adhere to the policy increased the risk of harm to the plaintiff over the risk the plaintiff would have faced had the policy never been adopted at all***.

*Wilburn v. United States*, 616 F. App'x 848, 854 (6th Cir. 2015) (emphasis added). In this case, had Congress never enacted—and EPA never implemented—SDWA,

---

plan, and the approximately one hour delay ensued.").

[16] *E.g.*, *Turner v. United States*, 736 F.3d 274, 281 (4th Cir. 2013) (plaintiffs contend that the United States "should have done something to [rescue plaintiffs who went overboard] sooner," but the United States' delay did not "worsen[] their position," and so the United States was not liable under Section 324A(a)).

[17] Again, the Bellwethers raise these undertakings for the first time in their Opposition, as they are not in their interrogatory responses. Ex. AR; *supra* at 7-8.

[18] *Wilburn v. United States*, 616 F. App'x 848, 853 n.1 (6th Cir. 2015) ("the pertinent requirements of both [Section 323 and 324A] are identical: subsections (a) and (b) of § 323 correspond exactly to subsections (a) and (c) of § 324A").

10

the Bellwethers' risk of harm would not have been lower. If anything, it would have been higher because there would have been no means by which EPA Region 5 personnel could have been alerted to the City's lack of corrosion control and thereafter successfully persuade MDEQ and the City to switch back to Detroit water and implement corrosion control. Mot. at PageID.6914-18.

In conclusion, the Bellwethers have not established that Section 324A(a)-(c) are met, and therefore they have not established analogous private liability under Section 324A, and their claims should be dismissed. *Myers*, 17 F.3d at 902-05.

### B. Some of the Alleged Undertakings Defy the Caselaw and the Record.

In their Opposition, the Bellwethers stretch EPA's purported undertakings beyond the limits of the caselaw and the discovery record. For one, there is no daylight between the Bellwethers' position and imposing compensatory damages on EPA for any SDWA violation—something Congress has not enacted, and therefore the Bellwethers cannot accomplish through the FTCA. Mot. at PageID.6923. Most notably, the Bellwethers contend that EPA (as a SDWA regulator), unlike a private party, may not cease its undertakings. Opp'n at PageID.10962; *contra* Mot. at PageID.6924-25. This defies the FTCA's "'private person' standard." *United States v. Olson*, 546 U.S. 43, 46 (2005) (the FTCA "requires a court to look to the state-law liability of private entities, **not to that of public entities**, when assessing the Government's liability under the FTCA") (emphasis added and citation omitted).

11

Likewise, the Bellwethers' citation to a host of newly minted undertakings (*see infra* at 13)—such as, EPA's alleged failure to revoke MDEQ's primacy and its periodic review of MDEQ's SDWA program (Opp'n at PageID.10956, 10959, 10961)—cements that the Bellwethers' approach would render EPA "an insurer for every private party's violation of a federal regulatory scheme" via the FTCA—something the Sixth Circuit, the U.S. Supreme Court, and other courts have refused to endorse. Mot. at PageID.6931-32. Such an expansive undertaking would subject EPA to potential FTCA liability for any SDWA violation within the 10,000 public water systems within Michigan alone (*id.* at PageID.6914). But surely, if Congress intended that SDWA would expose the EPA (and thereby the U.S. Treasury) to such expansive liability for public water systems formerly within the exclusive jurisdiction of state and local governments,[19] it would have included in SDWA a private cause for damages and not acted silently and indirectly through the FTCA.[20]

Finally, the Court should disregard the Bellwethers' following alleged undertakings that are either unsupported by the record (*see supra* at n.2) or not

---

[19] *See* H.R. Rep. No. 93-1185, 93d Cong., 2d Sess., 1974 WL 11641 at 6459-60.

[20] *See Myers*, 17 F.3d at 899 ("plaintiffs['] argument must fail because it would, in effect, create a private right of action under the Act in the guise of an action under the FTCA; an effect which Congress did not intend and could not have anticipated."); *Mays*, 871 F.3d at 450 ("there is no private right of action for damages arising from a violation of the SDWA"); *cf. Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

12

mentioned in the Bellwethers' complaints or interrogatory responses: (1) EPA's failure to revoke MDEQ's SDWA primacy (Opp'n at PageID.10956 & 10959); (2) the adequacy of EPA's review of MDEQ's SDWA program every five years (*id.* at PageID.10961);[21] (3) EPA granting MDEQ certain "divestments" (*id.* at PageID.10966-67); (4) EPA's "receipt and review of" unspecified "water quality reports" and "MDEQ's submission of testing site and testing protocol for lead" (*id.* at PageID.10960); and (5) EPA's failure to perform LCR sampling correctly (*id.* at PageID.10967-68). *See supra* at 7-8 (citing *Bridgeport Music*, 508 F.3d at 400, *Renner*, 516 F. App'x at 504, Ex. AR; *Burgess*, ECF No. 73; *Thomas*, ECF No. 1).

