UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In re* FTCA Flint Water Cases | Civil No. 4:17-cv-11218 (Consolidated) |
| This Motion Relates to: | Linda V. Parker<br>United States District Judge |
| THE FIRST BELLWETHER PROCEEDINGS | Curtis Ivy, Jr.<br>United States Magistrate Judge |

**United States of America's Reply in Support of its
Motion for Summary Judgment**

## INTRODUCTION

Six of the eleven remaining bellwether plaintiffs (Jason Keys, Lawrence Cooley, Margie McClain, Terry Crews (on behalf of Patricia Crews), Stanley Langston, and Vivian Anderson, collectively the "Time-Barred Bellwether Plaintiffs") knew, more than two years prior to the date each plaintiff submitted an administrative claim to the U.S. Environmental Protection Agency ("EPA"), that he or she had been injured and the probable cause of his or her injury. This is not disputed.

Despite these facts, Plaintiffs argue that the claims of these six individuals did not accrue, and the statute of limitations did not begin to run, until the plaintiffs gained more particular knowledge "that *the EPA* may have been one cause of the harm they suffered, due to its regulatory action or inaction." Opp'n (ECF No. 333) at 9 (emphasis in original). This is not the correct standard for analyzing when tort claims such as those presented here accrue under 28 U.S.C. § 2401(b). *See, e.g.*, *Diminnie v. United States*, 728 F.2d 301, 305 (6th Cir. 1984). Moreover, Plaintiffs' *own allegations* undermine their arguments and demonstrate that the public information about the Flint Water Crisis available on or before October 1, 2015, was sufficient for any reasonable plaintiff to investigate and discover the purported cause of their injuries.

In addition, any claims from these six plaintiffs that are arguably not barred by the statute of limitations, as well as the claims of William Daly (on behalf of Carolyn Daly), Anthony Vance, and John Campbell, fail because Plaintiffs cannot prove causation or damages, and Plaintiffs' attempts to avoid summary judgment by creating material issues of fact are unavailing.

## ARGUMENT

### I. Claim Accrual Does Not Await Discovery of the EPA's Identity and Role.

"Typically, a tort claim accrues under 28 U.S.C. § 2401(b) 'at the time of the plaintiff's injury.'" *Amburgey v. United States*, 733 F.3d 633, 637 (6th Cir. 2013) (quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979)); *see also Hertz v. United States*, 560 F.3d 616, 618 (6th Cir. 2009) ("the 'general rule' is that 'a tort claim accrues at the time of the plaintiff's injury'"); *Coffie v. United States*, 43 F. App'x 808, 811 (6th Cir. 2002) ("Generally, a tort claim accrues at the time of injury."). Here, Plaintiffs knew of their injuries by October 1, 2015, when the Genesee County Health Department issued a "Do Not Drink the Water" Advisory, and there was widespread news coverage about water quality issues. Mot. at 2-7.

Plaintiffs seek to evade this accrual rule by arguing for the application of the accrual rule for medical malpractice cases. Opp'n at 8-16. In a medical malpractice case, a "claim accrues when [plaintiff] 'knows both the existence and <u>the cause</u> of his injury.'" *Amburgey* v, 733 F.3d at 637 (emphasis added); *see also Robinson v.*

2

*U.S. Dep't of Army ex rel. U.S.*, 48 F. App'x 970, 971 (6th Cir. 2002) ("a cause of action accrues and the statute of limitations begins to run in a medical malpractice action upon the patient's awareness of the injury and its cause"); *Coffie*, 43 F. App'x at 811 ("Generally, a tort claim accrues at the time of injury, but in medical malpractice cases, the limitations period does not begin to run until the plaintiff has discovered or should have discovered both the critical facts of the injury and its cause.") (citing *Kubrick*, 444 U.S. at 120).

This case is not a medical malpractice case, and the accrual rule for medical malpractice cases should not apply. Medical malpractice cases have more lenient accrual rules because "[m]edical malpractice cases pose special difficulties when it comes to identifying the nature and cause of an injury." *Miller v. Cocke Cnty., Tennessee*, No. 21-5585, 2022 WL 103143, at *2 (6th Cir. Jan. 11, 2022) (citing *Kubrick*, 444 U.S. at 120 & n.7 (noting that in medical malpractice cases injuries may take time to manifest and/or the plaintiff may be forced to rely on what he is told by the physician or surgeon to discern what is wrong)). Here, Plaintiffs bring regular tort claims alleging negligent failure to take mandatory actions required by the Safe Drinking Water Act, negligent investigations, and negligent failure to warn, based on Michigan's Good Samaritan doctrine. *Burgess*, Sec. Am. Compl. (ECF No. 73) at 27-34; *Burgess v. United States*, 375 F. Supp. 3d 796, 818 (E.D. Mich. 2019).