In addition, the Bellwethers' newly minted undertakings suffer from a host of substantive problems. First, the Bellwethers are incorrect that SDWA required EPA to revoke MDEQ's primacy.[22] Second, as noted previously, the City conducted the LCR sampling—not the EPA. *See supra* at 6. Third, under a Rule 56 standard, the Bellwethers' uncited and vague allegations regarding unspecified reports EPA allegedly received are insufficient. *See supra* at 3 n.2.

---

[21] The Opposition, without citation, claims these reviews were "annual" (Opp'n at PageID.10961); they in fact occurred "about every six years." Ex. AU at 211:3-7.

[22] *Compare* Opp'n at PageID.10947 n.3 & 10975, *with* 40 C.F.R. § 142.17(a)(2) ("When . . . the Administrator *determines* that a State no longer meets [certain] requirements," then "the Administrator shall initiate proceedings to withdraw primacy") (emphasis added) *and Ohio Pub. Int. Rsch. Grp., Inc. v. Whitman*, 386 F.3d 792, 797-798 (6th Cir. 2004) (the phrase "Whenever the Administrator makes a determination" is discretionary); *New York Pub. Int. Rsch. Grp. v. Whitman*, 321 F.3d 316, 330 (2d Cir. 2003) (same). Such a determination was never made.

13

In the end, this leaves the undertakings the United States acknowledged in its opening motion. Mot. at PageID.6927-6934. As explained therein and herein, these undertakings do not, however, satisfy the remaining Section 324A elements.

### C. The Bellwethers Fail to Present Evidence that EPA Negligently Performed Alleged Undertakings.

The plain language of Section 324A requires the Bellwethers to establish that EPA negligently performed an undertaking that resulted in their physical harm. As noted above, the Bellwethers do not establish that EPA negligently performed certain of the undertakings they assert. *See supra* at 6 & nn. 7-9; Mot. at PageID.6934-35. This precludes Section 324A liability as to such undertakings. *Myers*, 17 F.3d at 902.

### II. If EPA's Communications Were to Give Rise to the Bellwethers' Claims, then the Misrepresentation Exception Would Bar Such Claims.

In their Opposition, the Bellwethers effectively abandon any claim that they relied on EPA's communications or miscommunications. Undoubtably, this is because none of the Bellwethers communicated with EPA regarding water complaints or detrimentally relied on EPA communications. *See supra* at 1-2.

Nevertheless, if the Bellwethers had shown that any such EPA communications or miscommunications give rise to a Bellwether's Section 324A claim, the FTCA's misrepresentation exception would deprive the Court of subject-matter jurisdiction over such a claim. Mot. at PageID.6946-50. Contrary to the Bellwethers' contentions, the United States has provided several authority-supported

14

bases to deviate from the Court's prior misrepresentation exception decision, including: (1) the Court should analyze the "essence" of the communication-based claims at issue in the United States' misrepresentation exception argument and not the entire complaint; (2) the Sixth Circuit has not endorsed the Court's narrowing of the exception to commercial misrepresentations; and (3) the Ninth Circuit's recent textual analysis of the exception's "arising from" language conflicts with this Court's narrow view. *Id.*; *see also Najbar v. United States*, 723 F. Supp. 2d 1132, 1137–38 (D. Minn. 2010) (rejecting the view that the misrepresentation exception is limited to commercial misrepresentations), *aff'd on other grounds,* 649 F.3d 868 (8th Cir. 2011).

## CONCLUSION

For all these reasons (and those set forth in the United States' opening motion, ECF No. 291), the Court should dismiss the Bellwethers' claims for lack of subject-matter jurisdiction.

Dated:  March 28, 2025

YAAKOV M. ROTH
Acting Assistant Attorney Gen.,
Civil Division

J. PATRICK GLYNN, Director
CHRISTINA FALK, Assistant Dir.

Respectfully submitted,

*/s/ Eric Rey*
ERIC REY (DC Bar # 988615)
JASON COHEN
Trial Attorneys
United States Department of Justice
*Attorneys for the United States*

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2025, I electronically filed the foregoing and accompanying Index of Exhibits and Exhibits using the Court's Electronic Case Filing system, which will send notice to all counsel of record.

                                       */s/ Eric Rey*
                                       ERIC REY