3

Even if the lenient accrual rule for medical malpractice cases applies, Plaintiffs' claims are still time-barred. As explained in the United States' motion, Plaintiffs were aware not only of their injury but also the purported cause of their injury—lead contamination in the water supply—by October 1, 2015. Mot. at 13-19. Plaintiffs' opposition does not dispute awareness of this cause. Opp'n at 8-9.

Failing even the lenient accrual rule for medical malpractice cases, Plaintiffs seek to impose an additional requirement for accrual. In addition to knowledge of injury and cause, Plaintiffs argue accrual does not begin until a third requirement is met: identification of the U.S. EPA as a potential tortfeasor. *Id.* at 9-16. Plaintiffs' argument fails both legally and factually.

**A. The Sixth Circuit Does Not Require Knowledge of a Tortfeasor's Identity for Accrual.**

The Sixth Circuit has squarely rejected Plaintiffs' argument that accrual requires knowledge of the tortfeasor's identity. *Diminnie v. United States*, 728 F.2d 301, 304-06 (6th Cir. 1984). Plaintiffs rely primarily on language from the Supreme Court's *Kubrick* decision for the proposition that a tortfeasor's identity must be known for accrual. Opp'n at 11 ("this **'who'** aspect of the *Kubrick* decision") (emphasis in original). In *Diminnie*, the Sixth Circuit addressed an argument similar to the one Plaintiffs' make now, *i.e.*, that *Kubrick* holds that an FTCA claim accrues only after a plaintiff "knows the actual identity of the individual committing the tort." *Diminnie*, 728 F.2d at 304. The Sixth Circuit rejected this argument, holding

4

that "*Kubrick* did not flatly state that accrual of a cause of action is always deferred until such time as the plaintiff is aware of the identity of the particular individual who may have caused his injury." *Id.*

The Sixth Circuit has since held several times—as recently as March 2025—that *Kubrick* does not require knowledge of a tortfeasor's identity for accrual. *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 603 (6th Cir. 2025) ("many decisions since *Kubrick* have rejected the argument that plaintiffs did not know the 'cause' of an injury simply because they did not know that the responsible parties worked for the federal government"); *Miller*, No. 21-5585, 2022 WL 103143, at *2 ("'knowledge of identity was not an issue' in *Kubrick*, and the Court did not say 'that accrual of a cause of action is always deferred until such time as the plaintiff is aware of the identity of the particular individual who may have caused his injury'"); *Whittlesey v. Cole*, 142 F.3d 340, 343 (6th Cir. 1998) (agreeing with Fourth Circuit case holding that FTCA statute of limitations was not "tolled until plaintiff learned that physician tortfeasors were federal employees").

In *Diminnie*, the court did hold that accrual of an FTCA claim may be deferred until knowledge of the government's involvement is known where the Government fraudulently concealed its involvement in the plaintiff's injury. 728 F.2d at 305. But here, Plaintiffs do not argue, and there is no evidence to support, that the EPA fraudulently concealed its involvement in Flint.

5

Plaintiffs ignore this Sixth Circuit precedent, preferring to direct the Court's attention to a Seventh Circuit medical malpractice case, *Drazan v. United States*, 762 F.2d 56 (7th Cir. 1985). There, the court stated, "[w]hen there are two causes of an injury, and only one is the government, the knowledge that is required to set the statute of limitations running is knowledge of the government cause, not just the other cause." *Drazan*, 762 F.2d at 59. Notably, the *Drazen* court clarified its statement: "[the statute of limitations] begins to run either when the government cause is known or when a reasonably diligent person (in the tort claimant's position) reacting to any suspicious circumstances of which he might have been aware would have discovered the government cause—whichever comes first." *Id.* (citation omitted). When citing *Drazen* in the medical malpractice context, Sixth Circuit courts have relied on this clarification and, for claim accrual purposes, have focused on whether a reasonable person in the plaintiff's position would know enough to protect themselves by seeking legal advice. *Amburgey v. United States*, 733 F.3d 633, 636-37 (6th Cir. 2013); *Zanecki v. Institutional Rev. Bd.: Henry Ford Health Sys. IRB No. 1*, No. 12-13233, 2013 WL 992635, at *3 (E.D. Mich. Mar. 13, 2013).

### B. Even if Knowledge of a Tortfeasor's Identity Were a Requirement, Plaintiffs Were Aware of the U.S. EPA's Involvement.

Plaintiffs' own allegations demonstrate that Plaintiffs were aware of EPA's potential involvement no later than October 1, 2015. Plaintiffs allege that Flint residents, such as Jan Burgess and LeeAnn Walters, were presenting complaints

6

about water quality to the EPA between October 2014 and March 2015, including complaints that testing showed lead levels were "more than 20 times the EPA 'Action Level' of 15 ppb." *Burgess*, Sec. Am. Compl. (ECF No. 75) at ¶¶24-27, 31-32, 40-41. "By late January 2015, the news media regularly reported the widespread water quality issues . . . . A casual internet search in January, February or March of 2015, would have produced scores of news reports about the environmental crisis developing in Flint." *Id.* ¶38.

Plaintiffs further allege that by June 30, 2015, Flint's mayor had notified the EPA that "an EPA Region 5 staff member was speaking publicly about the Flint environmental crisis." *Id.* ¶57. Thereafter, "[o]n July 9, 2015, Michigan media outlets raised the serious environmental and public health issues discussed in the Del Toral Report,"—written by an EPA employee—and "[t]he threat to the public health of the citizens of Flint became nationwide news." *Id*. ¶60. The following day, the EPA issued a "press statement" notifying the public that they were "work[ing] with the Michigan DEQ and the City of Flint" regarding lead contamination issues in drinking water. *Id*. ¶61.

On August 31, 2015, Dr. Marc Edwards, a professor at Virginia Tech, publicly published water testing results, shortly thereafter widespread media reports disseminated the information, and the following week it was reported in the news that EPA was providing technical assistance to the City and MDEQ. *Id*. ¶¶69, 73, 74.

7

On September 24, 2015, Dr. Mona Hanna-Attisha, a pediatrician and professor at Michigan State University, held a press conference to declare that the children of Flint had ingested dangerous levels of lead. *Id*. ¶87. Subsequently, on October 1, 2015, the Genesee Health Department issued a public drinking water advisory, while the Natural Resources Defense Council filed a Petition for Emergency Action against the EPA. *Id*. ¶90.

Given these factual allegations, which Plaintiffs themselves provided, by October 1, 2015, any reasonable plaintiff who believed they were harmed by lead in the Flint water would have known enough to at least seek the advice of an attorney to protect their rights. Plaintiffs may not now seek to benefit from willful ignorance or conscious knowledge avoidance to try to avoid claim accrual. "Once the prospective plaintiff is on notice that it might have a claim, it is required to make a diligent inquiry into the facts and circumstances that would support that claim." *Sprint Commc'ns Co., L.P. v. F.C.C.,* 76 F.3d 1221, 1228 (D.C. Cir. 1996).[1]

The public circumstances surrounding the Flint Water Crisis, confirmed by Plaintiffs' own allegations, show that this action is more akin to an unusual and

---

[1] Similarly, Plaintiffs' allegations that the EPA in 2014 "affirmatively led the public to believe that 'additional treatment' was being used" (Opp'n at 3) and throughout 2014 and 2015 "provid[ed] false reassurances regarding the safety of the water" (Opp'n at 4-5) are inconsistent and unreconcilable with their claim that, prior to 2018, they were unaware of any possible EPA involvement in water regulation in Flint.

8

catastrophic public event that "by [its] nature typically involve[s] negligence somewhere in the causal chain," such that the "mere fact of the event" should be "deemed sufficient to trigger the plaintiff's duty to inquire further" about the water contamination "and to seek legal advice." *Amburgey*, 733 F.3d at 637 (quoting *Hertz v. United States*, 560 F.3d 616, 619 (6th Cir. 2009)).

Despite their allegations, Plaintiffs suggest that they and "the public at large" did not have "any indication of EPA's role in the crisis until the release of the [EPA] Office of Inspector General (OIG) report in [July] 2018." Opp'n at 18. A July 2018 accrual date is nonsensical. The original *Burgess* complaint against the United States alleging negligence by the EPA was filed in January 2017, approximately 18 months *before* the OIG report was released. Additionally, the administrative complaints submitted to the EPA between October 2016 and May 2017 by the five non-time-barred bellwether plaintiffs (*see* Mot., Exhs. D-H) contained virtually identical factual allegations as those set forth in the January 2017 Complaint.

## II. In Addition, Summary Judgment is Warranted on the Adult Bellwether Plaintiffs' Claims Because Plaintiffs Cannot Show Sufficient Evidence of Causation and Damages.

### A. Plaintiffs' Property Damage Claims Lack Factual Support and Proof of Causation.

Plaintiffs argue that their property damage claims are sufficiently supported by the home appraisals of residential appraiser Jamal Michael Saad, the business

9

valuations of real estate broker Anthony Legins, and the report on the general effects of the Flint Water Crisis on housing markets by economist Gabriel Lade.

The reports and testimony of Mr. Saad and Mr. Legins are the subject of a separately-filed Motion to Exclude, and for the reasons set forth therein (*see* ECF Nos. 300, 339), Plaintiffs' reliance on their opinions is invalid and improper.

Beyond that, Plaintiffs' reliance on the opinion of Dr. Lade is itself insufficient and improper. Dr. Lade's report incorporates and relies on the Saad appraisal values to evaluate just two properties (926 Maxine St., owned by Anthony Vance; and 3316 Iroquois Ave., owned by Lawrence Cooley).[2] Given this problematic foundation for the Lade opinions, the current record is not sufficient to raise a genuine issue of material fact as to diminution in property value caused by water contamination after the Flint water source switch.

### B. Langston's and Campbell's Skin Rash Claims Lack Sufficient Evidence of Causation.

Bellwether Plaintiffs Stanley Langston and John Campbell both bring damage allegations stemming from purported rashes that they believe were caused by the water distributed by the Flint water system. Plaintiffs presented general causation expert testimony from Dr. Bruce Brod opining that the Flint Water Crisis could potentially cause dermatological issues, but neither Dr. Brod nor any other expert

---

[2] Notably, for the reasons set forth in the Government's Motion and in Part I above, the claims of Mr. Cooley are untimely and barred by the statute of limitations.

10

was offered to show, to a reasonable degree of scientific certainty, that Mr. Langston's and Mr. Campbell's specific skin conditions were caused by the Flint water.

Because this is a toxic tort case, Plaintiffs must prove both general and specific causation. *See In re Flint Water Cases*, 579 F. Supp. 3d 971, 985 (E.D. Mich. 2022) (citing *Powell-Murphy v. Revitalizing Auto Comm's Env. Response Trust*, 333 Mich. App. 234, 250, 964 N.W.2d 50 (2020)). Specific causation "requires 'proof that exposure to the toxin more likely than not caused *the plaintiff's* injury." *Id*. (citations omitted) (emphasis in original); *see also Barber v. BP Expl. & Prod., Inc.*, No. 4:19CV214-MCR-HTC, 2023 WL 9103619, at *4 (N.D. Fla. Nov. 29, 2023), *report and recommendation adopted*, No. 4:19CV214-MCR-HTC, 2024 WL 420144 (N.D. Fla. Feb. 5, 2024) (noting that without admissible expert testimony to establish specific causation, "Plaintiff cannot create a material question of fact.").

In their Response, Plaintiffs do little more than rely on temporal coincidence and vague statements from the bellwether plaintiffs to argue that there is a material issue of fact with regard to specific causation. Such speculation and reliance on the *post hoc ergo propter hoc* fallacy is plainly insufficient to establish a causal link between Mr. Langston's and Mr. Campbell's alleged skin issues and their purported exposure to Flint water sufficient to survive summary judgment. *See, e.g.*, *Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 898 N.W.2d 906, 907 (2017).

11

### C. McClain's Business Loss and Property Damage Claims Lack Sufficient Evidentiary Support.

Plaintiffs argue that a genuine issue of material fact exists as to the business loss and property damage claims of Bellwether Plaintiff Margie McClain. Opp'n at 27-28. In support, Plaintiffs cite Leo McClain's statement that he replaced pipes at the Mary Street property at some time after the water switch "because they was rusty" [sic] and Leo McClain's speculative comments about why potential buyers might not have met the asking price for his property. *Id.* at 28.

There are no records to substantiate the McClains' property damage claims, and there was no qualified testimony, expert or otherwise, to support a causal link between the change in Flint's water source and the purported "rusty" pipes. Nor is there any evidence, other than hearsay and speculation, to support the claimed loss in business value or revenue. It is well established that hearsay and speculation cannot be considered in a motion for summary judgment. *See, e.g.*, *Kelly v. Warren Cnty. Bd. of Comm'rs*, 396 F. App'x 246, 250 (6th Cir. 2010) ("mere speculation does not create a genuine issue of material fact to overcome summary judgment"); *Siglar v. Am. Honda Motor Co.*, 532 F.3d 469, 480-81 (6th Cir. 2008) (unsworn, hearsay evidence inadmissible); *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.")

(internal quotation marks omitted). Plaintiffs have failed to present any (much less sufficient) admissible evidence to overcome the Government's motion for summary judgment with respect to Margie McClain's business loss and property damage claims.

### D. Vance's Property Damage Claim Lacks Sufficient Evidentiary Support.

Plaintiffs argue that there is a genuine issue of material fact with respect to Bellwether Plaintiff Anthony Vance's property damage claim because the Vances testified that pipe damage occurred after the water source switch, and plumber Zak Rostar opined that the "corrosive Flint River water" caused the plumbing problems. Opp'n at 29-30.

As noted in the Motion and this Reply, temporal proximity is not sufficient to establish specific causation and overcome summary judgment. Moreover, for the reasons set forth in the Government's Motion to Exclude (ECF No. 300 at 26-32; ECF No. 339 at 11-14), Mr. Rostar's testimony regarding the cause of the pipe corrosion is speculation and not based on individual factual knowledge, the application of reliable principles, or sound methodology. Thus, summary judgment in favor of the United States on the Vance property damage claim is appropriate.

### E. All the Claims of Bellwether Plaintiff William Daly Must Be Dismissed.

13

Bellwether Plaintiff William Daly brought a wrongful death claim on behalf of Carolyn Daly. Mot. at 37; *see also* Mot. Exh. H (May 10, 2017 admin. claim by "William Daly as Personal Representative for the estate of Carolyn Daly"). As explained in the Motion, there is no record evidence linking Carolyn Daly's death to her exposure to Flint water. *Id.* In their Response, Plaintiffs state that "William Daly is no longer pursuing a wrongful death claim on behalf of his wife, Carolyn Daly. However, Mr. Daly is pursuing his claim for emotional stress, which is not subject to the United States' Motion for Summary Judgment." Opp'n at 19 n.3. To the extent Mr. Daly appears to be attempting to keep alive a separate claim for emotional damages related to the circumstances surrounding his spouse's death, such a claim is not legally cognizable, as Michigan courts have long held that exemplary damages are not recoverable in a wrongful death action. *See Upshaw v. SSJ Grp. LLC*, No. 1:19-CV-341, 2021 WL 1583967, at *3 (W.D. Mich. Feb. 12, 2021), *report and recommendation adopted*, No. 1:19-CV-341, 2021 WL 1136828 (W.D. Mich. Mar. 25, 2021) (citing *Fellows v. Superior Products Co.*, 506 N.W.2d 534, 536 (Mich. Ct. App. 1993), and *White v. FCA US, LLC*, 579 B.R. 804, 813 (E.D. Mich. 2017)).

The Government's Motion did not address a William Daly stand-alone claim for emotional distress because none exists in this matter. To be sure, it does appear that a separate administrative claim was submitted by William Daly on his own behalf on or about April 2, 2021 (well past the statute of limitations deadline, as

14

explained in the Government's Motion). *See* Exhibit BF. But, while there is a reference to Genesys Hurley Cancer Institute in the address portion of the administrative claim, one can only speculate as to the factual basis and purported damages related to this separate administrative claim as it was not part of the bellwether cases here.

## CONCLUSION

For all these reasons (and those set forth in the United States' opening motion and memorandum in support thereof, as well as the Government's separately-filed *Daubert* motions and motions to exclude), the Court should grant summary judgment in favor of the United States with respect to the claims brought by bellwether plaintiffs Vivian Anderson, Stanley Langston, Jason Keys, Terry Crews (on behalf of Patricia Crews), Margie McClain, Lawrence Cooley, William Daly (on behalf of Carolyn Daly), Anthony Vance, and John Campbell.

Dated: April 21, 2025                                  Respectfully submitted,

| | |
|---|---|
| YAAKOV M. ROTH<br>Acting Assistant Attorney General,<br>Civil Division<br>JONATHAN D. GUYNN<br>Deputy Assistant Attorney General<br>J. PATRICK GLYNN, Director<br>CHRISTINA FALK, Assistant Dir. | */s/ Jason T. Cohen*<br>Jason T. Cohen (CA Bar #214438)<br>Trial Attorney<br>United States Department of Justice<br>Civil Division, Torts Branch, ETL<br>1100 L Street, N.W.<br>Washington, DC 20005<br>E-mail: Jason.T.Cohen@usdoj.gov<br>Phone: 202-514-0335 / Fax: 202-616-4473<br>*Attorneys for the United States* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2025, I electronically filed the foregoing using the Court's Electronic Case Filing system, which will send notice to all counsel of record.

>  */s/ Jason T. Cohen*
> JASON T. COHEN
> Trial Attorney
> United States Department of Justice